McDERMOTT WILL & EMERY LLP
Ellie Hourizadeh (#204627)
ehourizadeh@mwe.com
2049 Century Park East
Suite 3800
Los Angeles, CA  90067-3218
Telephone:   (310) 277-4110
Facsimile:   (310) 277-4730

Paul M. Schoenhard (*pro hac vice*)
pschoenhard@mwe.com
Nicole M. Jantzi (*pro hac vice*)
njantzi@mwe.com
Mary D. Hallerman (to file *pro hac vice*)
mhallerman@mwe.com
Sarah P. Hogarth (to file *pro hac vice*)
shogarth@mwe.com
500 North Capitol Street NW
Washington, DC 20001
Telephone:   (202) 756-8223
Facsimile:   (202) 756-8087

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| SOFTKETEERS, INC., a California corporation,<br><br>             Plaintiff,<br><br>    v.<br><br>REGAL WEST CORPORATION d/b/a REGAL LOGISTICS, a Washington Corporation; VU HO INC., THAI TRAN INC., and DON MAI INC., California corporations; and RANDY NEEVES, VU HO, THAI QUOC TRAN, DON MAI, and TRUNG NGOC DOAN, individuals,<br><br>             Defendants. | CASE NO. 8:19-cv-00519-JVS (JDEx)<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**<br><br>(*Declaration of Randy Neeves submitted concurrently herewith*)<br><br>DATE:       April 29, 2019<br>TIME:       1:30 pm<br>JUDGE:     Hon. James V. Selna<br>ROOM:      Courtroom 10C |

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................ iii

INTRODUCTION ........................................................................... 1

BACKGROUND ............................................................................. 2

ARGUMENT ................................................................................ 4

I.    Softketeers Is Unlikely To Succeed On The Merits. ......................... 5

    A.    Softketeers is not likely to succeed on its copyright claim. .................... 5

        1.    Softketeers fails to identify any protectable works Defendants have allegedly infringed. ........................ 5

        2.    Softketeers is not the sole owner of any copyrights. ..................... 7

            a.    Regal, not Softketeers, is the sole legal owner. ................... 7

            b.    If Regal does not exclusively own all of the Software as a work for hire, the individual creators retained rights. ....................... 9

            c.    Regal has at least a joint ownership interest. .................. 10

        3.    At minimum, Regal has an irrevocable, nonexclusive license. ........................................ 12

    B.    Softketeers will not likely succeed on its trade-secret claims. ............. 13

        1.    Softketeers has not identified any information that it could validly claim to be trade secret. ...................... 14

        2.    Softketeers has not established a likelihood of showing a sole ownership interest in such information. ............. 15

        3.    Regal's need for the source code precludes Softketeers's misappropriation claim. ........................ 16

II.    Softketeers Fails To Show Likely Irreparable Harm That Preliminary Relief Would Remedy. ........................................ 16

    A.    Alleged economic injury does not establish irreparable harm. .............. 18

        1.    Vague allegations of bankruptcy are not irreparable harm. ......... 18

        2.    Losses of future revenue are not irreparable harm. ................... 19

    B.    Softketeers's alleged loss of "exclusive title" and "bargaining position" cannot establish irreparable harm. ...................... 21

McDermott Will & Emery LLP<br>Attorneys At Law<br>Los Angeles

C.    There is no likelihood Regal will disseminate the source code without taking reasonable measures to protect its secrecy....................22

III.    The Balance Of Equities Does Not Tip Sharply In Softketeers's Favor..........23

IV.    The Proposed Preliminary Injunction Is Not In The Public Interest...............24

V.    Softketeers Is Ineligible For Equitable Relief Because Of Unclean Hands...........................................................................25

CONCLUSION.......................................................................26

McDermott Will & Emery LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR A
PRELIMINARY INJUNCTION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aalmuhammed v. Lee*,
   202 F.3d 1227 (9th Cir. 2000) ................................................................ 11

*Aero Fulfillment Servs. Corp. v. Oracle Corp.*,
   186 F. Supp. 3d 764 (S.D. Ohio 2016) .................................................. 25

*Airframe Sys. v. L-3 Commc'ns Corp.*,
   658 F.3d 100 (1st Cir. 2010) ..................................................................... 6

*Alta Devices, Inc. v. LG Elecs., Inc.*,
   343 F. Supp. 3d. 868 (N.D. Cal. 2018) .................................................. 13

*Am. Passage Media Corp. v. Cass Commc'ns, Inc.*,
   750 F.2d 1470 (9th Cir. 1985) ................................................................ 17

*Antonick v. Electronic Arts, Inc.*,
   841 F.3d 1062 (9th Cir. 2016) .................................................................. 6

*Asset Mktg. Sys. v. Gagnon*,
   542 F.3d 748 (9th Cir. 2008) ............................................. 12, 13, 16, 20

*Berryhill v. Minarik*,
   05-cv-810, 2006 WL 696318 (D. Or. Mar. 14, 2006) .......................... 11

*Bridgmon v. Array Sys. Corp.*,
   324 F.3d 572 (5th Cir. 2003) .................................................................... 6

*Brown Bag Software v. Symantec Corp.*,
   960 F.2d 1465 (9th Cir. 1992) .................................................................. 5

*Caribbean Marine Servs. Co. v. Baldrige*,
   844 F.2d 668 (9th Cir. 1988) .................................................................. 17

*Cmty. for Creative Non-Violence v. Reid*,
   490 U.S. 730 (1989) .................................................................................. 7

*Doran v. Salem Inn, Inc.*,
   422 U.S. 922 (1975) ................................................................................ 18

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR A
PRELIMINARY INJUNCTION

*Effects Assocs., Inc. v. Cohen*,
   908 F.2d 555 (9th Cir. 1990) ................................................................ 13

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
   499 U.S. 340 (1991)........................................................................... 5, 6

*Fourth Estate Pub. Benefits Corp. v. Wall-Street.com*,
   193 S. Ct. 881 (2019)............................................................................ 5

*Fox Ins. Co. v. Envision Pharm. Holdings, Inc.*,
   No. 09-cv-237, 2009 WL 790312 (E.D.N.Y. Mar. 23, 2009) .............................. 20

*Gladwell Gov't Servs. v. Cnty. of Marin*,
   265 F. App'x 624 (9th Cir. 2008)........................................................... 10

*Goldie's Bookstore, Inc. v. Superior Court of State of Cal.*,
   739 F.2d 466 (9th Cir. 1984) ................................................................ 20

*Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*,
   736 F.3d 1239 (9th Cir. 2013) .............................................................. 17

*Hunter Grp., Inc. v. Smith*,
   No. 97-2218, 1998 WL 682154 (4th Cir. Sept. 23, 1998)............................... 17

*I.A.E., Inc. v. Shaver*,
   74 F.3d 768 (7th Cir. 1996) ................................................................. 12

*Imax Corp. v. Cinema Techs., Inc.*,
   152 F.3d 1161 (9th Cir. 1998) .............................................................. 14

*Instant Air Freight Co. v. C.F. Air Freight, Inc.*,
   882 F.2d 797 (3d Cir. 1989) ............................................................ 18, 24

*Interactive Network, Inc. v. NTN Commc'ns, Inc.*,
   875 F. Supp. 1398 (N.D. Cal. 1995)......................................................... 6

*IXL Inc. v. AdOutlet.Com, Inc.*,
   No. 01-cv-0763, 2001 WL 315219 (N.D. Ill. Mar. 29, 2001)....................... 18, 24

*KEMA, Inc. v. Koperwhats*,
   658 F. Supp. 2d 1022 (N.D. Cal. 2009).................................................... 15

*Kennedy v. Bremerton Sch. Dist.*,
   869 F.3d 813 (9th Cir. 2017) ................................................................. 4

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR A
PRELIMINARY INJUNCTION

*Konigsberg Int'l, Inc. v. Rice*,
   16 F.3d 355 (9th Cir. 1994) .................................................................. 10

*Lewis v. Activision Blizzard, Inc.*,
   634 F. App'x 182 (9th Cir. 2015).......................................................... 8

