## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-519 JVS (JDEx) | Date | May 6, 2019 |
| Title | Softketeers, Inc. v. Regal West Corporation, et al. | | |

Present: The Honorable    James V. Selna, U.S. District Court Judge

| Lisa Bredahl | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

Attorneys Present for Plaintiffs:     Attorneys Present for Defendants:

Not Present                             Not Present

**Proceedings:**    **(IN CHAMBERS) <u>Order Regarding Motion for Preliminary Injunction</u> [20]**

Plaintiff Softketeers, Inc. ("Softketeers") filed a motion for a preliminary injunction. Mot., Docket No. 20. Defendants Regal West Corporation d/b/a Regal Logistics ("Regal"), Vu Ho Inc., Thai Tran Inc., Don Mai Inc. (together, the "Individual Corporations"), Randy Neeves ("Neeves"), Vu Ho ("Ho"), Thai Quac Tran ("Tran"), Don Mai ("Mai"), and Trung Ngoc Doan ("Doan") (together, the "Individual Defendants") (collectively, "Defendants") filed an opposition. Opp'n, Docket No. 27. Softketeers replied. Reply, Docket No. 31.

For the following reasons, the Court **grants** the motion.

### I. BACKGROUND

Regal is a third-party logistics company. Declaration of Randy Neeves, Docket No. 27-1 ("Neeves Decl.") ¶ 3. Neeves is Regal's CEO. Id. ¶ 1. Softketeers is a software company. Declaration of Minh Khai Nguyen, Docket No. 20-1 ("Nguyen Decl.") ¶ 2. Minh Khai Nguyen ("Nguyen") is the CEO, sole shareholder, and sole director of Softketeers. Id. ¶ 1.

In approximately the fall of 2000, Regal asked Softketeers to develop custom billing and invoicing software for Regal's use in its business operations. Nguyen Decl. ¶ 3; Neeves Decl. ¶ 15. Softketeers then developed a comprehensive software package which would become known as Warehouse Management System ("WMS"). Nguyen Decl. ¶ 3. WMS was commercially launched in 2001. Id. ¶ 4. WMS was continually developed and modified by Softketeers and its small team of employees and contractors.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-519 JVS (JDEx) | Date | May 6, 2019 |
| Title | Softketeers, Inc. v. Regal West Corporation, et al. | | |

Id. WMS was expanded into billing, inventory, warehouse, and order management software that was specifically designed by Softketeers for the third-party logistics industry. Id. WMS became a comprehensive software solution to manage shipping, warehousing and logistics supply chain, from port/pier, to intake trucking, to warehousing/inventory, to outbound trucking, and to end customers and retailers. Id.

Over the years, Softketeers has also created additional applications to complement the core WMS application, including: RF Systems ("RFS"), a physical inventory tracking system deployed in 2003; MyWMS (a/k/a "MyRegal"), a portal that Regal's customers can use to access and interface with WMS, deployed in 2005; Transportation Management System ("TMS"), which manages dispatches associated with the movement of freight, deployed in 2008; and Yards Management System ("YMS"), which tracks freight containers, deployed in 2018. Id. ¶ 5. Softketeers also developed mobile TMS apps for Google (Android) and Apple (iOS) in 2014 and 2017. Id. WMS, RFS, MyWMS, TMS, YMS, and the TMS mobile apps will henceforth be referred to collectively as the "Software."

In 2011, Softketeers and Regal negotiated a potential transaction culminating in a "Software Co-Ownership Agreement" and "Protective Covenant Agreement" under which Regal would have paid Softeketeers $1.5 million for joint ownership of the Software. See Nguyen Decl. ¶ 15, Ex. 14. The negotiations, which were motivated by a potential third-party acquisition of Regal, fell through when the acquisition was abandoned. Id.

In early 2017, Ho left Softketeers after working on the Software for about 16 years. Nguyen Decl. ¶ 22. Regal then hired Ho and the other Individual Defendants to support the Software and provide the consulting services Softketeers previously provided to Regal's customers. Id. Regal also tried to recruit at least one other Softketeer programmer, Dong Pham. Id., Ex. 21. Nguyen believes that one or more of the Individual Defendants provided Regal with the Software source code because (1) Softketeers never delivered the source code to Regal and Regal wanted the code as recently as December 2018; (2) the Software requires ongoing maintenance at the source-code level to continue to serve Regal's needs and customers; (3) emails have continued to arrive in the @softketeers.com email inboxes for Mai, Tran, and Doan describing work done on the Software; and (4) Mai and Tran told Nguyen that the source code is now stored on a Regal server. Id. ¶ 24, Exs. 22–24.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-519 JVS (JDEx) | Date | May 6, 2019 |
| Title | Softketeers, Inc. v. Regal West Corporation, et al. | | |

In December 2018, Regal offered to pay Softketeers $1 million for joint ownership of the Software, delivery of the source code, and assignment of future work on the Software to Regal, among other terms. Nguyen Decl. ¶ 16, Exs. 15–17. However, emails between Neeves and Nguyen indicate that the payment was not an offer, but a demand. See id., Ex. 16 ("Will need this agreement signed for future payments to be processed."). No final agreement was ever reached, and Neeves did not respond when Nguyen asked how Neeves "would like to proceed going forward" on December 6, 2018. Id.

