**McDERMOTT WILL & EMERY LLP**
Ellie Hourizadeh (#204627)
ehourizadeh@mwe.com
2049 Century Park East, Suite 3800
Los Angeles, CA 90067-3218
Telephone: (310) 277-4110
Facsimile: (310) 277-4730

Paul M. Schoenhard (*pro hac vice*)
pschoenhard@mwe.com
Nicole M. Jantzi (*pro hac vice*)
njantzi@mwe.com
Mary D. Hallerman (*pro hac vice*)
mhallerman@mwe.com
Sarah P. Hogarth (*pro hac vice*)
shogarth@mwe.com
500 North Capitol Street NW
Washington, DC 20001
Telephone: (202) 756-8223
Facsimile: (202) 756-8087

Attorneys for Defendants

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| SOFTKETEERS, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>REGAL WEST CORPORATION d/b/a REGAL LOGISTICS, a Washington Corporation; VU HO INC., THAI TRAN INC., and DON MAI INC., California corporations; and RANDY NEEVES, VU HO, THAI QUOC TRAN, DON MAI, and TRUNG NGOC DOAN, individuals,<br><br>Defendants. | CASE NO. 8:19-cv-00519-JVS (JDEx)<br><br>**DEFENDANTS' *EX PARTE* APPLICATION TO INCREASE AMOUNT OF PLAINTIFF'S PRELIMINARY INJUNCTION BOND**<br><br>**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**<br><br>DATE: TBD<br>TIME: TBD<br>JUDGE: Hon. James V. Selna<br>ROOM: Courtroom 10C |

TO PLAINTIFF AND ITS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that as soon as the matter may be heard in Courtroom 10C of the Honorable Judge James V. Selna, located at Ronald Reagan Federal Building and U.S. Courthouse, 411 West 4th Street, Los Angeles, California 92701-4516, Defendants Regal West Corporation, Vu Ho Inc., Thai Tran Inc., Don Mai Inc., Randy Neeves, Vu Ho, Thai Quoc Tran, Don Mai, and Trung Ngoc Doan (collectively "Defendants") will and hereby do move, pursuant to this Court's May 6, 2019 Order (Dkt. No. 47) and Rule 65(c) of the Federal Rules of Civil Procedure, for an order increasing the bond Plaintiff Softketeers, Inc. must post from $10,000 to $100 million.

Defendants seek this relief *ex parte* in light of the Court's Order Regarding Preliminary Injunction (Dkt. No. 47), which granted Plaintiff's motion for a preliminary injunction and ordered that "the bond of $10,000 shall be posted within two (2) business days of the Court signing the preliminary injunction." *Id.* at 19. Because the bond set by the court is inadequate and the preliminary injunction has now been signed (Dkt. No. 48), it is imperative that this motion be heard expeditiously.

As addressed in the accompanying memorandum of points and authorities, a $10,000 bond will not begin to cover the costs and damages that each and every one of the Defendants will incur as a result of being wrongfully enjoined.

This *ex parte* application is made following counsel's provision of notice to but unsuccessful efforts to confer orally with counsel for Plaintiff. *See* Schoenhard Decl. ¶ 3; C.D. R. Civ. P. 7-19.1.

Dated: May 9, 2019       **MCDERMOTT WILL & EMERY LLP**

By:  /s/ Paul M. Schoenhard
       PAUL M. SCHOENHARD
       Attorneys for Defendants

- ii -    DEFENDANTS' *EX PARTE* APP. TO INCREASE PRELIMINARY INJUNCTION BOND

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................... iv

INTRODUCTION ..................................................................................................... 1

BACKGROUND ....................................................................................................... 1

ARGUMENT ............................................................................................................. 2

I. The $10,000 Bond Will Not Cover Regal's Damages And Costs If Wrongfully Enjoined ................................................................................ 4

    A. The Software is essential to Regal's business ........................................ 4

    B. The Software Source Code is essential to the use of the Software ........ 5

    C. Regal will incur millions of dollars in damages and costs because it cannot serve its customers as a result of the preliminary injunction ........................................................................... 6

