1

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

- - -

THE HONORABLE JAMES V. SELNA, JUDGE PRESIDING

SOFTKETEERS, INC.,                  )
                    Plaintiff,  )
      vs.                           )
                                    )  SACV-19-00519-JVS
REGAL WEST CORPORATION,        )
et al.,                             )
                    Defendants. )
------------------------------)

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Santa Ana, California

November 18, 2019

SHARON A. SEFFENS, RPR
United States Courthouse
411 West 4th Street, Suite 1-1053
Santa Ana, CA  92701
(714) 543-0870

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

APPEARANCES OF COUNSEL:

For the Plaintiff:

LANNIE REX SEARS
MASCHOFF BRENNAN
111 South Main Street, Suite 600
Salt Lake City, UT  84111
(435) 575-1397

ERYNN LEONG EMBREE
MASCHOFF BRENNAN
100 Spectrum Center Drive, Suite 1200
Irvine, CA  92618
(949) 202-1900

For the Defendants:

PAUL M. SCHOENHARD
SARAH P. HOGARTH
MCDERMOTT WILL & EMERY, LLP
500 North Capitol Street, NW
Washington, DC  20001-1531
(202) 756-8223

SANTA ANA, CALIFORNIA; MONDAY, NOVEMBER 18, 2019; 2:15 P.M.

THE CLERK:  Item No. 14, SACV-19-00519-JVS, Softketers, Inc., versus Regal West Corporation, et al.

Counsel, please state your appearances for the record.

MR. SEARS:  Good afternoon, Your Honor.  Rex Sears and Erynn Embree on behalf of plaintiff Softketeers.

MR. SCHOENHARD:  Good afternoon, Your Honor.  Paul Schoenhard and Sarah Hogarth on behalf of the defendants.

THE COURT:  Good afternoon.

Well, do you want to be heard on each of these?

MR. SEARS:  We are prepared to submit on all of the tentative except for the contempt motion.

THE COURT:  Okay.

Mr. Schoenhard.

MR. SCHOENHARD:  Your Honor, we are prepared to submit on all but a proposed revision to the limited order tied to our contempt motion.

THE COURT:  Okay.

Well, let's hear from Mr. Sears on the contempt motion.

MR. SEARS:  I should also note with regard to the tentative on the defendants' contempt motion the photos and videos referenced were produced.  There was a clerical error where some of the reports were not attached to a

declaration.  That's has since been rectified.  So the photographs and videos taken at Regal's facilities both in Vietnam and the United States have been produced.

With regard to Softketeers contempt motion, the Court's tentative is to deny because Softketeers has failed to establish by clear and convincing evidence the defendants are in violation of the preliminary injunction.  I hope to convince the Court otherwise or at least to better understand in what particulars the evidence has come up short.

As a threshold matter, I want to make sure we are all starting from the same understanding of what the injunction requires.  First, the injunction by its terms applies not only to code that was acquired directly or indirectly from Softketeers, but also to quote any portion or derivative thereof; and, second, the enjoined conduct is not limited to use of the code.  The injunction also bars the defendants from continuing even to possess the code.  So we have that threshold understanding of what the injunction requires.

Then one more preliminary before turning to the evidence is the applicable standard of proof.  The Court's tentative quotes the Supreme Court's explanation that:  "The moving party must place in the ultimate fact-finder an binding conviction that the truth of its factual contentions

are highly probable."

Now, I want to pause here for just a second because this instance is unusual because the Court is itself the ultimate fact-finder.  The Court does not need to satisfy itself as it would on say a summary judgment or a judgment as a matter of law that no reasonable juror could fail to have an abiding conviction.  It is enough that the Court has an abiding conviction that it is highly probable that the defendants have not complied.

With those preliminaries out of the way, coming now to the evidence, what does or doesn't it show?  The Court entered its injunction on May 8.  Thereafter, the injunction was stayed for a week, from May 15 to May 22.  Have the defendants conformed to the injunction from May 23 on?

Now, I have to qualify that up front because it is known -- it is not disputed -- that defendants continued to possess the code until June 25 when they deposited a copy with Integrity Legal Corp.  But with that qualification, that is, other than wrongly possessing the source code from May 23 to June 25, have the defendants conformed to the injunction?

To answer that, I want to walk down three key milestones.  First, according to the defendants, by May 23, the day after the injunction stay ended, the code was placed

on administrative lockdown, and it was not used or accessed thereafter. They continued in possession for another month, but according to the defendants, they did not use or access the code on or after May 23. That's the first milestone.