*Live Face on Web, LLC v. AZ Metroway, Inc.*,
   No. 15-cv-1701, 2016 WL 4402796 (C.D. Cal. Aug. 15, 2016)........................ 14

*Machlett Lab., Inc. v. Techny Indus., Inc.*,
   665 F.2d 795 (7th Cir. 1981) .............................................................. 25

*MAI Sys. Corp. v. Peak Comput., Inc.*,
   991 F.2d 511 (9th Cir. 1993) .............................................................. 14

*Manganaro v. InteropTec Corp.*,
   874 F. Supp. 660 (E.D. Pa. 1995)........................................................ 21

*Mazurek v. Armstrong*,
   520 U.S. 968 (1997).......................................................................... 4

*Mead Johnson & Co. v. Abbott Labs.*,
   201 F.3d 883 (7th Cir. 2000) .............................................................. 24

*Mobile Active Def., Inc. v. L.A. Unified Sch. Dist.*,
   No. 15-cv-8762, 2015 WL 12860491 (C.D. Cal. Dec. 14, 2015) ...................... 15

*Nat'l Football League Players Ass'n v. Nat'l Football League Props., Inc.*,
   No 90-cv-4244, 1991 WL 79325 (S.D.N.Y. May 7, 1991)................................ 20

*Navient Sols., LLC v. United States*,
   141 Fed. Cl. 181 (2018)..................................................................... 19

*Navistar, Inc. v. U.S. Envtl. Prot. Agency*,
   No. 11-cv-449, 2011 WL 3743732 (D.D.C. Aug. 25, 2011) ............................ 19

*Nintendo of Am., Inc. v. Lewis Galoob Toys, Inc.*,
   16 F.3d 1032 (9th Cir. 1994) .............................................................. 24

*Perfect 10, Inc. v. Google, Inc.*,
   653 F.3d 976 (9th Cir. 2011) ................................................... 17, 18, 21

*Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*,
   324 U.S. 806 (1945).......................................................................... 25

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR A
PRELIMINARY INJUNCTION

*Pulver v. Battelle Mem. Inst.*,
  No. 05-cv-5028, 2009 WL 224490 (E.D. Wash. Jan. 29, 2009) .......................... 11

*Renegotiation Bd. v. Bannercraft Clothing Co., Inc.*,
  415 U.S. 1 (1974) ....................................................................................................... 19

*Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*,
  944 F.2d 597 (9th Cir. 1991) ............................................................................... 18, 19

*The Reynolds & Reynolds Co. v. Alt. Source, Inc.*,
  No. 12-cv-10717, 2013 WL 12113230 (C.D. Cal. Feb. 21, 2013) ....................... 20

*Rice v. Fox Broad. Co.*,
  330 F.3d 1170 (9th Cir. 2003) ................................................................................... 5

*Sampson v. Murray*,
  415 U.S. 61 (1974) ..................................................................................................... 18

*Seller Agency Council, Inc. v. Kennedy Ctr. for Real Estate Educ., Inc.*,
  621 F.3d 981 (9th Cir. 2010) ..................................................................................... 25

*Seto v. Thielen*,
  No. 10-cv-351, 2010 WL 2612603 (D. Haw. June 28, 2010) .............................. 17

*Sierra Club v. U.S. Dep't of Energy*,
  825 F. Supp. 2d 142 (D.D.C. 2011) ......................................................................... 17

*Situation Mgmt. Sys., Inc. v. ASP Consulting, LLC*,
  560 F.3d 53 (1st Cir. 2009) ......................................................................................... 6

*Southtech Orthopedics, Inc. v. Dingus*,
  428 F. Supp. 2d 410 (E.D.N.C. 2006) ..................................................................... 19

*Squaxin Island Tribe v. Washington*,
  781 F.2d 715 (9th Cir. 1986) ..................................................................................... 23

*Stormans, Inc. v. Selecky*,
  586 F.3d 1109 (9th Cir. 2009) ................................................................................... 23

*U.S. Auto Parts Network, Inc. v. Parts Geek, LLC*,
  692 F.3d 1009 (9th Cir. 2010) ..................................................................................... 8

*United Westlabs, Inc. v. Seacoast Lab. Data Sys., Inc.*,
  No. 08-cv-08649, 2010 WL 11515301 (C.D. Cal. Jan. 7, 2010) .......................... 16

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR A
PRELIMINARY INJUNCTION

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

*Ward v. Walsh,*
  1 F.3d 873 (9th Cir. 1993) ...................................................................... 23

*Winter v. Nat. Res. Def. Council, Inc.,*
  555 U.S. 7 (2008)..................................................................................... 4

**Statutes**

17 U.S.C. § 101.............................................................................. 7, 9, 10

17 U.S.C. § 106.................................................................................... 12

17 U.S.C. § 201.............................................................................. 7, 9, 11

17 U.S.C. § 204.................................................................................... 10

18 U.S.C. § 1839............................................................................ 13, 23

Cal. Civ. Code § 3426.1 ....................................................................... 13

**Rules**

Fed. R. Civ. P. 65................................................................................. 23

**Other Authorities**

1 Melville B. Nimmer and David Nimmer, *Nimmer on Copyright*
  (Matthew Bender, Rev. Ed.) .................................................................. 7

U.S. Copyright Office, *The Compendium of U.S. Copyright Office Practices*
  (3d ed. 2017) ................................................................................. 6, 15

U.S. Copyright Office, *Copyright Registration of Computer Programs*,
  Circular 61 (2017)............................................................................... 15

U.S. Copyright Office, Works Made for Hire, Circular 9 (2012) ................ 7

2 William F. Patry, *Patry on Copyright* (Mar. 2019 update) .................... 10

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR A
PRELIMINARY INJUNCTION

# INTRODUCTION

Minh Khai Nguyen, via his personal corporation, Plaintiff Softketeers, Inc., comes to this Court unabashedly seeking a judicially sanctioned shakedown.

Specifically, Softketeers claims a sole and exclusive ownership interest in copyrights and trade secrets embodied in a custom software solution developed by and on behalf of Regal West Corp d/b/a Regal Logistics ("Regal").  In doing so, Softketeers ignores Regal's rights in the trade secrets Regal has developed for nearly fifty years; Softketeers ignores Regal's nearly twenty years of software development efforts conducted before engaging Mr. Nguyen; and Softketeers ignores Regal's contribution to and ownership interest in the updated software Mr. Nguyen helped develop.  Nor does Softketeers provide the Court with a copy of the software in which Softketeers claims rights, or even identify such software with sufficient particularity for the Court to reasonably determine what contributions Mr. Nguyen made to the software, whether such contributions are protectable by copyright or trade secret, whether Softketeers has any ownership rights in such copyrights and trade secrets, or whether any defendant has acted wrongfully with respect to such software.

Meanwhile, Softketeers claims that it is somehow irreparably harmed by Regal's decision to terminate its relationship with Mr. Nguyen.  But even if that were true—it is not—the injunctive relief Softketeers seeks would not reinstate Mr. Nguyen in his software development role.  Instead, Softketeers would have this Court enjoin Regal from engaging in even basic software maintenance efforts with respect to its own custom software—efforts Mr. Nguyen declares are necessary for Regal to support its business and its customers.

Softketeers is not looking to maintain the status quo pending an adjudication on the merits; Softketeers is hoping that a preliminary injunction will produce a windfall.

Softketeers's motion should be denied.

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR A
PRELIMINARY INJUNCTION

**BACKGROUND**

Over the course of more than a generation, Regal West Corp. d/b/a Regal Logistics ("Regal") has established itself as a leader in the third party logistics (3PL) industry, offering customers with complete end-to-end logistics solutions, including cross-docking, transportation, and assembly and repackaging services.  Neeves Decl. ¶¶ 2–3.  To support these business efforts, Regal developed a set of proprietary processes, know-how, and business practices, which collectively enable Regal to provide an exceptional level of service to its customers, and from which Regal derives a significant competitive advantage ("Pre-Existing Regal Trade Secrets").  *Id.* ¶ 4.