Softketeers continued to do work on the Software for Regal, but on February 2, 2019, Neeves sent Nguyen an email terminating Regal's consulting arrangement with Softketeers. Id. ¶ 18, Ex. 19. As of February 2, 2019, Regal owed Softketeers about $277,000 in outstanding invoices for work performed. Id. ¶ 19, Ex. 20. Regal continues to withhold payment on those invoices. Id. Neeves declares that Nguyen's quality of work deteriorated over the last several years of their business relationship, the time he would spend on projects increased, and he would miss deadlines. Neeves Decl. ¶ 23. Neeves also asserts that the final invoices and time entries submitted by Nguyen appear fraudulent. Id. ¶ 26.

On March 15, 2019, Softketeers filed this lawsuit. Docket No. 1. On March 26, 2019, it brought this motion for a preliminary injunction seeking the following relief:

1. Impounding, *pendente lite*, all media in the custody, possession, or control of any defendant on which copies of any source code is stored for software known or formerly known as Warehouse Management System (WMS), WMS Services, RF Systems (RFS), MyWMS (a/k/a MyRegal), Transportation Management System (TMS), and/or Yards Management System (YMS; collectively with WMS, WMS Services, RFS, MyWMS, and TMS, "Software"), or any portion or derivative thereof, including but not limited to: any server associated with the URLs tfs.regallogistics.com or regal56:8080/tfs, the TFS server identified as Regal56, and any media whose directory structure includes the path Regal15x\E\Thai-Develop;

2. Requiring defendants to (a) permanently delete or otherwise destroy any copies of any Software source code or any portion thereof under their control that are stored on media they are unable to surrender, and (b) provide

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-519 JVS (JDEx) | Date | May 6, 2019 |
| Title | Softketeers, Inc. v. Regal West Corporation, et al. | | |

    a complete inventory, under oath and penalty of perjury, of all copies of any Software known to them that are not subject to impound or deletion;

 3. Requiring the defendants to verify, under oath and penalty of perjury, the fact and manner of their compliance with the foregoing provisions; and

 4. Preliminarily enjoining defendants—together with their respective officers, agents, servants, employees, and attorneys, and any other person(s) in active concert or participation with any of them—from disclosing or using source code, including by modifying or compiling source code, either acquired or derived from code that was acquired, directly or indirectly, from Softketeers, including but not limited to source code for the Software.

Notice, Docket No. 20 at viii.

## II. LEGAL STANDARD

On an application for a preliminary injunction, the plaintiff has the burden to establish that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm if the preliminary relief is not granted, (3) the balance of equities favors the plaintiff, and (4) the injunction is in the public interest. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 5, 20 (2008).

In the Ninth Circuit, the Winter factors may be evaluated on a sliding scale: "serious questions going to the merits, and a balance of hardships that tips sharply toward the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134-35 (9th Cir. 2011).

## III. DISCUSSION

**A. Likelihood of Success**

 1. <u>Copyright Infringement</u>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV 19-519 JVS (JDEx)                                          Date  May 6, 2019

Title     Softketeers, Inc. v. Regal West Corporation, et al.

"A plaintiff bringing a claim for copyright infringement must demonstrate '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" Funky Films, Inc. v. Time Warner Entm't Co., L.P., 462 F.3d 1072, 1076 (9th Cir. 2006) (quoting Fiest Pubs., Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991)).

Defendants advance three principal arguments against Softketeers' likelihood of success on its claim for copyright infringement: (1) Softketeers fails to identify any protectable works Defendants have allegedly infringed, (2) Softketeers is not the sole owner of any copyrights, and (3) Regal has an irrevocable, non-exclusive license to use the source code. Opp'n, Docket No. 27 at 5–13. The Court rejects these arguments for the following reasons.

      a.      Identification of Protectable Works

Softketeers has identified the protectable works allegedly infringed: the source code for the Software. See Notice, Docket No. 20. Although Defendants point out that Softketeers' registrations disclaim open-source modules, all that follows from those disclaimers is that open-source modules may be carved out of any potential injunction. Opp'n, Docket No. 27 at 5. Defendants also point to the fact that the copyright registrations were issued in 2019 and do not cite to any previous versions; however, because no prior versions were registered or distributed to the public, the registrations cover all prior versions. See COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES § 721.8 (3d ed. 2017) ("Compendium")[1] (CodeBuster LLC example). Finally, Defendants' argue that Softketeers must demonstrate "substantial similarity" between the software used by Defendants and Softketeers' copyrighted works. Opp'n, Docket No. 27 at 6. But substantial similarity comes into play only "[a]bsent direct evidence of copying." Antonick v. Electronic Arts, Inc., 841 F.3d 1062, 1065 (9th Cir. 2016) (citation omitted).