        1. Regal cannot ███████████████ as a result of the prelimi███ ................................................................. 7

        2. ████████████████████████████████████████████████ ..... 7

        3. Regal will lose ███████ in revenues while ███nding, resulting in ████ █████████████████████████ ................................................. 8

        4. ████████████████████ary injunction, Regal will be ████████████████ ............................................................. 9

        5. With no access to Software Source Code, Regal would need to develop different Software to operate its business, which takes time and expense ................................................................ 9

II. The $10,000 Bond Will Not Cover The Other Defendants' Damages And Costs If Wrongfully Enjoined ............................................................ 10

    A. The Developer Defendants will likely be subject to layoffs or termination ........................................................................................... 10

    B. Mr. Neeves and his family will suffer severe financial hardship ........ 10

III. Softketeers Should Be Required To Post A Bond Of At Least $100 Million .. 11

CONCLUSION ........................................................................................................ 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barahona-Gomez v. Reno*,
 167 F.3d 1228 (9th Cir. 1999) ................................................................................ 3

*Continuum Co., Inc. v. Incepts, Inc.*,
 873 F.2d 801 (5th Cir. 1989) .................................................................................. 3

*CyberMedia, Inc. v. Symantec Corp.*,
 19 F. Supp. 2d 1070 (N.D. Cal. 1998) .................................................................... 3

*Hansen Bev. Co. v. Cytosport, Inc.*,
 09-cv-0031-VBF, 2009 WL 5104260, 2009 U.S. Dist. LEXIS 120508
 (C.D. Cal. Nov. 4, 2009) ......................................................................................... 3

*Iconix v. Tokuda*,
 457 F. Supp. 2d 969 (N.D. Cal. 2006) .................................................................... 6

*Instant Air Freight Co. v. C.F. Air Freight, Inc.*,
 882 F.2d 797 (3d Cir. 1989) .............................................................................. 2, 12

*Mead Johnson & Co. v. Abbott Labs*,
 201 F.3d 883 (7th Cir. 2000) .................................................................................. 3

*Momento, Inc. v. Seccion Amarilla, USA*,
 No. 09-cv-1223, 2009 WL 1974798, 2009 U.S. Dist. LEXIS 62664
 (N.D. Cal. July 6, 2009) .......................................................................................... 3

*Montana Silversmiths, Inc. v. Taylor Brands, LLC*,
 850 F. Supp. 2d 1172 (D. Mont. 2012) ................................................................ 11

*Nintendo of Am., Inc. v. Lewis Galoob Toys, Inc.*,
 16 F.3d 1032 (9th Cir. 1994) ............................................................................. 2, 3

**Regulations**

19 C.F.R. § 113.63 ......................................................................................................... 9

**Rules**

Fed. R. Civ. P. 65(c) ................................................................................................. 2, 3

**Other Authorities**

District Judge James V. Selna, LEXMACHINA, https://law.lexmachina.com/court/
 cacd/judge/2992 (last accessed May 9, 2019) ....................................................... 6

## INTRODUCTION

The Court's $10,000 preliminary-injunction bond grossly undervalues the damages and costs that each of the nine Defendants will suffer as a result of being wrongfully enjoined.

As the Court acknowledges, the preliminary injunction prohibits Regal West Corporation d/b/a Regal Logistics ("Regal") from running its business, and that preliminary injunction could remain in place for over a year. The other Defendants will similarly suffer devastating losses. In the event Defendants prevail in this case, that victory will be hollow in light of the significant harm each will have suffered as a result of being enjoined—██████████ of dollars in lost revenue and profits, over a ██████████ in lost wages, and ██████████████████████, let alone the reputational damage to Regal and each of the other Defendants.

The Court must increase the bond amount to account for the catastrophic impact a wrongful preliminary injunction will have on each Defendant.

## BACKGROUND

On March 15, 2019, Softketeers filed its Complaint, alleging, *inter alia*, copyright infringement and trade-secret misappropriation in "source code" for the Software ("Software Source Code"). Compl., Dkt. No. 1.