Second, according to the Neeves declaration, beginning in June 2019, Regal enlisted several development companies, including some based in Vietnam, to build and test replacement software. Now, the first of these companies was VTSWay hired on June 12, 2019, so that's the second milestone. The building of replacement code starts on or after June 12.

Now, the third and final milestone, on August 23, 2019, Minh Nguyen went to VTSWay. While he was there, his companion, Nam Duong, photographed original Softketeers source code on premises. And Khang Nguyen, Regal's manager at VTSWay, showed Minh Nguyen some of the new Regal code that VTSWay is working on. Minh Nguyen captured some of that code on video.

Now, it bears emphasis with regard to that video that the defendants themselves vouched for that video. The defendants questioned the providence of Nam Duong's picture. They don't exactly deny that it's authentic, but they say they are not sure. Softketeers' witness is sure. That should be enough with regard to Nam Duong's photo.

But even setting that aside, the defendants do not

dispute that the frame that Softketeers has submitted from Minh Nguyen's video is a Regal's new code.  In fact, Khang Nguyen, Regal's office manager, authenticates that in paragraph 26 of his declaration.  So that is our third milestone.  On August 23, Minh Nguyen captures new Regal code on video.  So May 23 is supposedly the drop-dead date. On June 12, new code development starts.  On August 23, there is this capture of new code.

THE COURT:  But their new code is not necessarily synonymous with Softketeers' source code is it?

MR. SEARS:  The injunction scope includes code that is derived from the Softketeers code.  We believe that the characteristics of that code are such that it cannot be disputed it is at least with regard to what was captured on video derivative code.

Also, to the extent that the video reflects copying from Softketeers' code, it shows that the defendants have not been truthful with this Court when they said that code was locked down on May 23 and not accessed thereafter, because that replacement code -- development did not start on that until June 12, three weeks later.  So if that new code that went into development on June 12 has any characteristics copied from Softketeers' original code, then the defendants have not been truthful with this Court when they said they have not accessed or used that code on or

after May 23.

With regard to that, let's take a look at that video and what that video shows.  Side note, the source code that the defendants deposited with Integrity includes more than 40,000 files.  Of those, more than 11,000 files were last modified after May 23.  There is no getting around that.  So the defendants' statements that they did not touch the code after May 23 is simply false.  It's falsified by their own deposit with Integrity because that deposit includes 11,000 separate files that were last modified on or after May 23.

Second, let's talk about the video that Mr. Nguyen captured.  In particular, what we have focused on is a list of definitions for 24 so-called constants.  This is where a variable name is given a fixed value so that the code can then instead of using that number later just refer to it by the name.

We submitted as Exhibit C to our reply brief a side-by-side comparison of original Softketeers code with that list of constants from the VTSWay code.  And the originals for that comparison were of course included in our moving papers.  The only thing that we added with our reply was that now they are sitting right next to each other.

I do have -- and I think it would be helpful for what comes next -- if I could hand up to the Court that

side-by-side excerpt.

                    May I approach, Your Honor?

                    THE COURT:  You may.

                    (Document handed to the Court)

                    MR. SEARS:  What I have handed up is actually two things.  First, is the exhibit from our reply brief that I mentioned.  The other, the freestanding page, is just the right-hand side of that exhibit blown up even larger to make it easier to see.

                    This Exhibit C on Document No. 181-1 with ECF page numbers 35 and 36 -- page 36 shows on the left-hand side the list of constants from Softketeers' original code and on the right-hand side the list from the VTSWay code.  Then as I mentioned, the separate sheet that I handed up is just the right-hand side blown up larger.

                    What does this show?  Let's take a look.  Let's start at the top.  First, we have a customer, Berkshire_SEA -- that is Berkshire Seattle -- equals 441.  On the right, same thing.  Next, Berkshire_CHS.  That's Charleston.  On the right, same thing.

                    MR. SCHOENHARD:  Your Honor, if I may interject just briefly.  Regal's customer codes are proprietary to Regal.  I would prefer this not be entered into the public record.

                    THE COURT:  Just refer to that they are the same.

I can see that they are the same.  Recite the numbers.

MR. SEARS:  All right, Your Honor.  If we can go down to line -- I will just refer to line numbers of the code on the left.  If we go down to line 546, if we look at the customer that's on line 545 and then the customer on line 546, that illustrates that this list is not in alphabetical order.  So the order that it is in is not to be explained by the fact that these constants were just alphabetized.