Starting in or around 1982, Regal Logistics devoted substantial resources to the development of customized software to automate and computerize many of Regal's practices.  *Id.* ¶ 5.  Regal's proprietary custom software solution ("Pre-Existing Regal Custom Software"), which was known internally at Regal as "The System 36" embodied and implemented many of the Pre-Existing Regal Trade Secrets.  *Id.*  Around 1996 to 1997, the Pre-Existing Regal Custom Software included a first-in-industry web portal through which Regal's customers could access real-time information regarding inventory and shipments.  *Id.* ¶ 6.

In or around 1997 to 1998, Regal began efforts to transition its computer systems from System 36 to a modern Windows network platform and, accordingly, to develop an updated version of the Pre-Existing Regal Custom Software.  *Id.* ¶ 7.  To support these efforts, Regal contracted with a third party, Alis-USA.  *Id.* ¶ 8.  Under the terms of Regal's agreement with Alis-USA, Regal paid on an hourly basis for software development and information technology services and for delivery of software source code and executable software programs.  *Id.* ¶ 9.  Regal further provided Alis-USA with access (confidentially) to relevant portions of the Pre-Existing Regal Trade Secrets and contributed substantively to the software development process, including real-time input regarding software architecture and functionality and the creative layout of graphical user interface screens.  *Id.* ¶¶ 10–11.

McDermott Will & Emery LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

Among the individuals contributing to the software development efforts in that timeframe were Randy Neeves, Mr. Nguyen, Vu Ho, and Charley Hoang.  *Id.* ¶¶ 11–12.  Mr. Neeves was formally employed by Regal; Messrs. Nguyen, Ho, and Hoang were formally employees or subcontractors of Alis-USA.  *Id.*

In or around August 2000, Larry Boecker, the President of Alis-USA, informed Regal that he was stepping away from the project but that Mr. Nguyen was available to work directly for Regal.  *Id.* ¶ 14.  Mr. Boecker provided Regal with a full version of the then-existing software source code at the time of his departure.  *Id.*  Mr. Boecker further directed Mr. Nguyen to provide Regal Logistics with daily uploads of the source code on an on-going basis for Mr. Neeves's review and analysis.  *Id.*

Thereafter, Regal hired Mr. Nguyen directly to continue software development efforts and to lead a software development team for Regal.  *Id.* ¶¶ 14–16.  Regal confidentially provided Mr. Nguyen and other members of the team access to and instruction regarding the Pre-Existing Regal Trade Secrets.  *Id.* ¶¶ 10, 15–16.  Regal provided Mr. Nguyen and other members of the team access to Regal's facilities and computer systems.  *Id.* ¶ 19.  Regal supervised, directed, and reviewed Mr. Nguyen's work, including portions of the source code and compiled software, as well as the work of other members of the software development team.  *Id.* ¶¶ 17–18, 21.  And Regal (and Mr. Neeves personally on Regal's behalf) directly contributed to the software itself, including input on, for example, the algorithms used, the process flows, and the layouts of the graphical user interfaces.  *Id.* ¶ 18.  These efforts successfully resulted in updated, proprietary custom software for Regal's benefit ("Regal Software"), including Regal's Warehouse Management System ("WMS").  *Id.* ¶ 20.  The Regal Software was then continuously updated at Regal's direction and request by, among others, Messrs. Nguyen, Ho, Tran, Mai, and Doan.  *Id.* ¶ 21.

Over the course of Regal's eighteen-plus year relationship with Mr. Nguyen, Mr. Neeves (and others at Regal) and Mr. Nguyen frequently discussed a mutual interest in customizing versions of the Regal Software for license to others.  *Id.* ¶¶ 16,

McDermott Will & Emery LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

22.  And on several occasions, Regal and Mr. Nguyen worked together on specific sales opportunities, each time presenting customers with the option to acquire a version of the Regal Software along with integration and customization services to be provided by Mr. Nguyen.  *Id.* ¶ 22.  Indeed, in or around 2007, Regal and Mr. Nguyen created a joint venture known as MGR Software, LLC, to monetize the Regal Software.  *Id.*

As time went on, Mr. Nguyen lost interest in his work for Regal.  *Id.* ¶ 23.  The quality of Mr. Nguyen's work and management deteriorated.  *Id.*  And Regal lost confidence in Mr. Nguyen's maintenance of the source code for the Regal Software. *Id.* ¶ 24.  Mr. Nguyen was not employing appropriate version-control safeguards, and Regal became concerned that he could not deliver a complete version of the current source code.  *Id.*  Regal also became concerned about Mr. Nguyen's billing practices, as the final invoices he submitted reflected time entries inconsistent with the work allegedly performed during the same time periods.  *Id.* ¶ 26.  And Mr. Neeves learned that Mr. Nguyen was bragging to others that he was holding Regal hostage by ensuring the Regal Software would require consistent maintenance.  *Id.* ¶ 25.

Ultimately, Regal severed its relationship with Mr. Nguyen.

## ARGUMENT

"A preliminary injunction is an extraordinary remedy never awarded as of right."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  Instead, this "extraordinary and drastic remedy . . . should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion."  *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citation omitted) (emphasis in original).

"A plaintiff seeking a preliminary injunction must establish that (1) he is likely to succeed on the merits of his claim, (2) he is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest."  *Kennedy v. Bremerton Sch. Dist.*, 869 F.3d 813, 821 (9th Cir. 2017), *cert. denied*, 139 S. Ct. 634 (2019).  As shown below, Softketeers has failed to meet its burden with respect to each of these elements.

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

## I. Softketeers Is Unlikely To Succeed On The Merits.

### A. Softketeers is not likely to succeed on its copyright claim.

Softketeers's one-page likelihood-of-success argument falls far short of demonstrating that it is likely to win on its copyright-infringement claim (let alone that it has a valid claim at all). To be clear, to state (and ultimately to succeed on) a claim for copyright infringement, a plaintiff must allege (and ultimately prove) "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1174 (9th Cir. 2003) (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)); *see also Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1472 (9th Cir. 1992).

### 1. Softketeers fails to identify any protectable works Defendants have allegedly infringed.

Softketeers fails to identify what specific protectable works Defendants have purportedly infringed. Softketeers asserts that it owns copyrights in the source code of the Software, *see* PI Mem. 1, but elsewhere it claims to own all aspects of the Software, *see* Nguyen Decl. ¶ 9. Each of the copyright registration certificates submitted with Mr. Nguyen's declaration refer only to a "computer program" as the registered work. *See* Nguyen Exs. 2–9. And Softketeers concedes that it has not secured rights in the MyWMS portal and TMS mobile apps.[1] PI Mem. 5.

Meanwhile, several of the copyright registrations that Softketeers submitted also state that Softketeers's rights are limited. *E.g.*, Nguyen Ex. 2 ("open-source modules" excluded from copyright claimed in "MyWMS"); Ex. 3 ("open-source modules" excluded from copyright claimed in "RF System"); Ex. 6 ("database schema" excluded from copyright claimed in "WMS VB 6.0"); Ex. 8 ("database schema" excluded from copyright claimed in "WMS C#"); Ex. 9 ("open-source modules" excluded from

---

[1]    Softketeers cannot sue for copyright infringement based on these pending applications—it may only rely on its registered copyrights. *Fourth Estate Pub. Benefits Corp. v. Wall-Street.com*, 193 S. Ct. 881, 888, 892 (2019).

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

copyright claimed in "YMS").  *Cf. Feist*, 499 U.S. at 348 ("The mere fact that a work is copyrighted does not mean that every element of the work may be protected. . . . [C]opyright protection may extend only to those components of a work that are original to the author.").  Moreover, each of the copyright registrations identifies a date of completion of 2019 and does not cite to any version numbers.  *See* Nguyen Exs. 2– 9.  Thus, it is unclear whether Softketeers is claiming copyright ownership in any prior versions of the Software.  *See* U.S. Copyright Office, *The Compendium of U.S. Copyright Office Practices* § 721.9 (3d ed. 2017) ("For the purpose of copyright registration, each version of a computer program is considered a separate work.").