---

[1] "The Compendium is a manual published by the Copyright Office and provides guidance to copyright applicants and others regarding practices and principles of copyright law." Dr. Seuss Enters., L.P. v. ComicMix LLC, 2018 WL 2298197, at *4 n.5 (S.D. Cal. May 21, 2018). The interpretation of copyright law in the compendium is "entitled to judicial deference if reasonable." Batjac Prods. Inc. v. GoodTimes Home Video Corp., 160 F.3d 1223, 1231 (9th Cir. 1998). The Compendium is available at https://www.copyright.gov/comp3/.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV 19-519 JVS (JDEx)  Date  May 6, 2019

Title  Softketeers, Inc. v. Regal West Corporation, et al.

    Here, Softketeers has alleged and shown a substantial likelihood of success on the claim that Defendants took the software written by Softketeers and continue to use it. Furthermore, the evidence to show substantial similarity is in Defendants' exclusive possession; as alleged, Defendants have the current version of the source code, while Softketeers has only the purportedly stolen version of the source code as it existed on February 2, 2019. Therefore, the burden shifts to Defendants on the issue of substantial similarity. See Morris v. Williams, 433 P.2d 697, 715 (Cal. 1967) ("Where the evidence … lies peculiarly within the knowledge … of one of the parties, that party has the burden of going forward with the evidence on the issue although it is not the party asserting the claim."); accord United States v. Denver & Rio Grande R. Co., 191 U.S. 84, 92 (1903).

    b.    Ownership

    Softketeers has shown a likelihood that it has an ownership interest in the source code for the Software, while Defendants do not. "Copyright in a work . . . vests initially in the author or authors of the work." 17 U.S.C. § 201(a). Softketeers is the named author on eight 2019 copyright registrations for various pieces of the Software, along with various other authors; however, Regal is not named as an author on any registration. See Nguyen Decl., Exs. 2–9. Specifically, Softketeers is the author of the following eight copyright registrations:[2]

- Registration No. TXu002130025 for a collection of "services" used by WMS (*Softketeers, Vu & Whitney Inc., Vu Ho Inc., Tuan Ngoc Nguyen, Inc., Thai Tran, Inc., and Don Mai Inc.*)
- Registration Nos. TXu002129946 (*Softketeers, Tuan Ngoc Nguyen, Inc., Thai Tran Inc., Uan Inc., and Trung Doan*), TXu002129947 (*Softketeers, Vu & Whitney Inc., and Vu Ho Inc.*), and TXu002130648 (*Softketeers, Vu & Whitney Inc., Vu Ho Inc., Thai Tran Inc., and Charles Hoang*) for WMS code bases written in VB.NET, C#, and Visual Basic 6.0, respectively;
- Registration No. TXu002130748 for the back-end of the MyWMS portal (*Softketeers and Don Mai Inc.*); and
- Registration Nos. TXu002130746 (*Softketeers and Don Mai Inc.*), TXu002130024 (*Softketeers, Tuan Ngoc Nguyen Inc., and Brandon Le*), and

---

[2] The authors of each registration are enclosed in parentheticals in italics after each registration number.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-519 JVS (JDEx) | Date | May 6, 2019 |
| Title | Softketeers, Inc. v. Regal West Corporation, et al. | | |

TXu002130747 (*Softketeers and Don Mai Inc.*) for RFS, TMS, and YMS, respectively.

Id. Softketeers also has copyright registration applications pending for the MyWMS portal front-end and in the TMS mobile apps (Android and Apple iOS).

Defendants first argue that Regal owns the Software as a work for hire. The Copyright Act provides "two mutually exclusive ways for works to acquire work for hire status: one for employees and the other for independent contractors." Reid, 490 U.S. at 747–48. Specifically, a "work made for hire" is:

> (1) a work prepared by an employee within the scope of his or her employment; or
>
> (2) a work specially ordered or commissioned … if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire.

17 U.S.C. § 101.

Defendants argue only that Softketeers was an employee work for hire under subsection (1). Opp'n, Docket No. 27 at 7–9. Thus, the first inquiry is whether Softketeers was an employee or an independent contractor. Reid, 490 U.S. at 750–51 ("To determine whether a work is for hire … a court first should ascertain . . . whether the work was prepared by an employee or an independent contractor. After making this determination, the court can apply the appropriate subsection of § 101."). Under Reid, in determining whether a hired party is an employee, courts should consider "the hiring party's right to control the manner and means by which the product is accomplished." Id. at 751. Relevant factors include

> the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-519 JVS (JDEx) | Date | May 6, 2019 |
| Title | Softketeers, Inc. v. Regal West Corporation, et al. | | |

>role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

Id. at 751–52.