On March 26, 2019, Softketeers moved for a preliminary injunction seeking to enjoin Defendants' use of the Software Source Code on the grounds that Softketeers would likely succeed on its copyright infringement and trade-secret misappropriation claims and would face irreparable harm in the absence of preliminary injunctive relief. Dkt. No. 20. Two weeks later, on April 8, 2019, Defendants opposed Softketeers's motion for a preliminary injunction, pointing out various deficiencies in Softketeers's proof and in its legal positions. Dkt. No. 27. In reply, Softketeers introduced a twenty-five page reply brief along with 66 pages of exhibits and a Second Declaration of Minh Khai Nguyen with over **500 pages** of exhibits. *See* Dkt. No. 37.

Defendants promptly moved to strike Softketeers's improper reply arguments and "evidence" or, alternatively, for leave to file a surreply responding to Softketeers's new arguments and evidence. *See* Dkt. No. 37. The Court denied Defendants' request to strike or to file a surreply. *See* Dkt. No. 43.

After the May 6, 2019 hearing on Softketeers's Motion for Preliminary Injunction, on May 7, 2019, the Court entered an Order Regarding Motion for Preliminary Injunction stating that the Court would grant Softketeers's motion and require Softketeers to post a bond of $10,000. *See* Dkt. No. 47 at 19. The Court stated only that it "finds that a bond in the amount of ten-thousand ($10,000) is satisfactory at this stage," and provided no explanation for why it found that bond amount to suffice. *Id.* That finding was "without prejudice as to an ex parte application by Defendants upon proper evidentiary showing to increase the bond." *Id.*

On May 8, 2019, the Court entered its Order Granting Plaintiff's Motion for Preliminary Injunction. *See* Dkt. No. 48. As of the time of this filing, Softketeers has not yet posted its $10,000 bond.

## ARGUMENT

This Court "may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "Wrongfully enjoined or restrained" means that "the party enjoined had the right all along to do what it was enjoined from doing." *Nintendo of Am., Inc. v. Lewis Galoob Toys, Inc.*, 16 F.3d 1032, 1036 (9th Cir. 1994). Thus, if Defendants prevail in this litigation, they will have been "wrongfully enjoined or restrained" under Fed. R. Civ. P. 65(c) and will be entitled to recover provable damages, but *only up to the amount of the bond*. *See id.*; *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 804 (3d Cir. 1989) ("[W]ith rare exceptions, a defendant wrongfully enjoined has recourse only against the bond.").

A bond thus serves two functions: "(1) it assures the enjoined party that it may readily collect damages from the funds posted or the surety provided in the event that it was wrongfully enjoined, without further litigation and without regard to the possible insolvency of the assured, and (2) it provides the plaintiff with notice of the maximum extent of its potential liability, since the amount of the bond 'is the limit of the damages the defendant can obtain for a wrongful injunction, . . . provided the plaintiff was acting in good faith.'" *Momento, Inc. v. Seccion Amarilla, USA*, No. 09-cv-1223, 2009 WL 1974798, 2009 U.S. Dist. LEXIS 62664, at *14–15 (N.D. Cal. July 6, 2009) (alteration in original) (quoting *Continuum Co., Inc. v. Incepts, Inc.*, 873 F.2d 801, 803 (5th Cir. 1989)).

While the Court has discretion to determine the amount of bond, *see Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999), the bond amount must be sufficient to guarantee payment of any costs and damages sustained by wrongfully enjoined parties. When setting the amount of the bond, "district courts should err on the high side." *Mead Johnson & Co. v. Abbott Labs*, 201 F.3d 883, 888 (7th Cir. 2000). While "[a]n error in setting the bond too high . . . is not serious[,] . . . an error in the other direction produces irreparable injury, because the damages for an erroneous preliminary injunction cannot exceed the amount of the bond." *Id.* (citation omitted).

In determining the amount of a preliminary-injunction bond, courts have considered such factors as the revenues and profits the defendants would have earned had they not been enjoined, the damage to the defendants' reputation as a result of the injunction, and any losses or expenses the defendants would incur as a result of the injunction. *See, e.g., Nintendo*, 16 F.3d at 1038–39; *Hansen Bev. Co. v. Cytosport, Inc.*, 09-cv-0031-VBF (AGRx), 2009 WL 5104260, 2009 U.S. Dist. LEXIS 120508, at *71–72 (C.D. Cal. Nov. 4, 2009); *CyberMedia, Inc. v. Symantec Corp.*, 19 F. Supp. 2d 1070, 1079–80 (N.D. Cal. 1998).