Then if we continue down a couple more lines to line 548 on the left, the customer has as part of its name the word "Fullfillment."  Note that "Fullfillment" is misspelled.  There are two "l's" after the "u" instead of one.  Go over to the right-hand side.  We have exactly that same customer in exactly the same place with exactly that same misspelling.

Continue down a few more lines to line 557 on the left, and look at what we have got on line 557 and then line 561.  We have two entries for the same customer.  There is a duplicate, appearing in the same place, in both the original Softketeers code and in the VTSWay code.  What's more, the first entry on line 557 is misspelled.  There is the exact same misspelling in the list on the right-hand side.

The only credible explanation -- oh, I forgot to

11

mention -- in deference to counsel's wishes, I won't recite them, but they are recited in our papers -- seven of these customers are no longer Regal customers.  They stopped being Regal customers between 2003 and 2017.  There is no reason if Regal is independently developing code in 2019 to include seven former customers in its code.

The only explanation that makes any sense of these similarities between the VTSWay code that could not have been created before June 12 and the Softketeers code, which supposedly Regal has not accessed or used since May 23, is that Regal copied that list of constants from the Softketeers code sometime after May 23.

Now, one of two things is true.  Defendants violated the injunction as shown by the video captured at VTSWay on August 23 or somehow they have independently created a list of the same 24 constants in the same non-alphabetical order with the same duplicate entry, with the same two misspellings, with the same seven former customers.  That's simply is not a credible explanation.  Contempt is the only reasonable explanation for these documented similarities between the two bodies of code.

Thank you for hearing me out on that.

I would like to conclude with a couple of observations.  I hope that I have persuaded the Court that in fact there is clear and convincing evidence of contempt,

because there is no other available explanation for these similarities.

But in case I have not, looking beyond our motion, let me just point out that if the defendants were telling the truth about independently creating replacement code, then they should be eager to have that new code examined. In fact, they would have come forward with an analysis of that code done by an expert showing, no, this code has no relation to Softketeers' code. They haven't done that. Instead, their opposition speaks only in unverifiable generalities. Oh, that was business necessities, or whatever it is that it looks like we are still tinkering with, that's only because we have rewritten it. No specificity whatsoever. No real analysis.

And, worse, the defendants have so far taken a position in discovery that their replacement code is not responsive to outstanding discovery requests. And I'm told the responses due today to requests that are targeted specifically to replacement code -- that those requests will not be met with production of the code but will instead be met with an assertion that the replacement code is not relevant to this action. We just have to take their word for the fact that the replacement code is in fact different.

Now, how can it be that the defendants are allowed to resist Softketeers' contempt motion by arguing that they

are independently developing replacement code while at the same time they refuse to produce that replacement code so that their claim of independent creation can be verified?

The defendants' refusal to produce the code evidences consciousness of guilt.  It's another reason Softketeers' motion should be granted.  At a bare minimum, if Softketeers' motion is to be denied -- and I respectfully submit that based on the evidence that we have just covered, it should not be denied -- if that motion is to be denied, then the Court's forbearance should be conditioned that the defendants cooperate with every effort to test the truth of their claim to be independently creating replacement code starting of course with immediate production of the replacement code for evaluation.

THE COURT:  Thank you.

MR. SEARS:  Thank you, Your Honor.

THE COURT:  Mr. Schoenhard.  That one page seems to be an uncanny duplication of the other page; would you not agree?

MR. SCHOENHARD:  I agree that there is some significant similarities between the two.

THE COURT:  Isn't there a similarity in every single line?

MR. SCHOENHARD:  I have not done a true line for line, but I understand that to be the representation.  Your

Honor, there's a few things on the table here that are concerning on our end.  First and foremost, we were not part of this inspection in Vietnam.  I have never been to VTSWay.  I was not advised that Mr. Nguyen was going to invade a Regal agent's facilities.  We had no opportunity to observe --

THE COURT:  With police authorities apparently.

MR. SCHOENHARD:  Respectfully, I have no knowledge of Vietnamese police procedures or propriety.  I am unaware of anything that was given by way of notice here in the United States between counsel that as part of this ongoing case plaintiff or its agents were going to try to invade the property of our agents abroad or any notice at the time or in the immediate wake.  The first we learned of this was by surprise at a deposition and by words included in motion papers.

I recognize that these two pictures look highly similar.  I don't know where they came from.  I don't know whether the picture that Mr. Nguyen represents to be his code is his code.