In short, Softketeers asks the Court to find that it is likely to succeed on the merits of a copyright-infringement claim Softketeers itself cannot even define.  To prevail on its claims, Softketeers must demonstrate that the software Regal currently uses is substantially similar to Softketeers's copyrighted works.  *E.g.*, *Antonick v. Electronic Arts, Inc.*, 841 F.3d 1062, 1065–68 (9th Cir. 2016); *Interactive Network, Inc. v. NTN Commc'ns, Inc.*, 875 F. Supp. 1398, 1405 (N.D. Cal. 1995).  But to assess substantial similarity, the Court "examines the *protected elements of the plaintiff's work* as a whole against the defendant's work."  *Situation Mgmt. Sys., Inc. v. ASP Consulting, LLC*, 560 F.3d 53, 58 (1st Cir. 2009); *Antonick*, 841 F.3d at 1066 (holding that video-game source code must be in evidence for the jury to compare the works to determine substantial similarity).  By failing to provide the Court with the programs at issue and what Softketeers deposited with the Copyright Office, the Court cannot evaluate whether Regal has infringed "protected elements" of Softketeers's claimed copyrights, let alone the scope of what Softketeers's copyrights purportedly cover.  *E.g.*, *Antonick*, 841 F.3d at 1066 ("Having presented no evidence sufficient to prove the content of its registered source code versions, [plaintiff] cannot show that any of its registered works is substantially similar to the allegedly infringing [] program." (quoting *Airframe Sys. v. L-3 Commc'ns Corp.*, 658 F.3d 100, 107 (1st Cir. 2010))); *Bridgmon v. Array Sys. Corp.*, 324 F.3d 572, 576 (5th Cir. 2003) (affirming summary

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

judgment to defendant; plaintiff failed to show content of the copyrighted source code).

### 2. Softketeers is not the sole owner of any copyrights.

Softketeers claims that it is the sole owner of the copyrights in the Software. But it is just as likely, if not more likely, that the evidence will ultimately reflect that (a) Regal is the sole legal owner of any copyrights in the Software; (b) if not the sole owner, Regal is at least a joint owner of any copyrights in the Software; and/or (c) the individual defendants and/or their personal corporations have sole and/or joint ownership interests in any copyright in the Software at issue.

### a. Regal, not Softketeers, is the sole legal owner.

As a matter of law, Softketeers holds no copyright in the Software because the Software was developed within the scope of Mr. Ngueyn's and others' employment[2] with Regal and is thus a work for hire. *See* 17 U.S.C. § 101. Regal, as the creators' employer for copyright purposes, is the legal author and (barring written assignment—none is alleged) owns all rights comprised in the copyrights. *Id.* § 201(b).

For copyright work-for-hire purposes, courts look to the "general common law of agency" to determine whether an individual was an employee at the time of the creation of the work and looks to the "hiring party's right to control the manner and means by which the product is accomplished." *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 739–41 (1989). Among other things, the Court considers such factors as the duration of the relationship between the parties, the location of the work, the sources of supplies used by the employee, and the right to assign additional projects to the hired party. *Id.* The Ninth Circuit further uses a three-prong test to assess when a work is made by an employee within the scope of his employment: (a) whether it is

---

[2]    "Employment" for copyright purposes does not mean that Softketeers or Mr. Nguyen were employees for employment or labor law purposes. *See* 1 Melville B. Nimmer and David Nimmer, *Nimmer on Copyright* § 5.03 n.87.19 (Matthew Bender, Rev. Ed.) ("The Supreme Court evidently intended that an employee for other purposes is not necessarily an employee under the work for hire doctrine."); U.S. Copyright Office, Works Made for Hire, Circular 9 (2012), https://www.copyright.gov/circs/circ09.pdf ("[T]he term 'employee' . . . differs from the common understanding of the term. For copyright purposes, 'employee' means an employee under the general common law of agency.").

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR A
PRELIMINARY INJUNCTION

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

the kind of work an employee is employed to perform; (b) whether the work occurs within authorized work hours and space limits; and (c) whether the work is actuated, at least in part, by a purpose to serve the employer.  *U.S. Auto Parts Network, Inc. v. Parts Geek, LLC*, 692 F.3d 1009, 1015 (9th Cir. 2010).

All of the work at issue was work for hire and thus owned by Regal.  As Mr. Nguyen concedes in his declaration, Regal first "hired" him in 2000 "to develop custom billing and invoicing software that Regal could use in its business."  Nguyen Decl. (Dkt. No. 20-1) ¶ 3.  According to Mr. Nguyen, Regal then "asked Softketeers to develop a more comprehensive package of software. This software became known as Warehouse Management System (WMS)."  *Id.*[3]

For approximately eighteen years, Mr. Nguyen and others performed software development work and related tasks for Regal.  Neeves Decl. ¶¶ 17–21.  According to Mr. Nguyen, most (if not all) of Softketeers's revenue came from Regal, Nguyen Decl. ¶ 30, and most of Softketeers's alleged employees spent their time developing software for Regal, *see* PI Mem. 11.  During that time, Regal employed Mr. Nguyen and others to maintain and enhance the Software.  Neeves Decl. ¶¶ 20–21; Compl. ¶ 22.

Mr. Nguyen, Mr. Ho, and others performed development work on each of these programs on site at Regal's offices and during Regal's business hours, invoicing Regal for this work on an hourly basis.  Neeves Decl. ¶¶ 19, 27.  Regal supervised and directed the work of the software engineers.  Indeed, Mr. Neeves personally reviewed and directed the work of, for example, Messrs. Nguyen, Ho, and Hoang, communicating with each directly and regularly.  *Id.* ¶¶ 17–18, 21.  *E.g., Lewis v. Activision Blizzard, Inc.*, 634 F. App'x 182, 183 (9th Cir. 2015) (work for hire found where, among other things, employee "was paid her hourly rate," employer "had at least some control over the content" of work, work was created specifically for employer's existing product, and used employer's software).

---

[3]   More accurately, Regal directed Mr. Nguyen (an individual) and other software engineers, not Softketeers, in the performance of their duties.  Neeves Decl. ¶¶ 17, 21.

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

As a result, all of the software programs are works for hire, meaning Softketeers does not own a copyright in any of the programs at issue.  Without owning valid copyrights, Softketeers cannot prevail on its copyright-infringement claim.

### b. If Regal does not exclusively own all of the Software as a work for hire, the individual creators retained rights.

Even if Regal does not solely own all of the Software as the creators' employer for copyright purposes, Softketeers fails to demonstrate that it solely owns any copyrights.  Mr. Neeves and Charley Hoang contributed to the creation of the Software.  Neeves Decl. ¶¶ 12, 18.  And Softketeers admits that at least Defendants Ho, Tran, Mai, and Doan, as well as Mr. Hoang and Brandon Le, created at least portions of the software.[4]  Compl. ¶¶ 21, 25–26; PI Mem. 5; Nguyen Decl. ¶ 11 & Exs. 4, 6, 10–13.  Unless the individual creators' work constituted a work for hire *for Softketeers*, each such individual has an ownership interest in any portion of the Software on which they worked (or, as joint authors, in the Software as a whole).  17 U.S.C. §§ 101, 201(a).

Softketeers presents no evidence to show that the software development work of the individual creators qualifies as a work for hire *for Softketeers*.  Softketeers alleges only that Messrs. Ho, Tran, Mai, and Doan performed software development work for Softketeers as independent contractors, not as employees, Compl. ¶¶ 21, 25–26, and makes no allegations as to the nature of work performed by Messrs. Hoang and Le.  Under the Copyright Act, only specifically enumerated types of work by non-employees can be works made for hire, and such an arrangement requires a written agreement that the work is a work made for hire.  17 U.S.C. § 101.  The work of the individual creators is not one of those enumerated types of works.  *See id.*  Nor does Softketeers allege—let alone present any evidence—that Softketeers has a written work-for-hire agreement with each such *individual*.

Nor does Softketeers present any evidence that the individual creators were

---

[4]    Several of Softketeers's copyright registrations identify certain corporate defendants as authors.  *E.g.*, Nguyen Ex. 5.

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

employees of (or otherwise assigned their interests to) the corporate defendants—Thai Tran, Inc., Vu Ho, Inc., and Don Mai, Inc.—with which Softketeers executed "consulting agreements." *See* Nguyen Exs. 10–13; 17 U.S.C. § 204.