These factors point to the conclusion that those who wrote the Software were not Regal employees. As Softketeers points out, Regal never paid anything to any of the relevant individuals, paying only Softketeers, which in turn paid the Individual Defendants. Nguyen Decl. ¶¶ 12, 16, Exs. 29–33. Furthermore, over the years, Regal never issued IRS Forms W-2 or 1099 to Softketeers or Nguyen, and there is no evidence they issued such forms to any of the Individual Defendants. Reply Nguyen Decl., Docket No. 31-1 ¶ 18. The selection and hiring of those who wrote the Software was done by Softketeers, without input from Regal. Id. ¶ 24. Furthermore, the software industry requires highly skilled work. See Aymes v. Bonelli, 980 F.2d 857, 862 (2d Cir. 1992) ("computer programmers [are] highly-skilled independent contractors"). Regal did not provide the computers on which the Software was developed, it was not developed in Regal's facilities, Regal had no right to assign tasks unrelated to the Software to those who were writing it, and Regal had no say over when or how long the Software writers worked. Reply Nguyen Decl. ¶¶ 11, 24. And finally, by Defendants' own admission, Softketeers (through Nguyen) was an independent contractor for Regal. Neeves Decl. ¶ 27. Therefore, Softketeers has shown a likelihood that Softketeers and the Individual Defendants were not employees of Regal, and thus that the Software is not owned by Regal as an employee work for hire.

Next, Defendants argue that the Individual Defendants retained ownership interests in the relevant copyrights. Opp'n, Docket No. 27 at 9–10. With respect to Neeves, Defendants argue that he provided "input on . . . the source code itself, the algorithms used, the process flows, and the layouts of graphical user interfaces." Neeves Decl. ¶ 18. However, algorithms, process flows, menu screens, layouts, and formats generated by a computer program are generally not copyrightable subject matters or elements. See 17 U.S.C. § 102(b) (copyright does not "extend to any . . . procedure, process, . . . [or] method of operation"); COMPENDIUM § 721.7. Furthermore, even if Neeves had contributed a copyrightable expression to the interface (not merely unprotectable "layout"), that would not impair Softketeers claim because screen outputs, as audio-visual

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No. SACV 19-519 JVS (JDEx)      Date May 6, 2019

Title    Softketeers, Inc. v. Regal West Corporation, et al.

works, are distinct from programs, which are literary works. See Whelan Assocs, Inc. v. Jaslow Dental Lab., Inc., 797 F.2d 1222, 1244 (3d Cir. 1986) (citations omitted). Lastly, "input" on source code is insufficient to establish co-authorship; rather, an author must actually help write the code to claim copyright protection over it. See S.O.S., 886 F.2d at 1087 (9th Cir. 1989) (quoting Reid, 490 U.S. at 737) ("A person who merely describes to an author what the commissioned work should do or look like is not a joint author. . . . To be an author, one must supply more than mere direction or ideas: one must 'translate[] an idea into a fixed, tangible expression entitled to copyright protection.'"). Neeves does not contend that he is a programmer, and Nguyen declares that Neeves never did any actual coding of the WMS or any related software. Reply Nguyen Decl. ¶ 14.

    With respect to the remaining Individual Defendants, the former Softketeer programmers, the Court finds that Softketeers has established a likelihood of success on the claim that those Defendants assigned their copyrights in the Software to Softketeers by contract. "[O]wnership of a copyright may be transferred in whole or in part by any means of conveyance." 17 U.S.C. § 201(b). However, such a transfer of ownership "is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent." 17 U.S.C. §204(a).

    Softketeers submits various "Consulting Agreements" between Softketeers and the Individual Corporations: one from 2010 with Vu & Whitney, Inc.; one from 2016 and one from 2017 with Vu Ho, Inc.; one from 2010 with Thai Tran Inc., one from 2010 with Don Mai Inc., and one from 2017 with Trung Doan, which is the only agreement with an individual (collectively, "Consulting Agreements"). Nguyen Decl., Exs. 10–13. Each of the Consulting Agreements contains the same provision relevant to this action:

> **TITLE, COPYRIGHT, WORK-PRODUCT:** All right, title, interest, copyright, or other intellectual property interests in the Program which developed by Consultant for Softketeers under this Agreement, including source code, object code, other related documents and materials, shall become and remain the property of Softketeers as "Work for Hire"

Id.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-519 JVS (JDEx) | Date | May 6, 2019 |
| Title | Softketeers, Inc. v. Regal West Corporation, et al. | | |

Defendants argue that there is no evidence that the Individual Defendants were employees of the Individual Corporations with which Softketeers executed the Consulting Agreements. Opp'n, Docket No. 27 at 9–10. This argument is rejected because (1) the corporations have the same names as the Individual Defendants, who have not declared they were not employed by their corporations; (2) Softketeers paid the corporations for the work the individuals did; (3) the Individual Defendants signed the Consulting Agreements on behalf of the Individual Corporations, and (4) public records confirm that the Individual Defendants are each the chief executive officer, secretary, and chief financial officer of their eponymous corporations. Nguyen Decl., Exs. 10–12; Reply Nguyen Decl., Exs. 30–32; Reply, Exs. F–H.