As shown below, the $10,000 preliminary-injunction bond is inadequate and violates Fed. R. Civ. P. 65(c). Given the significant damages and losses Defendants

- 3 -

DEFENDANTS' *EX PARTE* APP. TO INCREASE PRELIMINARY INJUNCTION BOND

will incur while being enjoined from using the Software Source Code during this litigation, the bond must be increased to at least $100 million.

## I. The $10,000 Bond Will Not Cover Regal's Damages And Costs If Wrongfully Enjoined.

Regal is not a software company. Declaration of Randy Neeves in Support of Defendants' *Ex Parte* Application to Stay Preliminary Injunction and *Ex Parte* Application to Increase Bond ("2d Neeves Decl.") ¶ 8. It does not sell the Software to end users. *Id.* Instead, Regal uses the Software to manage its third-party logistics ("3PL") business. *Id.* ¶¶ 8–9. Regal offers customers end-to-end support in the distribution of physical inventory, including cross-docking, warehousing, inventory management, transportation, and assembly and repackaging services. *Id.* ¶ 3. The preliminary injunction is thus not targeted to only one of many products Regal sells, or only one of many services Regal offers. The preliminary injunction affects the *entirety* of Regal's business with significant downstream impacts throughout the supply chain. *Id.* ¶¶ 7, 9.

### A. The Software is essential to Regal's business.

As a 3PL provider, Regal manages and distributes large volumes of physical inventory for customers who serve such retail giants as Amazon, Wal-Mart, and Target. *Id.* ¶¶ 10-11. To do that, Regal and its customers rely on the following custom-built Software programs:

1. <u>Warehouse Management System (WMS)</u>: Provides end-to-end support for real-time tracking of incoming product, shipping, and delivery; generates invoices and bills of lading;

2. <u>WMS Services</u>: Provides automated delivery of essential goods-and-transactions-related information in standardized format known as electronic data interchange ("EDI");

3. <u>MyWMS</u>, also known as MyRegal: Enables Regal's customers to access real-time inventory and distribution data, control the entire order cycle,

and analyze workflow; allows Regal's customers to receive and send data to retailers; and

4. <u>Transportation Management System</u>: Allows Regal to dispatch and track its trucks and shipping containers across the country

5. <u>Yards Management System</u>: Enables Regal to track in detail the activities at its warehouses across the country, including which trucks are currently loading and unloading; allows Regal's warehouse and dispatch staff to manage orders.

*Id.* ¶¶ 13–18. Each of these Software programs serves an essential role in Regal's business. *Id.* ¶¶ 6–7. Due to the dynamic nature of the 3PL business, each of these Software programs ███████████████. *Id.* ¶¶ 20–24. And due to the way in which Mr. Nguyen and others coded these programs, ███████████████████████████████████████████████████████████████. *Id.* ¶ 23.

### B. The Software Source Code is essential to the use of the Software.

During the eighteen years in which Regal has used the Software, the Software has undergone ████████ updates through modification of the Software Source Code, ████████████████████████████████████████████████████. *Id.* ¶ 19. Any Software update requires modification of the Software Source Code ████████████████████████████████████████. *Id.* ¶¶ 19–24. █████████████████████████████████████████████████████████ *Id.* ¶ 20. ████████████████████████████████████████████ *Id.* ¶ 21. ██████████████████████████████████ *Id.* ¶ 22. In addition to these ████████████ updates to the Software, which require use and modification of the Software Source Code, the Software Source Code needs to be

- 5 -

1    modified and recompiled for execution to address ▮▮▮▮▮▮▮▮▮▮ in the Software.
2    *Id.* ¶ 19.

3           By prohibiting the use or modification of the Software Source Code, Regal
4    cannot keep up with the dynamic nature of its 3PL business. *Id.* ¶ 24. ▮▮▮▮▮
5    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
6    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* ¶ 28.