THE COURT:  Well, can't you go back to your client and check this out?

MR. SCHOENHARD:  My client doesn't have Mr. Nguyen's code.

THE COURT:  No, no, no, the code in Vietnam.

Doesn't yur client have access to that?

MR. SCHOENHARD:  My client may be able to get code from Vietnam, but my client cannot compare that code to Mr. Nguyen's code.  We have no access to Mr. Nguyen's code.

THE COURT:  Not true.  Counsel have access to it, do they not?  I signed a stipulation to that effect, provided for supervision and a joint inspection and certain notice requirements.  Didn't I put that in place?

MR. SCHOENHARD:  Yes, you did just this past week.

THE COURT:  Couldn't that be made use of?

MR. SCHOENHARD:  It could to some degree.

THE COURT:  Why only to some degree?  If the whole code is there --

MR. SCHOENHARD:  I don't know if the whole code is there.

THE COURT:  Well, you won't know unless you go look.  You nominally at least have access to all the code that was deposited, and if your client was forthright in making the deposit, all the should be there.  Are you telling me that your client deposited less code than they have?

MR. SCHOENHARD:  No.

THE COURT:  Then all the code should be there shouldn't it?

MR. SCHOENHARD:  No.  My client is not sure

whether they even had all of the code.  What we put in the administrative lockdown and ultimately delivered to Integrity Legal was the code that my client was delivered late was year, that my client continued to modify up until the point at which this Court said that it was no longer appropriate.  Then my client held it in administrative lockdown until it was delivered to Integrity Legal Corporation.

To this time, we have never had access to Mr. Nguyen's code even to compare whether it is the same code that my client was using and modifying at the beginning part of this year.  There is currently a discovery dispute pending before Magistrate Judge Early with respect to Mr. Nguyen's code that up until this point Mr. Nguyen has refused to produce for inspection in this litigation.

I have no way of verifying anything in Mr. Nguyen's declarations about Mr. Nguyen's alleged code.  What I can do I is inquire with my clients routinely and consistently, advise them with respect to the preliminary injunction, and ensure that they advise me of their compliance with it.

In connection with that, each of the defendants has repeatedly declared to this Court that each of the defendants divested himself of the code, is not in possession of this code, and did not convey the code to any

third parties.

Mr. Khang Nguyen, the manager of VTSWay, that was on premises when the invasion occurred, both in the video that Mr. Nguyen has provided to the Court and separately by declaration has stated that he did not receive source code from Regal.  I have no reason to believe that VTSWay ever received source code from any of the defendants in this case.  Each of the defendants in this case has told me they did not do so.  They have told this Court they did not do so.

THE COURT:  Well, do you have an explanation as to how apparently the same code got to Vietnam?

MR. SCHOENHARD:  I do not with one exception. Mr. Khang Nguyen, the manager of VTSWay, noted that as to some executables it's possible to decompile an executable and perhaps decompiled software would ultimately produce a screen that looks similar.  That has been addressed in the parties briefing.  But Mr. Khang Nguyen in Vietnam wasn't able to state with any certainty exactly who developed the code that they saw on the screen or whether that was decompiled code, independently created code, or whether that was even based on a Regal document.

All of these things are things that general discovery could have tried to solicit.  That's why we have discovery.  To this point, Mr. Nguyen and Softketeers have

done nothing to depose, for instance, Regal in its corporate capacity or Mr. Randy Neeves, the leader of Regal.

THE COURT:  What if I ordered as preliminary relief on the Motion for Contempt the production of the code in Vietnam, albeit with appropriate trade secret restrictions?  Maybe a third party gets it, whatever.  But what if I ordered that as preliminary relief on this motion?

MR. SCHOENHARD:  I would need to inquire whether we even have authority to get the source code itself from VTSWay.  I would expect we can.  I have no concern with that as a preliminary order of this Court, although I would ask this Court to also order Softketeers to make available for inspection its code because up until this point we have been completely handicapped in our ability to assess the merits of this case.

THE COURT:  I think Mr. Sears is prepared to do that.

MR. SEARS:  Your Honor, in fact, we offered back in early September to make available for inspection the complete code base that Softketeers deposited with my law firm to support the applications for copyright registration that were filed in February and March of this year.  That offer has been on the table since September.  It has not been taken up.