Even if the individual creators' ownership interests were somehow transferred to the corporate defendants, there is no evidence that the corporate defendants ever assigned their ownership interests in a writing to Softketeers, as required by 17 U.S.C. § 204. Softketeers's agreements with the corporate defendants do not purport to transfer, let alone validly transfer, the corporate defendants' then-existing copyrights to Softketeers. *Cf.* Nguyen Exs. 10–13. Indeed, the contract language does not even purport to be an assignment. An assignment of a copyright must specify the rights conveyed, and there is nothing in any of the consulting agreements that identifies the Software subject to the agreements. *See Gladwell Gov't Servs. v. Cnty. of Marin*, 265 F. App'x 624, 626 (9th Cir. 2008) ("Transfer of a copyright interest must be made expressly."). And some of the consulting agreements post-date some of the individual defendants' work on the Software—in some cases, by nearly a decade.[5]

Given the above, if Regal does not own the Software, the individual creators do.

### c.    Regal has at least a joint ownership interest.

Even if Softketeers has some ownership interest in the Software, Regal at the very least also holds an ownership interest because each of the software programs constitutes a joint work. Under the Copyright Act, a "joint work" is a work "prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101.

Regal is an author of the software.[6] The Ninth Circuit considers the exercise of

---

[5]    Mr. Nguyen declares the existence of earlier written agreements, Nguyen Decl. ¶ 11, but does not provide them to the Court. And Softketeers makes no showing whatsoever regarding ownerships of any contributions made by Messrs. Hoang and Le. The absence of a written transfer cannot be cured today. *See Konigsberg Int'l, Inc. v. Rice*, 16 F.3d 355, 357 (9th Cir. 1994).

[6]    The fact that Softketeers's registrations do not refer to Regal or Mr. Neeves as joint authors is not dispositive of the issue. "Obtaining a registration in one party's name or listing both parties as joint authors should be a factor only if the other party was aware of and did not object to the registration." 2 William F. Patry, *Patry on Copyright* § 5:27 (Mar. 2019 update).

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

control the most important factor in determining whether a party is an author. *Aalmuhammed v. Lee*, 202 F.3d 1227, 1234 (9th Cir. 2000). Beginning in 1982, Regal invested substantial time and expense in developing proprietary software to automate its warehouse practices. Neeves Decl. ¶ 5. In 1997 or 1998, Regal began to transition to a modern Windows operating system and needed to rebuild the source code for its proprietary software so it could run on the new network. *Id.* ¶ 7. Regal then directed Mr. Nguyen's and others' work on the software. *Id.* ¶¶ 17, 21. Regal also provided substantial creative contributions to the software, including the original program that needed to be translated into the necessary source code, input regarding software architecture and functionality, the algorithms used by the software, process flows, and the layout of graphical user interfaces. *Id.* ¶¶ 5, 10–11, 18, 21. *E.g.*, *Berryhill v. Minarik*, 05-cv-810, 2006 WL 696318, at *3 (D. Or. Mar. 14, 2006) ("The record clearly shows that both parties at one time intended their contributions—Minarik's original software and Berryhill's new code—to merge into inseparable part of the new Nova TAS software. . . . Minarik made a substantial contribution by providing the actual framework for Berryhill's code adaption, not just ideas.").

Mr. Nguyen's past conduct consistently acknowledged Regal at least as a joint author of the work. *Aalmuhammed*, 202 F.3d at 1234 (considering whether the "putative coauthors made objective manifestation of a shared intent to be coauthors"). Mr. Neeves and Mr. Nguyen repeatedly discussed their intention to work jointly in developing and updating the software. Neeves Decl. ¶¶ 16, 29. And Regal and Mr. Nguyen collaborated to license the Software and represented to potential customers that they were joint owners and business partners. *Id.* ¶¶ 16, 22. *Pulver v. Battelle Mem. Inst.*, No. 05-cv-5028, 2009 WL 224490, at *10 (E.D. Wash. Jan. 29, 2009) (granting summary judgment where software was "result of a collaborative effort").

As at least a joint author, Regal is at least a co-owner of any copyrights in the Software. 17 U.S.C. § 201(a). Regal thus has the right to do the very activities Softketeers claims are infringing—reproduce the Software, prepare derivative works

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

of the Software, and distribute copies of the Software. *Id.* § 106. Softketeers thus has failed to show that it is likely to prevail on its copyright infringement claim.

### 3.    At minimum, Regal has an irrevocable, nonexclusive license.

Finally, even if the Court credits Softketeers's ownership claims at this early stage—and it should not—the Court must then also recognize that Regal has no less than an implied, irrevocable, nonexclusive license to use, retain, and modify the Software developed at its direction to implement its proprietary business processes.

An implied license is granted when "(1) a person (the licensee) requests the creation of the work, (2) the creator (the licensor) makes that particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee-requestor . . . use, retain, and modify the programs." *Asset Mktg. Sys. v. Gagnon*, 542 F.3d 748, 754–55 (9th Cir. 2008) (quoting *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 776 (7th Cir. 1996)). Nonexclusive licenses need not be in writing and may be granted by implication. *Id.* All three elements are satisfied here.

First, Softketeers developed the software at the request of Regal and made changes to the software at Regal's direction. Neeves Decl. ¶¶ 15–21. Second, Softketeers performed its work specifically for Regal and delivered the software to Regal throughout Softketeers's eighteen-year relationship with Regal. *Id.*

Regarding whether Softketeers intended for Regal to retain and modify the Software, the Court must look to the "licensor's objective intent at the time of the creation and delivery of the software as manifested by the parties' conduct." *Asset Mktg.*, 542 F.3d at 756. "A belated statement that the programs could not be used after [Softketeers's] departure, made after the termination decision and well after the creation and delivery of the programs for which substantial sums were paid, [are] not sufficient to negate all other objective manifestation of intent to grant [Regal] an unlimited license." *Id.* at 757. In *Asset Marketing*, the Ninth Circuit found that a licensor's delivery of "software without any caveats or limitations on [the licensee's] use of the programs" demonstrated an intent for the licensee to retain and modify the

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR A
PRELIMINARY INJUNCTION

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

software.  *Id.*  So too here.  Softketeers never limited Regal's use of the Software in any way at the time it delivered the Software to Regal.  Neeves Decl. ¶¶ 28–29.

Softketeers's conduct throughout its eighteen-year relationship with Regal demonstrates that—even if Regal is not the owner of such Software—Softketeers at minimum granted Regal "an unlimited, non-exclusive license to retain, use and modify the software."  *Asset Mktg.*, 542 F.3d at 757.  That license is irrevocable in light of Regal's payments to Softketeers for the Software.  *Id.* ("A non-exclusive license supported by consideration is a contract.").  And as Mr. Nguyen acknowledges, ongoing use of the Software necessarily requires access to the underlying source code Regal paid Mr. Nguyen to deliver.  Nguyen Decl. ¶ 21 ("The Software requires ongoing maintenance and development, in order to continue serving the needs of Regal and its customers[, which] ongoing work *requires* the source code.").  Because the infringing conduct of which Softketeers complains falls within the scope of Regal's implied license, Softketeers is unlikely to prevail on the merits of its copyright infringement claim.  *E.g.*, *Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 559 (9th Cir. 1990) (nonexclusive license precluded copyright infringement suit).

**B.    Softketeers will not likely succeed on its trade-secret claims.**

Softketeers's trade secret claims fare no better.  Misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA") requires the plaintiff to prove "(1) the plaintiff owned a trade secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's actions damaged the plaintiff."  *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d. 868, 877 (N.D. Cal. 2018) (internal quotation marks omitted).  The elements of California's version of the Uniform Trade Secret Act are consistent with the DTSA in all relevant respects.  *See id.*  *Compare* 18 U.S.C. § 1839(3)–(6), *with* Cal. Civ. Code § 3426.1(b).

Here, at minimum, Softketeers has not sufficiently identified the information eligible for trade-secret protection.  Nor has Softketeers sufficiently established a likelihood of showing a sole ownership interest in such unidentified information.  And

even if Softketeers could establish ownership, a misappropriation claim fails in the face of Regal's need to access, use, and modify the source code for the Software.