Defendants also argue that Softketeers failed to submit pre-2010 agreements with Ho's, Tran's, and Mai's companies (Doan did not start until 2017). Opp'n, Docket No. 27 at 10. However, Nguyen declares that the Consulting Agreements he produced are substantially identical in form to those he had with the Individual Corporations going back to 2003 and earlier. See Nguyen Decl. ¶ 11; Reply Nguyen Decl. ¶¶ 32–35. Nguyen also declares that he has not produced those agreements because, during the course of an office move in 2003, he lost certain records, including the earlier consulting agreements, which is why he had the Individual Corporations re-affirm their arrangement through the Consulting Agreements in 2010 and later. Reply Decl. ¶¶ 32–35. Nguyen thus shows the existence of the pre-2010 agreements with other competent evidence. See 3 NIMMER ON COPYRIGHT § 10.03 ("[T]he current Act's requirement of a writing carries forward prior law on the subject. … [C]ases under the 1909 Act held that if all written copies of the instrument of transfer have been lost, oral evidence as to the fact of a written conveyance will be admissible."); cf. Fed. R. Evid. 1004 ("An original is not required and other evidence of the content of a writing … is admissible if: (a) all the originals are lost or destroyed, and not by the proponent acting in bad faith.").

Therefore, Nguyen shows a likelihood that (1) the Individual Defendants' work on (i.e., their copyright interests in) the Software was the property of the Individual Corporations as employee work-for-hire; and (2) contracts between Softketeers and the Individual Corporations exist going back to the inception of the Software which included provisions that the programmer-Defendants assigned all their rights in the Software, including copyright interests in the Software, to Softketeers through the Individual Corporations. Accordingly, Softketeers has shown a likelihood that the Individual Defendants have no ownership interest in the relevant copyrights.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-519 JVS (JDEx) | Date | May 6, 2019 |
| Title | Softketeers, Inc. v. Regal West Corporation, et al. | | |

Lastly, Defendants argue that they are joint owners of the source code based on the control Regal exercised over Softketeers' work. Opp'n, Docket No. 27 at 10–11. In cases of joint authorship, each co-author starts out as a co-owner. 17 U.S.C. § 201(a). But "[c]opyright protection subsists" only in "works of authorship fixed in any tangible medium of expression," 17 U.S.C. § 102(a), and "[i]n no case does copyright protection . . . extend to any idea," 17 U.S.C. § 102(b). Therefore, joint authorship requires more than "supply[ing] . . . mere direction or ideas": to be a joint author, "one must 'translate[] an idea into a fixed, tangible expression entitled to copyright protection.'" S.O.S., 886 F.2d at 1087 (quoting Community for Creative Non-Violence v. Reid, 490 U.S. 730, 737 (1989)).

As noted above, Neeves did not actually write any of the source code, and there is no evidence that Neeves or Regal had any control over the writing of the code; rather, all the evidence shows is that Neeves had control over the direction of the project, i.e., Regal's wishes regarding the function and appearance of the Software and related applications. See Reply Nguyen Decl. ¶¶ 13, 14. By analogy, a customer who places an order at a restaurant does not then become the cook. Furthermore, control itself is not a substitute for authorship. See S.O.S., 886 F.2d at 1087; Ashton-Tate Corp. v. Ross, 916 F.2d 516, 521 (9th Cir. 1990) ("joint authorship requires each author to make an independently copyrightable contribution"). Therefore, Defendants have not shown that there is a likelihood that Regal and Softketeers created the Software as a "joint work" under 17 U.S.C. § 101.

        c.      Implied License

Defendants' final argument as to copyright infringement is that Regal at a minimum has an "implied, irrevocable, non-exclusive license to use, retain, and modify the Software." Opp'n, Docket No. 27 at 12.

"[A]n implied license is granted when (1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes that particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee–requestor" "use, retain, and modify the programs." Asset Marketing Systems, Inc. v. Gagnon, 542 F.3d 748, 754–55 (9th Cir. 2008) (quotation marks and citation omitted).

Here, Softketeers never delivered the source code to Regal, with the exception of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-519 JVS (JDEx) | Date | May 6, 2019 |
| Title | Softketeers, Inc. v. Regal West Corporation, et al. | | |

aspx and Javascript code for public online portals. Nguyen Decl. ¶ 12. Therefore, the delivery requirement is not satisfied. Furthermore, there is no evidence that Softketeers intended Regal to use the source code. To the contrary, the evidence shows that the intent was that Regal use the object code which was delivered to it, but not the source code, which Softketeers held back for 18 years. Id. Furthermore, Regal bargained and was willing to pay between $1 and $1.5 million in 2011 and 2018, respectively, for delivery of the source code and joint ownership of the Software, at least in part. See Nguyen Decl., Exs 14–15. This indicates that the parties understood that Regal did not already have the right to access and use the source code as late as December 2018.

Regal cites Effects Associates, Inc. v. Cohen, 908 F.2d 555 (9th Cir. 1990) to support the argument that its allegedly infringing conduct falls within the scope of its implied license. Opp'n, Docket No. 27 at 13. However, Effects is distinguishable. In that case, there was no dispute that the footage at issue had been delivered to the licensee, and "every objective fact" indicated that the licensor intended the footage to be copied and distributed. Effects, 908 F.2d at 558–59, n.6. Here, on the other hand, the source code for the Software was never delivered to Regal over the course of a near-20 year business relationship.

Because there is no evidence that Softketeers delivered the source code to Regal or intended Regal to use, retain, or modify it, Defendants have not established a likelihood that they possess an implied license to use, retain, and modify the source code for the Software.