7           **C.    Regal will incur millions of dollars in damages and costs** ▮▮▮
8           ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ **as a result of the preliminary injunction.**

9           Because of the essential role the Software Source Code plays in the day-to-day
10   operations of Regal's 3PL business, Regal's inability to use the Software Source Code
11   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* ¶¶ 23–24, 29.

12          As a result of the preliminary injunction, Regal will lose significant revenues
13   and profits while this litigation is pending, far more than a "nominal" bond of $10,000.
14   *See Iconix v. Tokuda*, 457 F. Supp. 2d 969, 1003 (N.D. Cal. 2006). In *Iconix*, the court
15   declined to calculate a bond amount based on lost profits or expenses that would result
16   from a preliminary injunction because the defendants claimed they were not using the
17   source code at issue. *Id.* at 1003. Here, however, Regal uses the source code—which
18   it will show it rightfully owns or is licensed to—at issue ▮▮▮▮▮▮▮▮▮ in order to
19   maintain the Software needed to operate its business. 2d Neeves Decl. ¶¶ 20–24.

20          The median time for cases to reach a decision on summary judgment in this
21   Court is 425 days, or about 14 months, and the median time for cases to reach trial in
22   this Court is 601 days, or about 20 months.[1] *Id.* ¶ 42. Over the last several years, Regal
23   has earned approximately ▮▮▮▮▮▮ in revenues per year and an average of ▮▮
24   ▮▮▮ in annual (EBITDA) profit. *Id.* ¶ 27. Regal will most certainly lose customers
25   and business. *Id.* ¶¶ 28–32. Regal's employees—from the warehouse director to the

---

28   [1]   District Judge James V. Selna, LEXMACHINA, https://law.lexmachina.com/court/ cacd/judge/2992 (last accessed May 9, 2019).

- 6 -

DEFENDANTS' *EX PARTE* APP. TO INCREASE PRELIMINARY INJUNCTION BOND

forklift operator—███████████████████████████████. *Id.* ¶ 33. Regal will incur substantial expenses. *Id.* ¶¶ 34, 46. ████████████████████████ ██████████████████████████████████. *Id.* ¶ 43.

At least for the reasons below, the damages and costs of Regal alone far exceed the $10,000 bond amount.

1. **Regal cannot ███████████████████ as a result of the preliminary injunction.**

For the year 2018, Regal had ████████ in revenues and ████████ in costs. ████████ accounted for approximately ████—████████— of Regal's revenue last year. *Id.* ¶ 27. As with the other updates to the Software requiring modifications to the Software Source Code, Regal ████████ ██████████████████████████████████████████████. *See id.* ¶¶ 20, 24. Under the preliminary injunction, Regal cannot modify the Software Source Code ██████████████████████████████. Dkt. No. 48 at 2. Thus, Regal cannot ████████████████████ as a result of the preliminary injunction. 2d Neeves Decl. ¶ 30.

Based on last year's revenues, Regal would incur damages of at least ████ over a two-year period due to being wrongfully enjoined simply as a result of █ ██████████████████████, or ███ times the amount of bond set by the Court.

2. **Regal will lose existing customers, ████████████████████ ██████████████████████████ ████████.**

████████████████████████████████████████████████████████ ████ Regal will lose existing customers ██████████████████ ████████. *Id.* ¶¶ 28–29. Customers depend on Regal to ensure that goods are timely and accurately received and shipped. *Id.* ¶ 10. Regal accomplishes this through its suite of custom Software tailor-made to provide real-time, detailed information on

- 7 -

DEFENDANTS' *EX PARTE* APP. TO INCREASE PRELIMINARY INJUNCTION BOND

everything from the level of a customer's product inventory in one of Regal's warehouses to the time and location of the delivery of a customer's product. *Id.* Because Regal cannot modify the Software Source Code, it cannot make updates to the Software that are inevitable in the dynamic nature of the 3PL business. *Id.* ¶¶ 19–24, 28–29.