The Court did comment on the -- inquire about the

19

completeness of the code base on deposit at Integrity.  Near as we can tell -- we have a directory of that code.  We don't have the actual code.  But from the directory, it appears to be incomplete.  However, the code that my law firm and has had since February and March -- so this is not relying upon Mr. Nguyen's say so.  We have had this code in our possession since February and March.  It includes the file against which the VTSWay code is compared.  That offer of production has been out there since September of this year.

MR. SCHOENHARD:  Your Honor, this morning during our meet and confer with Mr. Sears that is the first time I was made aware that he was prepared to produce the source code that he claims to have in his law firm's possession.  The parties have had this as an active discovery dispute before Magistrate Judge Early.

THE COURT:  Well, what's the status of being in front of Judge Early?

MR. SCHOENHARD:  As to Magistrate Judge Early, the parties have provided a joint stipulation.  In the wake of Your Honor's signing of the order regarding outside counsel access this past week, Magistrate Judge Early issued an order asking the parties to meet and confer this morning to advice whether any further dispute remained with respect to that joint stipulation.  Otherwise, that is currently

slated for hearing before Magistrate Judge Early on December 5.

MR. SEARS:  With regard to the operative production, it's memorialized in a letter from early September, Your Honor.

THE COURT:  Well, my inclination is to order production of the code from Vietnam.  You're going to get access to Softketeers' code and put this over and let the parties examine the code and come back and tell me what is there.

MR. SCHOENHARD:  I have no objection to assessing this case on the merits.  That's been our goal the entire time.  Instead, this case has turned into an odd sideshow on preliminary injunction enforcement rather than --

THE COURT:  Well, I wouldn't call that a sideshow.  A preliminary injunction is not a sideshow.  Enforcing a legitimate preliminary injunction whose terms are clear is not a sideshow.

MR. SCHOENHARD:  I appreciate that, Your Honor, and I don't mean to disregard the Court's authority here.  I do think it is highly inappropriate to invade a company's officers and then throw everything that can be found out there without counsel ever having an opportunity to actually assess the merits of a case.

It's not remotely fair or reasonable or equitable

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

for a party under a preliminary injunction to consistently be facing motions and to have no opportunity to participate in reasonable discovery, to have no notice of what is going on, but instead to rely on a Vietnamese private investigator whose address we still don't know, who we are unable to get to, and his declaration is somehow what is supporting an effort before this Court to enforce a preliminary injunction.

THE COURT:  Let's turn to the motion you want to address.

MR. SCHOENHARD:  Your Honor, as to your findings, we are prepared to stand on your tentative as provided. What we would ask is that the final paragraph of your tentative with respect to this motion which pertains to what is ordered by Your Honor -- if I may just briefly grab it.

MR. SEARS:  What page, counsel?

MR. SCHOENHARD:  I am page 15 of the tentative.

You begin the paragraph:  "However, one of the defendants' suggestions is well founded."  And you ordered Softketeers -- you propose to order Softketeers to share with the defendants all pictures, videos, et cetera.

THE COURT:  I understand that has been done.

MR. SCHOENHARD:  I understand that Mr. Sears professes that to have been done, although there have been several occasions where he has also similarly professed it

to have been done, and we realize it has not been done.

THE COURT:  Sir, spare me the gratuitous slurs. If you have got facts, give me facts.  If you don't have facts, don't give me gratuitous speculations that are basically slurs.  Okay?

MR. SCHOENHARD:  My apologies, Your Honor.  My intent was not to slur.  My concern is that we do not have all the facts with respect to Softketeers' investigations. To this point, Softketeers has taken the position that communications between counsel or between Softketeers and the private investigators are shielded by privilege.

We would ask this Court to order the production of all communications with the investigators so that we can determine what they were asked to do, what in fact they did, because otherwise we have no way --

THE COURT:  Sir, if you are interested in that, you should initiate the appropriate discovery.

MR. SCHOENHARD:  We have initiated that discovery. I was asking Your Honor as part of this order to actually order that produced and, further, to order that Softketeers desist from further invasion of any our properties without counsel being present so that we can actually have an opportunity to properly represent our clients.

THE COURT:  Anything further?

MR. SCHOENHARD:  No, Your Honor.  Thank you.

THE COURT:  Okay, we will get a finalized order out promptly, but it will reflect the general remarks I have made here today.  Okay, thank you.

(Whereupon, the proceedings were concluded.)

*     *     *

24

CERTIFICATE

I hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Date:  November 29, 2019

/s/   Sharon A. Seffens  11/29/19
_____
SHARON A. SEFFENS, U.S. COURT REPORTER