### 1. Softketeers has not identified any information that it could validly claim to be trade secret.

"[A] plaintiff who seeks relief for misappropriation of trade secrets must identify the trade secrets and carry the burden of showing that they exist." *MAI Sys. Corp. v. Peak Comput., Inc.*, 991 F.2d 511, 522 (9th Cir. 1993). Softketeers has not demonstrated a likelihood of carrying this burden for at least four reasons.

First, Softketeers does not describe its alleged trade secrets with sufficient particularity to enable the Court to determine whether such trade secrets exist, much less who owns them or whether they have been misappropriated. *See Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1164–65 (9th Cir. 1998) ("The plaintiff should describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in the trade." (citation and internal quotations omitted)). Indeed, Mr. Nguyen does not in his declaration identify anything that he claims to be trade-secret information owned by Softketeers. And Softketeers's brief asserts no more than that source code exists that Mr. Nguyen claims has been maintained in confidence. PI Mem. 8–9. But source code is not necessarily a trade secret, in whole or even in part.

Second, as discussed above, Softketeers has admitted that at least a portion of the Software for which it now seeks trade-secret protection is comprised of "open source" material. *E.g.*, Nguyen Ex. 2 ("open-source modules"); Ex. 3 ("open-source modules"); Ex. 9 ("open-source modules"). Open source software is publicly available and does not satisfy the requirement that a trade secret be secret.

Third, as Mr. Nguyen acknowledges, certain source code files in which Softketeers now asserts rights were written in JavaScript and aspx. Nguyen Decl. ¶ 7. Those files, of course, are publicly accessible when deployed in connection with any public website or web portal. *See Live Face on Web, LLC v. AZ Metroway, Inc.*, No.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

15-cv-1701, 2016 WL 4402796, at *3 (C.D. Cal. Aug. 15, 2016) (noting evidence that "because its software is written in JavaScript, it is possible to view the actual source code of the software through a web browser").

Fourth, again as discussed above, Softketeers alleges that it has sought and obtained registered copyright protection for some software and that it has sought but not yet obtained registered copyright protection for other software. But Softketeers has completely failed to allege that its copyright registration submissions were redacted in any way. Nor has Softketeers alleged sufficient facts, much less provided evidence, that it complied with the procedure for the submission of source code containing trade secret material to the Copyright Office.[7]  *See* U.S. Copyright Office, *Copyright Registration of Computer Programs*, Circular 61 (2017), at 3 (noting options for depositing source code containing trade secrets); U.S. Copyright Office, *The Compendium of U.S. Copyright Office Practices* § 1509.1 (C)(4) (3d ed. 2017). "Under such circumstances, Plaintiff's pleadings fail to demonstrate a likelihood of success on the merits of its misappropriation of trade secrets claim." *Mobile Active Def., Inc. v. L.A. Unified Sch. Dist.*, No. 15-cv-8762, 2015 WL 12860491, at *5 (C.D. Cal. Dec. 14, 2015); *KEMA, Inc. v. Koperwhats*, 658 F. Supp. 2d 1022, 1031 (N.D. Cal. 2009) (holding that defendant's counterclaim for trade-secret misappropriation failed where defendant filed source code with the Copyright Office and failed to allege any facts to suggest that his submission was redacted).

Accordingly, Softketeers has not demonstrated a likelihood of showing that any trade-secret information even exists.

### 2. Softketeers has not established a likelihood of showing a sole ownership interest in such information.

---

[7]  As discussed further below, the Software in which Softketeers now claims rights actually embodies Regal's proprietary business processes, which were disclosed to Mr. Nguyen and other software engineers confidentially during the software development process. Insofar as Softketeers did not properly follow Copyright Office procedure for submission of source code containing trade-secret material, Softketeers is liable to Regal for wrongful public disclosure of Regal's trade secrets.

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

Significantly, Mr. Nguyen acknowledges that his work on Regal's software was based on "criteria that had been provided."  Nguyen Decl. ¶ 3.  As Mr. Neeves clarifies, Regal, and Mr. Neeves in particular, confidentially disclosed to Mr. Nguyen and others on the software development team information regarding Regal's proprietary business processes and directed Mr. Nguyen regarding how those proprietary business processes were to be embodied in and performed by the custom software.  Neeves Decl. ¶¶ 9–10, 17–21.  It is thus necessarily the case that Regal maintains a proprietary interest in its trade-secret information embedded in the source code.

Meanwhile, as detailed above, Mr. Nguyen performed his work over the last eighteen years at Regal's behest, and all rights in the source code vested with Regal both by the terms of the parties' implied-in-fact contract, and as a matter of equity.

Mr. Nguyen has not, and cannot, establish otherwise.

### 3. Regal's need for the source code precludes Softketeers's misappropriation claim.

Finally, even if Softketeers could establish an ownership interest in any trade-secret information embodied in the software, Regal at minimum is legally entitled to use and modify the source code for the Software.  *See* Section I.A.3 above.  Such a license necessarily includes access to any trade secrets embodied in the software.  *Asset Mktg.*, 542 F.3d at 758. ("[H]aving concluded that Gagnon granted AMS an implied, unlimited license to the programs software, we conclude that AMS could not have misappropriated Gagnon's trade secret. . . . AMS was legally entitled to use and modify the source code; the license included access to any trade secret embodied therein.").

## II. Softketeers Fails To Show Likely Irreparable Harm That Preliminary Relief Would Remedy.

The preliminary-injunction standard "requires a plaintiff to demonstrate that the irreparable harm is real, imminent and significant—not merely speculative or remote." *United Westlabs, Inc. v. Seacoast Lab. Data Sys., Inc.*, No. 08-cv-08649, 2010 WL

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR A
PRELIMINARY INJUNCTION

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

11515301, at *3 (C.D. Cal. Jan. 7, 2010).  "Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction." *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988).

The court cannot rely on "unsupported and conclusory statements regarding harm [the plaintiff] might suffer." *Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013).  Thus, a plaintiff cannot establish irreparable harm by mere conclusory affidavits from its executive delineating business disruption. *See Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1473 (9th Cir. 1985) ("[The plaintiff] supported this [alleged irreparable harm] with affidavits from its own executives delineating the disruptive effect of these contracts on AP's business. These affidavits are conclusory and without sufficient support in facts.").

The plaintiff must also establish that the "requested injunction would forestall" the irreparable harm the plaintiff asserts.  *Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 981 (9th Cir. 2011).  "To satisfy its burden of proving irreparable injury, [the plaintiff] must demonstrate a causal connection between the alleged harm and the actions to be enjoined; a preliminary injunction will not issue unless it will remedy the alleged injuries." *Hunter Grp., Inc. v. Smith*, No. 97-2218, 1998 WL 682154, at *2 (4th Cir. Sept. 23, 1998) (internal quotation marks omitted); *see also Seto v. Thielen*, No. 10-cv-351, 2010 WL 2612603, at *3 (D. Haw. June 28, 2010) (denying preliminary injunction "[b]ecause the requested injunction would not prevent irreparable harm"); *Sierra Club v. U.S. Dep't of Energy*, 825 F. Supp. 2d 142, 153 (D.D.C. 2011) ("It would make little sense for a court to conclude that a plaintiff has shown irreparable harm when the relief sought would not actually remedy that harm.  A plaintiff may be irreparably harmed by all sorts of things, but the irreparable harm considered by the court must be caused by the conduct in dispute and remedied by the relief sought.").

Softketeers fails to establish likely irreparable harm that the requested preliminary relief would remedy.  Accordingly, the Court "need not address its likelihood of success on the merits." *See Perfect 10*, 653 F.3d at 982 n.3.

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR A
PRELIMINARY INJUNCTION

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

**A.    Alleged economic injury does not establish irreparable harm.**

"[E]conomic injury alone does not support a finding of irreparable harm, because such injury can be remedied by a damage award." *Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991).