    2.    <u>Trade Secret Misappropriation</u>

        a.    Trade Secret Protection

Trade secret protection has two basic requirements: secrecy, and economic value derived from not being known. See 18 U.S.C. § 1839(3) ("'trade secret' means . . . information, including . . . programs . . . if—(A) the owner has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value . . . from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from . . . use of the information"); Cal. Code Civ. Proc. § 3426.1(d) ("'Trade secret' means information, including a . . . program, . . . that: (1) Derives independent economic value . . . from not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-519 JVS (JDEx) | Date | May 6, 2019 |
| Title | Softketeers, Inc. v. Regal West Corporation, et al. | | |

being generally known . . . to other persons who can obtain economic value from its . . . use; and (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.").

Here, Softketeers has shown that it maintained the secrecy of its source code by requiring the programmer-Defendants to sign agreements promising to preserve its confidentiality and by not delivering the source code to Regal, thereby limiting access to the code. See Nguyen Decl. ¶ 24, Exs. 10–13; MAI Sys. Corp. v. Peak Computer, Inc., 991 F.2d 511, 521 (9th Cir. 1993) ("MAI took reasonable steps to insure the secrecy to this information by "requir[ing] its employees to sign confidentiality agreements"). Furthermore, the source code was not readily ascertainable to Regal because it offered to pay more than $1 million twice for ownership rights to it. Nguyen Decl. Exs. 14–15. Moreover, Softketeers derived economic value from the source code not being known to Regal, as demonstrated by the fact that Softketeers was receiving over $1 million per year from Regal for development and consulting work related to the Software before it allegedly obtained the source code from the programmer-Defendants. See Nguyen Decl. ¶ 30. Therefore, Softketeers has demonstrated a likelihood that the source code is trade-secret protected.

Defendants argue that Softketeers does not describe the alleged trade secrets with sufficient particularity. Opp'n, Docket No. 27 at 14. The Court disagrees. The trade secrets at issue are the source code for the Software, excluding the code written in JavaScript and aspx. Defendants also argue that the open-source aspects of the source code render the Software unqualified for trade secret protection. However, even if the open-source modules were excluded, the Court sees no reason why the rest of the source code wouldn't still comprise protectable trade secrets. See Agency Solutions.Com, LLC v. TriZetto Group, Inc., 819 F. Supp. 2d 1001, 1017 (E.D. Cal. 2011) ("source code is undoubtably a trade secret"); Altavion, Inc. v. Konica Minolta Sys. Lab., Inc., 226 Cal. App. 4th 26, 56 (2014) ("source code . . . . is unquestionably protectable by trade secret law"). In addition, Defendants argue that Softketeers may have forfeited trade-secret protection for the source code by making unredacted deposits with the Copyright Office in support of its registration applications. Opp'n, Docket No. 27 at 15. However, the Copyright Office allows applicants with source code containing trade secret material to satisfy the deposit requirement by submitting two 25-page segments of code with the portions of the code that contain trade secret material redacted. See COMPENDIUM § 1509.1(c); U.S. Copyright Office, *Copyright Registration of Computer Programs*,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 19-519 JVS (JDEx)                              Date   May 6, 2019

Title   Softketeers, Inc. v. Regal West Corporation, et al.

Circular 61 (2017)[3], at 3 (noting options for depositing source code containing trade secrets). Softketeers presents these deposits to the Court, showing that it complied with the proper procedure. Reply Nguyen Decl., Exs. 39–46.

    Lastly, Defendants present arguments about trade-secret ownership and implied licenses similar to the arguments they make against Softketeers' copyright claims. Opp'n, Docket No. 27 at 14–15. Therefore, those arguments fail for the same reasons. Defendants do make a new argument that the Software embodies "proprietary business processes" constituting Regal trade secrets; however, even if true, Regal would still not have rights in the source code by which those processes are implemented. Id. at 16. Therefore, it does not affect Softketeers' likelihood of success.

    In sum, Softketeers has shown a likelihood of success on its allegation that the source code is entitled to trade secret protection.

    b.    Misappropriation

Under federal law, trade secret misappropriation includes:

> disclosure or use of a trade secret … by a person who . . . knew or had reason to know that the knowledge of the trade secret was . . . acquired under circumstances giving rise to a duty to maintain the secrecy . . . or limit the use of the trade secret; or derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy . . . or limit the use of the trade secret. . . .

18 U.S.C. § 1839(5)(B)(ii)(II)–(III). Under California law, misappropriation similarly includes:

> [d]isclosure or use of a trade secret . . . by a person who: . . . . knew or had reason to know that his or her knowledge of the trade secret was: . . . Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use;

---

[3] Available at https://www.copyright.gov/circs/circ61.pdf.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-519 JVS (JDEx) | Date | May 6, 2019 |
| Title | Softketeers, Inc. v. Regal West Corporation, et al. | | |

or [d]erived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use. . . .

Cal. Civ. Code § 3426.1(b)(2)(B)(ii)–(iii).