The timing of the preliminary injunction exacerbates the damages and costs Regal Logistics will incur by being wrongfully enjoined. Regal's busy season begins each year around June in anticipation of the Halloween and Christmas holidays. *Id.* ¶¶ 28–29, 31. Approximately ▮ of Regal's revenues come from this holiday-oriented business. *Id.* ¶ 31. In May, customers provide Regal with information regarding their needs for the holidays, including new products and new distribution routes. *Id.* ¶ 28. ▮

▮

▮ *See id.* ¶¶ 28–29, 31.

▮ *Id.* ¶ 32. Understandably, ▮

▮

▮. *Id.* ▮

▮ *Id.*

**3.   Regal will lose ▮ in revenues while this preliminary injunction is pending,** ▮

As a result of lost business from current and new customers because of the preliminary injunction, Regal will suffer ▮ revenue and profit losses while this litigation is pending. *Id.* ¶¶ 27–31, 43. Simply put, ▮

DEFENDANTS' *EX PARTE* APP. TO INCREASE PRELIMINARY INJUNCTION BOND

Regal will lose at least ███████ in revenues if wrongfully enjoined. *Id.* ¶ 43. Because of lost revenues and business, Regal ████████████████████████████████████████████ while the preliminary injunction is in place. *Id.* ¶¶ 33, 37. Regal currently employs ███ contractors and nearly ██ employees, which include short-haul drivers, forklift operators, warehouse staff, and customer support personnel. *Id.* ¶ 33. ████████████████████████ as a result of being wrongfully enjoined. *Id.* ¶ 37.

**4. As a result of the preliminary injunction, Regal will be ███████████████████████.**

Because Regal cannot make the necessary updates to its Software because it is prohibited from accessing the Software Source Code, Regal will likely incur increased expenses. By way of limited example, Regal likely will be ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. *Id.* ¶ 34. ████████████████████████████████████████ *Id.* Regal also likely will be ████████████████████████████████████████████████████████████ *Id.* ¶ 35. This can result in Regal ████████████████████████████████████████████. *Id.*; 19 C.F.R. § 113.63.

**5. With no access to Software Source Code, Regal would need to develop different Software to operate its business, which takes time and expense.**

In light of the preliminary injunction, unless Regal can timely develop a new suite of Software to manage its business, it is very likely that the company ████████████████████████████████████████. 2d Neeves Decl. ¶¶ 26, 46. Development and implementation of a viable software replacement would take about ████████ and cost an estimated ████████ *Id.* ¶¶ 26, 46. Such a

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

replacement would ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and would help to mitigate the ▮▮▮▮▮▮ damages that would otherwise befall the company. *Id.* ¶ 46.

## II. The $10,000 Bond Will Not Cover The Other Defendants' Damages And Costs If Wrongfully Enjoined.

As shown above, a $10,000 bond will not begin to cover the losses and costs Regal will incur as a result of being wrongfully enjoined. But Regal is not the only Defendant in this case. The developer Defendants—Vu Ho, Thai Tran, Don Mai, and Trung Ngoc Doan (collectively, "Developer Defendants"), who currently work with Regal—and Mr. Randy Neeves, Chief Executive Officer of Regal, also will suffer significant damages and costs. *Id.* ¶¶ 36, 38, 44–45. A $10,000 bond will not cover any one of these Defendant's respective damages and expenses, let alone all of them.

### A. The Developer Defendants will likely be subject to layoffs or termination.

Because the Developer Defendants will have little to no work to do in light of their and Regal's inability to use or modify the Software Source Code, Regal would likely terminate or lay off all of them. *Id.* ¶¶ 37, 43. Currently, Regal pays the Developer Defendants on an hourly basis at variable rates for work performed on the Software Source Code. *Id.* ¶ 43. On average, Regal pays the Developer Defendants a total of ▮▮▮▮▮▮▮▮▮▮. *Id.* During the pendency of this lawsuit, the Developer Defendants would lose a total of over ▮▮▮▮▮▮ in wages, or ▮ times the amount of bond set by the Court. *Id.*