**1.    Vague allegations of bankruptcy are not irreparable harm.**

Softketeers argues that it has been "pushed to the verge of bankruptcy" because most of its revenue stream, which came from Regal, has dried up and because Regal refused to pay Softketeers's $277,000 final invoice.  PI Mem. 11–12.  Thus, according to Softketeers, it now "has no leverage to extract payment of outstanding invoices and no prospective revenue stream." *Id.* at 12.  But Softketeers offers no *evidence* upon which the Court could conclude that Softketeers will be forced into bankruptcy; Mr. Nguyen does not so declare, nor does Softketeers offer any evidence of its financial instability.  Softketeers has not borne its burden to prove future irreparable harm is likely. *See Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("[T]emporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury."); *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 802 (3d Cir. 1989) ("The district court's determination that Instant will be forced to shut down is not supported by any financial statements or projections in the record indicating that Instant will be forced into bankruptcy. . . .  It is entirely free and always has been free to secure other business.").  Softketeers's lost revenue is "economic injury alone" and cannot support a finding of irreparable harm. *Rent-A-Ctr.*, 944 F.2d at 603.

Nor has Softketeers established that its requested injunction would rescue it from its alleged financial failure.  "While being forced into bankruptcy qualifies as a form of irreparable harm," the plaintiff must "establish[] that the requested injunction would forestall that fate." *Perfect 10*, 653 F.3d at 981 (citing *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 932 (1975)).  Softketeers seeks to enjoin Defendants from using source code.  Enjoining use of the source code will not give Softketeers the money it needs to avoid bankruptcy. *See IXL Inc. v. AdOutlet.Com, Inc.*, No. 01-cv-0763, 2001 WL

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR A
PRELIMINARY INJUNCTION

315219, at *14 (N.D. Ill. Mar. 29, 2001) ("[T]he preliminary injunction that iXL seeks only would bar AdOutlet from using the source code.  It would not bring money into iXL's coffers (at least directly). For all of these reasons, the Court finds that iXL has not made a showing of irreparable harm."); *Navistar, Inc. v. U.S. Envtl. Prot. Agency*, No. 11-cv-449, 2011 WL 3743732, at *3 (D.D.C. Aug. 25, 2011).

Finally, Softketeers admits that Regal had the right to terminate its arrangement with Mr. Nguyen.  PI Mem. 12.  Mr. Nguyen's voluntary decision not to develop other business "out of deference to Regal" is the type of "self-inflicted" injury courts will not remedy with a preliminary injunction.  *E.g.*, *Navient Sols., LLC v. United States*, 141 Fed. Cl. 181, 185 (2018) ("[The plaintiff] chose to depend upon [the defendant's] contracts to survive.  [The plaintiff] chose to enter into a PCA contract that does not guarantee it a minimum amount of business.  The Court's power to issue a preliminary injunction does not exist to remedy this type of harm."); *Southtech Orthopedics, Inc. v. Dingus*, 428 F. Supp. 2d 410, 422 (E.D.N.C. 2006).

Softketeers's counsel's assertion that Softketeers will spiral into bankruptcy and not be able to see its claims through to trial absent the requested injunctive relief cannot support a finding of irreparable harm here.  *E.g.*, *Renegotiation Bd. v. Bannercraft Clothing Co., Inc.*, 415 U.S. 1, 24 (1974) ("Mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury.").

## 2.    Losses of future revenue are not irreparable harm.

Softketeers argues that had Regal just terminated the parties' arrangements without allegedly using the source code, Softketeers would have earned revenue through (1) royalties from Regal for executable code and (2) consulting revenue directly from Regal's customers.  PI Mem. 12–13.  Of course, lost revenue is an "economic injury" that "can be remedied by a damage award." *Rent-A-Ctr.*, 944 F.2d at 603.  For that reason alone, the Court should reject this alleged irreparable harm.

Nonetheless, Softketeers alleges that Regal would have paid for a license to use the executable code Softketeers had already delivered.  PI Mem. 12–13.  For this

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

argument, Softketeers makes up terms of an alleged license out of whole cloth.  But even assuming that Regal does not own or co-own the Software (it does), *even then* Regal has *at least* an irrevocable implied license to the already delivered executable code consistent with *Asset Marketing*, 542 F.3d 748.  *See* Section I.A.3 above.

Second, Softketeers's flimsy assertion that Regal's customers would pay Softketeers to do consulting work on the software is rampant speculation or, worse, tortious.  PI Mem. 13–14.  At minimum, and as further discussed below and detailed in the Neeves Declaration, the Software embodies Regal trade secrets; Softketeers therefore *could not* legally develop and revise the Software for its independent commercial benefit or for the benefit of others without Regal's authorization.

More, Softketeers does not identify specific customers or offer any evidence that those unidentified customers would want to do business with Softketeers directly (they have not before).  Softketeers's conclusory assertions about loss of goodwill, with no evidence from such untold customers, cannot establish irreparable harm.  *Goldie's Bookstore, Inc. v. Superior Court of State of Cal.*, 739 F.2d 466, 472 (9th Cir. 1984) ("[T]he court determined that Goldie's would lose goodwill and 'untold' customers. This finding, not based on any factual allegations, appears to be speculative. Speculative injury does not constitute irreparable injury."); *Fox Ins. Co. v. Envision Pharm. Holdings, Inc.*, No. 09-cv-237, 2009 WL 790312, at *7 (E.D.N.Y. Mar. 23, 2009); *Nat'l Football League Players Ass'n v. Nat'l Football League Props., Inc.*, No 90-cv-4244, 1991 WL 79325, at *4 (S.D.N.Y. May 7, 1991).

Indeed, Softketeers's evidence shows that Regal's customers want to do business with *Regal*, not that they care which entity performs IT services.  *E.g.*, Nguyen Ex. 27 (working with Regal employees to address IT issue).  Accordingly, Softketeers's claim of goodwill with Regal's customers and its assertion that Softketeers could "leverage that goodwill into broader relationships with those customers" is entirely speculative.  *See The Reynolds & Reynolds Co. v. Alt. Source, Inc.*, No. 12-cv-10717, 2013 WL 12113230, at *8 (C.D. Cal. Feb. 21, 2013)

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

("Reynolds offers no evidence that, even assuming that Alternative is enjoined and stubbornly refuses to change its forms, customers will naturally flock to Reynolds as the new supplier. They might, instead, seek out third party suppliers who offer a better product, better service, better pricing or some combination of all three."); *Manganaro v. InteropTec Corp.*, 874 F. Supp. 660, 662 (E.D. Pa. 1995) ("Their assertions of irreparable harm are hypothetical customers that may need hypothetical assistance.").

Finally, Softketeers fails to connect how Regal's alleged use of source code is causing Softketeers's alleged loss of goodwill and inability to establish broader relationships with Regal's customers. *See Perfect 10*, 653 F.3d at 981 ("[The plaintiff] failed to establish that [the defendant's] operations would *cause* it irreparable harm." (emphasis added)). If Softketeers really believed that Regal's customers would want to do business with it directly, it is free to try (provided, of course, it does not disclose Regal's trade secrets or tortiously interfere with Regal's business). Absent evidence that Regal's customers have *not* engaged Softketeers *because* Regal is allegedly using source code, Softketeers cannot establish irreparable harm.

## B.     Softketeers's alleged loss of "exclusive title" and "bargaining position" cannot establish irreparable harm.

Softketeers asserts that it needs preliminary relief to maintain its "exclusive title" to the source code. Of course, as explained above, Softketeers does not have— and never had—exclusive nor unclouded title to the Software.

In any event, Softketeers fails to establish irreparable harm from any modifications of the source code between now and trial that money damages or an order in this case could not remedy if Softketeers prevails. Softketeers should of course have a copy of the alleged source code as it existed before this dispute arose (indeed, it necessarily deposited something with the Copyright Office), and it can be compared to Regal's later-existing source code. The parties and the Court can then address Softketeers's hypothetical title and any issues pertaining to alleged modifications. In other words, this is not a situation where a party modifies the source

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

code for the purpose of selling it to third parties, and the modified versions are effectively irretrievable.  The Court has jurisdiction over Regal.

Softketeers's assertion that it will be prevented "from pursuing collateral opportunities that leverage the work done first to service Regal" is tortious. Softketeers has no right to sell the Software to third parties because it embodies Regal's trade secrets.  In any event, Softketeers has not identified *any* entity that wants to purchase its services *besides* Regal.  Such speculation cannot support an injunction.