Here, the programmer-Defendants knew their knowledge of the source code of the Software was acquired under circumstances requiring them to maintain its secrecy and limit its use based on their confidentiality agreements. See Nguyen Decl., Exs. 10–13. Regal also had reason to know that the programmer-Defendants had such duties because there is evidence that Regal had them sign similar contracts when bringing them over. See id. ¶ 23, Ex. 21. Therefore, Softketeers has shown a likelihood that the Individual Defendants' disclosure and ongoing use of the source code for Regal constitutes misappropriation, as does Regal's ongoing use of the source code, under both state and federal law.

In sum, Softketeers has established that it is likely to succeed on the merits of its copyright and trade secret claims. This factor weighs in favor of provisional relief.

**B.     Irreparable Harm**

A preliminary injunction is also necessary to prevent irreparable harm to Softketeers. First, Softketeers has demonstrated that absent a preliminary injunction, it would likely face bankruptcy and insolvency prior to the conclusion of trial. Since losing control of the source code, Softketeers has been reduced to one employee, Nguyen, who no longer draws a salary. Nguyen Decl. ¶ 23. Furthermore, there is no dispute that Regal is withholding about $277,000 in invoice payments for Softketeers work completed between November 19, 2018 and February 1, 2019. Id. ¶ 19. Because the Individual Defendants have displaced Softketeers at Regal, Softketeers has no prospective revenue stream, exposing it to claims for nonpayment from its own contractors for which it has no revenue to satisfy. See id. ¶ 20; Reply Nguyen Decl., Ex. 34–35. Moreover, a preliminary injunction would likely forestall a bankruptcy: Regal and its customers would need updates and modifications, and Regal or its customers would want to hire Softketeers for that work. On the other hand, absent an injunction, Softketeers will not be hired to do that work by Regal because of their continued infringement, nor by Regal's customers because Regal is providing those services directly at no additional cost. See

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-519 JVS (JDEx) | Date | May 6, 2019 |
| Title | Softketeers, Inc. v. Regal West Corporation, et al. | | |

Nguyen Decl. ¶ 27. These facts demonstrate a likelihood of insolvency. Because a bankruptcy would also result in forfeiture of Softketeers' claims, this alone demonstrates a likelihood of irreparable harm. See Doran v. Salem Inn, Inc., 422 U.S. 922, 932 (1975) (threat of bankruptcy "sufficiently meets the standards for granting interim relief, for otherwise a favorable final judgment might well be useless").

Furthermore, the lack of provisional relief could result in an irretrievable harm to Softketeers' enforceable rights vis-a-vis Regal. Because the Software requires continuous modifications and updates, the Software will continue to evolve between now and trial. See Nguyen Decl. ¶ 24. And each line of code added or altered to the Software's source code further clouds Softketeers' purported title. Furthermore, this admixture of competing ownership claims would likely result in a code that is no longer marketable to anyone but Regal. Although Defendants claim that the title to the Software has always been clouded because it contains their trade secrets based on the "proprietary processes, know-how, and business practices" embodied in the Software, Defendants have not actually identified any such processes, know-how, or practices. Moreover, the source code could become widely disseminated because it is outside Softketeers' control, resulting in the loss of trade secret protection for the Software altogether. And as Softketeers points out, although the programmer-Defendants have secrecy agreements with Regal, they've already broken similar agreements with Softketeers. Thus, the risk of dissemination exists, particularly because Defendants' position in this lawsuit is that the programmer-Defendants have independent ownership rights in the Software.

Finally, Softketeers has demonstrated the possibility that it has accumulated goodwill with Regal's customers independent of Regal, goodwill which would be lost absent a preliminary injunction. See Nguyen Decl. ¶¶ 25–27, Exs. 27–28; Reply Nguyen Decl. ¶¶ 29, 37, Ex. 36. Damage to goodwill qualifies as irreparable harm. Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc., 944 F.2d 597, 603 (9th Cir. 1991). Defendants argue that Softketeers' claims of goodwill are entirely speculative. Opp'n, Docket No. 27 at 20. However, even if so, Softketeers has demonstrated irreparable harm based on the likely bankrutpcy and diminution in the value of its rights in the Software.

In totality, Softketeers demonstrates a likelihood of irreparable harm absent a preliminary injunction. Thus, this factor weighs in favor of provisional relief.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-519 JVS (JDEx) | Date | May 6, 2019 |
| Title | Softketeers, Inc. v. Regal West Corporation, et al. | | |

### C. Equities

As explained above, Softketeers faces extinction and the uncompensated forfeiture of its rights in the Software (for which Regal has twice offered to pay over $1 million) because it will be unable to prosecute this case to conclusion. On the other hand, although Defendants' will effectively be forced to put halt its business operations if it is barred from using and modifying the Software source code, "[d]efendants cannot complain of the harm that will befall [them] when properly forced to desist from [their] infringing activities." Ossur hf v. Manamed Inc., 331 F. Supp. 3d 1005, 1017 (C.D. Cal. 2017); see also Cadence Design Sys., Inc. v. Avant! Corp., 125 F.3d 824, 830 (9th Cir. 1997) (denying injunction was in error even though effect would be "devastating" to defendant's business because plaintiff "established that it was likely to succeed on the merits of its copyright claim"). Thus, even if an injunction would result in negative consequences for Defendants' business, the balance of equities tips in Softketeers' favor, and in favor of provisional relief.