### B. Mr. Neeves and his family will suffer severe financial hardship.

Mr. Neeves and his family will personally incur significant losses as a result of the preliminary injunction. *Id.* ¶ 44. Regal has been a closely held family business for the last fifty years. *Id.* Mr. Neeves and his family depend on Regal for their livelihoods, and a preliminary injunction ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.*

DEFENDANTS' *EX PARTE* APP. TO INCREASE PRELIMINARY INJUNCTION BOND

**III.  Softketeers Should Be Required To Post A Bond Of At Least $100 Million.**

In light of the substantial damages and costs each of the Defendants will incur if wrongfully enjoined, the Court should increase the bond amount to at least $100 million.  A bond in this amount would cover most of Regal's lost revenues and profits, the Developer Defendants' lost wages, the expenses Regal expects to incur ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and the expenses Regal would incur to develop suitable replacement Software.

Softketeers may balk at this amount.  But the amount of the bond requested by Defendants is directly attributable to the scope of the preliminary injunction Softketeers requested and now entered by the Court.  *See* Dkt. No. 48.  Had the Court imposed a narrowly tailored injunction proscribing discrete conduct by Defendants, such as enjoining Defendants from disclosing the Software Source Code to third parties or prohibiting Defendants from using the Software Source Code in any way other than to operate Regal's business, a lower bond—perhaps even the current bond of $10,000—would have been sufficient.  *See, e.g., Montana Silversmiths, Inc. v. Taylor Brands, LLC*, 850 F. Supp. 2d 1172, 1189 (D. Mont. 2012) (imposing $25,000 bond in copyright infringement and trade secret suit in light of "limited scope" of injunction prohibiting sales of one of many jewelry and belt-buckle products sold by the defendant). As entered, however, the preliminary injunction ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and the amount of the bond must fully account for the harm Defendants will have experienced, if ultimately the preliminary injunction is found to have been wrongly entered.

The bond amount may create a barrier to the imposition of the Court's expansive preliminary injunction, but this is exactly why a bond requirement exists:

> Requiring plaintiff to post a bond departs from the usual American approach of keeping the cost of litigation down to encourage people to resort to courts.  The bond grows out of the idea that because of attenuated procedure, an interlocutory order has a higher than usual change of being

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

wrong. . . . The bond deters rash applications for interlocutory orders; the bond premium and the chance of liability on it causes a plaintiff to think carefully beforehand.

*Instant Air*, 882 F.2d at 804. Given the ▇▇▇ threat the preliminary injunction poses to Defendants' business, a bond in the amount of at least $100 million is warranted.

## CONCLUSION

For the foregoing reasons, the Court should increase the bond amount to $100 million with the preliminary injunction becoming effective only upon payment of that amount.

Dated: May 9, 2019           **MCDERMOTT WILL & EMERY LLP**

By:   /s/ Paul M. Schoenhard
     PAUL M. SCHOENHARD
     Attorneys for Defendants

- 12 -

DEFENDANTS' *EX PARTE* APP. TO INCREASE PRELIMINARY INJUNCTION BOND

# PROOF OF SERVICE

I, Ellie Hourizadeh, declare:

I am a citizen of the United States and employed in Los Angeles County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 2049 Century Park East, Suite 3800, Los Angeles, CA 90067-3218. On May 9, 2019, I served a copy of the within document(s):

DEFENDANTS' *EX PARTE* MOTION TO INCREASE AMOUNT OF PLAINTIFF'S PRELIMINARY INJUNCTION BOND – REDACTED VERSION

☒ BY EMAIL via pdf file, by transmitting on this date via email, a true and correct copy scanned into an electronic file in Adobe "pdf" format. The transmission was reported as complete and without error.

Michael I. Katz (email: mkatz@mabr.com
L. Rex Sears (email: rsears@mabr.com)
MASCHOFF BRENNAN LAYCOCK
 GILMORE ISRAELSEN & WRIGHT PLLC
100 Spectrum Center Drive, Suite 1200
Irvine, CA 92618
Telephone: 949.202.1900
Fax: 949.453.1104

Executed on May 9, 2019, at Los Angeles, California.

/s/ Ellie Hourizadeh
Ellie Hourizadeh