Finally, Softketeers argues that failing to grant preliminary relief will "lock[] [it] into a bilateral-monopoly relationship with Regal."  PI Mem. 16.  That of course is not irreparable harm because it is already Softketeers's best-case scenario.  The Software contains Regal's trade secrets.  Accordingly, insofar as Softketeers has *any* ownership interest in the source code (it does not), it at least shares its interest with Regal.  Indeed, a bilateral monopoly is what Softketeers *wants*.  Softketeers does not have other business of its own; it has only ever serviced Regal.  Thus, Softketeers's transparent purpose in seeking this preliminary injunction is not to stop Regal's use of the source code but rather to see if it can threaten Regal's business to the point that Regal will foot the bill for Softketeers's own poor business decisions.

## C.   There is no likelihood Regal will disseminate the source code without taking reasonable measures to protect its secrecy.

Softketeers argues that it will suffer irreparable harm "to the extent derivatives [of the source code] are disseminated *outside* Regal" and "to the extent that defendants make further disclosures" of the alleged trade-secret source code. PI Mem.16–17.  The Court should swiftly reject Softketeers's argument because it is inconceivable, let alone likely, that Regal would disseminate the source code to third parties without taking reasonable measures to preserve the source code's secrecy.[8]

_____

[8]   The individual defendants are under contract with Regal and subject to confidentiality obligations.  Softketeers's assertion that the programmers have "shown themselves willing to disregard" confidentiality restrictions is false.  PI Mem. 17.  As explained above, Regal and/or the

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

Why?  The source code embodies *Regal's* trade secrets.  Disseminating the code unrestricted would destroy *Regal's* trade-secret rights for the same reasons Softketeers alleges it would destroy Softketeers's rights.  *See* PI Mem. 16–17.  Accordingly, there is no reason to believe Regal would distribute the source code without taking "reasonable measures to keep such information secret."  18 U.S.C. § 1839(3).

## III.    The Balance Of Equities Does Not Tip Sharply In Softketeers's Favor.

The Court "has a duty . . . to balance the interests of all parties and weigh the damage to each."  *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138 (9th Cir. 2009) (internal quotation marks omitted).  Equity requires assessment of harm to non-parties. *Ward v. Walsh*, 1 F.3d 873, 879–80 (9th Cir. 1993).

Here, the balance of equities tips sharply in *Regal's* favor.  Softketeers puts into evidence that it is a company with one "employee"—its owner, Mr. Nguyen.  And it has no business besides Regal's.  Regal, however, is an established third-party logistics company with many customers that rely on its services.  Softketeers seeks an injunction not to protect its rights but transparently to gain "leverage" with Regal.

It is *Regal* and *Regal's customers* who are likely to suffer from the requested preliminary relief because Regal's business would be in limbo until Regal accedes to Mr. Nguyen's ridiculous demands.  Indeed, Mr. Nguyen himself claims that "[t]he Software requires ongoing maintenance and development, in order to continue serving the needs of Regal and its customers[, which] ongoing work *requires* the source code." Nguyen Decl. ¶ 21 (emphasis declarant's).

Finally, Federal Rule of Civil Procedure 65(c) provides that "[t]he court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined."  A wrongfully restrained party's damages for being wrongfully restrained is limited to the amount of the security.  *Squaxin Island Tribe v.*

---

programmers have legitimate (indeed, strong) claims of ownership or license to the Software.  *See* Sections I.A.2, I.B.2 above.

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR A
PRELIMINARY INJUNCTION

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

*Washington*, 781 F.2d 715, 724 (9th Cir. 1986).  Accordingly, "[w]hen setting the amount of security [for preliminary relief], district courts should err on high side." *Mead Johnson & Co. v. Abbott Labs.*, 201 F.3d 883, 888 (7th Cir. 2000).  As the Third Circuit explained,

> It is true that a bond may create a barrier to the granting of a preliminary injunction.   The barrier fulfills one of the purposes of the bond requirement.
>
> . . . The bond grows out of the idea that because of attenuated procedure, an interlocutory order has a higher than usual chance of being wrong.  . . . The bond deters rash applications for interlocutory orders; the bond premium and the chance of liability on it causes plaintiff to think carefully beforehand. An incorrect interlocutory order may harm defendant and a bond provides a fund to use to compensate incorrectly enjoined defendants.

*Instant Air*, 882 F.2d at 804 (citation omitted); *see also Nintendo of Am., Inc. v. Lewis Galoob Toys, Inc.*, 16 F.3d 1032, 1037 (9th Cir. 1994) (establishing a rebuttable presumption that "the party [wrongfully] enjoined will usually recover damages, thus discouraging parties from requesting injunctions based on tenuous legal grounds").

By Softketeers's own admissions that it is near bankruptcy and had no other business besides Regal's, it is extremely unlikely Softketeers could secure and post adequate security that would compensate Regal for the very serious business losses it could suffer if wrongfully enjoined pending trial.

Thus, the balance of equities entirely favors Regal.

**IV.   The Proposed Preliminary Injunction Is Not In The Public Interest.**

"Public policy does not advocate the liberal issuance of *preliminary* injunctions in copyright infringement actions." *Nintendo*, 16 F.3d at 1038.

Here, Softketeers seeks a preliminary injunction for copyright infringement it has not bothered to prove.  Public policy disfavors such relief.  *Id.*  And public policy does not support granting preliminary relief where Softketeers failed to secure what it now claims to be its rights for twenty years and only decided to secure them after Regal made the business decision to end the relationship.  *IXL*, 2001 WL 315219, at *15. The public interest does not favor this Court writing an agreement Softketeers wishes

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR A
PRELIMINARY INJUNCTION

it would have made in order to grant Softketeers preliminary relief.

Finally, Softketeers's requested relief is against the public interest because it is anti-competitive.  Rather than compete for the ability to work with Regal, Softketeers wants to use its tenuous rights in the Software to force on Regal a Softketeers monopoly on software development and IT services.  *Cf. Machlett Lab., Inc. v. Techny Indus., Inc.*, 665 F.2d 795, 798 (7th Cir. 1981) (vacating preliminary injunction; "Consequently, the public interest in the low cost of health care is also disserved insofar as reduced competition would probably increase the price of mobile x-ray machines.").  In short, the public interest does not favor the grant of preliminary relief.

**V.    Softketeers Is Ineligible For Equitable Relief Because Of Unclean Hands.**

"The doctrine [of unclean hands] bars relief to a plaintiff who has violated conscience, good faith or other equitable principles in his prior conduct, as well as to a plaintiff who has dirtied his hands in acquiring the right presently asserted." *Seller Agency Council, Inc. v. Kennedy Ctr. for Real Estate Educ., Inc.*, 621 F.3d 981, 986 (9th Cir. 2010) (internal quotation marks omitted); *see also Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945).  This doctrine bars Softketeers's requested relief here.

Softketeers's claims in this case allege that Regal cannot use the very software— including its source code—for which Regal paid Softketeers millions of dollars to develop.  If this is correct, Softketeers defrauded Regal, and Softketeers is barred from equitable relief.  *See Aero Fulfillment Servs. Corp. v. Oracle Corp.*, 186 F. Supp. 3d 764, 775–77 (S.D. Ohio 2016).

In addition, Softketeers cannot produce to Regal a complete, current version of the source code as required by the parties' implied-in-fact contract.  Neeves Decl. ¶ 24. Regal has learned that Mr. Nguyen has been manipulating the Software to ensure that it would require Mr. Nguyen's ongoing maintenance support.  *Id.* ¶ 24.  And Mr. Nguyen's final invoices appear fraudulent.  *Id.* ¶ 26.

Mr. Nguyen's deceitful practices preclude injunctive relief.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

1

**CONCLUSION**

2

The Court should deny Softketeers's motion for a preliminary injunction.

3

Dated: April 8, 2019

4

**MCDERMOTT WILL & EMERY LLP**

5

6
By:   /s/  Paul M. Schoenhard

PAUL M. SCHOENHARD

7
Attorneys for Defendants

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR A
PRELIMINARY INJUNCTION