### D. Public Interest

The public interest is served by the protection of Softketeers' copyrights and trade secrets. Merrill Lynch, Pierce, Fenner & Smith Inc. v. Chung, No. CV 01-00659 CBM (RCx), 2001 WL 283083, at *6 (C.D. Cal. Feb. 2, 2001); see also Klitzner Indus., Inc. v. H.K. James & Co., 535 F. Supp. 1249, 1259–60 (E.D. Pa. 1982) ("Since Congress has elected to grant certain exclusive rights to the owner of a copyright in a protected work, it is virtually axiomatic that the public interest can only be served by upholding copyright protections."). Furthermore, Defendants' argument that provisional relief is anti-competitive is nullified by the fact that the Court has found a likelihood of copyright infringement and trade secret misappropriation; there is nothing anti-competitive about enjoining unlawful conduct. Therefore, this factor favors provisional relief.

### E. Unclean Hands

"The doctrine [of unclean hands] bars relief to a plaintiff who has violated conscience, good faith or other equitable principles in his prior conduct, as well as to a plaintiff who has dirtied his hands in acquiring the right presently asserted." Seller Agency Council, Inc. v. Kennedy Ctr. for Real Estate Educ., Inc., 621 F.3d 981, 986 (9th Cir. 2010) (internal quotation marks omitted); see also Precision Instrument Mfg.Co. v.

Case 8:19-cv-00519-JVS-JDE Document 49 Filed 05/06/19 Page 18 of 19 Page ID #:1083

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 19-519 JVS (JDEx) | Date | May 6, 2019 |
|---|---|---|---|

| Title | Softketeers, Inc. v. Regal West Corporation, et al. |
|---|---|

Auto. Maint. Mach. Co., 324 U.S. 806, 814 (1945).

Defendants argue Softketeers' hands are dirty because (1) it defrauded Regal because Regal cannot use the very software it paid Softketeers millions of dollars to develop, (2) Softketeers cannot produce to Regal a complete, current version of the source code as required by the parties' implied-in-fact contract, and (3) Regal has learned that Nguyen has been manipulating Software to ensure it would require his ongoing support, and (4) Nguyen's final invoices "appear fraudulent." Opp'n, Docket No. 27 at 25. As to the first two arguments, the Court has found a likelihood that Regal paid Softketeers for development, consulting, and deliverable object code, but not for the source code, which was withheld for the parties' entire near 20-year relationship. Therefore, those allegations do not create unclean hands. Furthermore, that the Software would require ongoing support is not wrongful; the evidence shows that the Software has been modified and updated continuously since its inception. Finally, Defendants do not provide any specifics as to the manner in which invoices were fraudulent. Therefore, injunctive relief is not foreclosed by an unclean hands affirmative defense.

**F.      Relief**

The Copyright Act authorizes the Court to "grant temporary . . . injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). It also more authorizes the Court, "[a]t any time while an action" for copyright infringement is pending, to "order the impounding, on such terms as it may deem reasonable . . . of all copies . . . claimed to have been made or used in violation of the exclusive right of the copyright owner." 17 U.S.C. § 503(a)(1).

The federal Defend Trade Secrets Act expressly authorizes the Court to "grant an injunction . . . to prevent any actual or threatened misappropriation." 18 U.S.C. § 1836(b)(3)(A). And the California Uniform Trade Secrets Act likewise provides: "[a]ctual or threatened misappropriation may be enjoined." Cal. Civ. Code § 3426.2(a).

At the hearing on this motion, Regal argued that the relief sought is vague and overly broad. The Court disagrees. Softketeers has shown a likelihood of success on its claims that the source code for the Software it identifies is either trade-secret protected, copyright protected, or both. Therefore, the scope of the injunction is correct, and Softketeers seeks relief that is authorized by statute.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-519 JVS (JDEx) | Date | May 6, 2019 |
| Title | Softketeers, Inc. v. Regal West Corporation, et al. | | |

**G.     Bond**

Under Federal Rule of Civil Procedure 65(c), the Court "may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." The Ninth Circuit has recognized that Rule 65(c) invests the district court "with discretion as to the amount of security required, if any." Barahona–Gomez v. Reno, 167 F.3d 1228, 1237 (9th Cir. 1999) (citing Doctor's Assoc., Inc. v. Stuart, 85 F.3d 975, 985 (2d Cir. 1996)); see also Disney Enterprises, Inc. v. VidAngel, Inc., 224 F. Supp. 3d 957, 978 (C.D. Cal. 2016), aff'd, 869 F.3d 848 (9th Cir. 2017).

The Court finds that a bond in the amount of ten-thousand dollars ($10,000) is satisfactory at this stage. However, this finding is without prejudice as to an ex parte application by Defendants upon proper evidentiary showing to increase the bond. The bond of $10,000 shall be posted within two (2) business days of the Court signing the preliminary injunction.

### IV.  CONCLUSION

For the foregoing reasons, the Court **grants** the motion.

**IT IS SO ORDERED.**

| | : | 0 |
|---|---|---|
| Initials of Preparer | lmb | |