1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOFTKETEERS, INC., | Case No. 8:19-CV-00519-JWH (JDEx) |
| Plaintiff, | |
| v. | **FINDINGS OF FACT AND CONCLUSIONS OF LAW FOLLOWING BENCH TRIAL ON COUNTERDEFENDANTS' FIFTH COUNTERCLAIM, SIXTH COUNTERCLAIM, AND SEVENTH COUNTERCLAIM, AND DEFENDANTS' FIFTH AFFIRMATIVE DEFENSE, SIXTH AFFIRMATIVE DEFENSE, AND TWELFTH AFFIRMATIVE DEFENSE** |
| REGAL WEST CORPORATION dba REGAL LOGISTICS, VU HO INC., THAI TRAN INC., DON MAI INC., RANDY NEEVES, VU HO, THAI QUOC TRAN, DON MAI, TRUN NGOC DOAN, and DONG BAO PHAM, | |
| Defendants. | |
| REGAL WEST CORPORATION d/b/a REGAL LOGISTICS, a Washington corporation; VU HO INC., a California corporation; THAI TRAN INC., a California corporation; DON MAI INC., a California corporation; RANDY NEEVES, an individual; VU HO, an individual; THAI QUOC TRAN, an individual; DON MAI, an individual; TRUNG NGOC DOAN, an individual; and DONG BAO PHAM, an individual, | |

1

Counterclaimants,

2

3     v.

4     SOFTKETEERS, INC., a California
      corporation, and
5     MINH KHAI NGUYEN, an individual,

6

7                 Counterdefendants.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.  BACKGROUND

This lawsuit has begun to rival the fabled fictional case of *Jarndyce and Jarndyce* in terms of the time, complexity, and resources expended by the parties and the Court.[1]  The case arises out of a dispute over the use and ownership of software designed for warehousing and logistics applications.[2]  From 2000 to 2019, Plaintiff and Counterdefendant Softketeers, Inc. created and maintained several computer software programs used by Defendant and Counterclaimant Regal West Corporation (doing business as Regal Logistics), a third-party logistics company.  Regal provides warehousing, cross-docking, transportation, and assembly and repackaging services.[3]  Regal terminated its relationship with Softketeers on February 1, 2019.[4]

Softketeers commenced this action in March 2019, asserting claims for relief for, *inter alia*, copyright infringement, trade secret misappropriation, and breach of contract.[5]  In response, Regal and its fellow Defendants and Counterclaimants[6] raised numerous affirmative defenses and counterclaims

---

[1]    *See generally* Charles Dickens, *Bleak House* (Oxford University Press 1989) (1853).  The length of the docket is staggering, approaching one thousand entries.

[2]    By now, the parties are deeply familiar with the background of the case and the voluminous procedural history.  Accordingly, here the Court provides only an abbreviated summary.

[3]    Joint Rule 26(f) Report [ECF No. 85] 1:8-9 & 2:8-11.

[4]    Final Pretrial Conference Order (the "Final Pretrial Conference Order") [ECF No. 792-1] 4:6-8.

[5]    *See generally* Compl. [ECF No. 1].

[6]    Those Defendants and Counterclaimants include Vu Ho Inc.; Thai Train Inc.; Don Mai Inc.; Randy Neeves; Vu Ho; Thai Quoc Tran; Don Mai; Trung Ngoc Doan; and Dong Bao Pham.  Defendants and Counterclaimants Don Mai and his closely held company, Don Mai Inc. ("DMI"), are currently in default.  The Court struck Mai and DMI's Answers on June 26, 2020.  *See generally* Order Regarding Mot. to Strike [ECF No. 597].  The Clerk of the Court entered default with respect to DMI on that same day.  *See* Default by Clerk [ECF No. 598].  Subsequently, the Court entered default against Mai as an individual, in view of Softketeers's unopposed motion to strike.  *See* Order Striking Def. Don Mai's Answer and Denying Softketeers's Mots. to Drop Remaining Claims

-3-

against Softketeers and its principal owner, Counterdefendant Minh Nguyen.[7]

Related to those claims and defenses are the following 10 copyright registrations

that Softketeers obtained from the U.S. Copyright Office:[8]

- TXu 2-130-748 (MyWMS's unpublished back-end);

- TXu 2-130-747 (YMS);

- TXu 2-130-746 (RF Systems);

- TXu 2-130-648 (WMS VB 6.0);

- TXu 2-130-025 (WMS Services);

- TXu 2-130-024 (TMS);

- TXu 2-129-947 (WMS C#);

- TXu 2-129-946 (WMS VB.NET);

- TX008730600 (MyWMS's public front-end); and

- TX008720835 (TMS Mobile iOS).[9]

Of those works, the first eight—the TXu registrations—are unpublished, and

the last two—the TX registrations—are published.

After several years of pretrial litigation, the parties proceeded to trial in

September 2021.[10]  The parties agreed that certain matters would be tried to the

jury while others would be tried to the Court.[11]  The latter included the following

claims and defenses of Defendants and Counterclaimants:

---

[ECF No. 734] 3.  Accordingly, all references herein to "Defendants" or
"Counterclaimants" exclude Mai and DMI, unless otherwise noted.

[7]     *See generally* Defs.' Second Am. Answer and Countercls. (the "SAACC")
[ECF No. 306].

[8]     Softketeers alludes to an eleventh registration, but that registration was
not in its pleadings, so it is not at issue here before the Court.  *See* Reporter's Tr.
of Trial Proceedings Trial Day 1 ("Trial Transcript Volume One") [ECF
No. 871] 13:5-19.

[9]     *See* First Am. Compl. (the "Amended Complaint") [ECF No. 101] ¶ 29;
*see also* Trial Ex. Nos. 182-190.

[10]    Unless otherwise indicated, all dates are in 2021.

[11]    Order re:  Rule 50 Briefing and Additional Post-Verdict Filings [ECF
No. 834] 3.

- their fifth counterclaim for a declaratory judgment that Regal owns the software copyright;

- their sixth counterclaim for a declaratory judgment that Counterdefendants' copyright registrations are invalid due to fraud on the U.S. Copyright Office;

- their seventh counterclaim for a declaratory judgment that Regal has an implied license to use, retain, and modify the software;

- their fifth affirmative defense of copyright misuse;

- their sixth affirmative defense of fraud on the Copyright Office; and

- their twelfth affirmative defense of equitable estoppel.

On the first day of trial, Softketeers moved to dismiss without prejudice its copyright infringement claim regarding the two published works, Registration Nos. TX008730600 and TX008720835.[12]  Accordingly, the jury did not consider those copyright registrations when Softketeers tried its claim for copyright infringement.[13]

On September 23, the jury rendered a verdict that was almost entirely in favor of Softketeers and Minh Nguyen.[14]  The parties subsequently provided briefing on the counterclaims and affirmative defenses to be tried by this Court,[15]

---

[12]  *See generally* Pl.'s *Ex parte* Mot. to Dismiss its Copyright Infringement Claims based on Copyright Registration Nos. TX008730600 and TX008720835 Pursuant to Fed. R. Civ. P. 41(a)(2) ("Plaintiff's *Ex parte* Motion to Dismiss") [ECF No. 796].

[13]  Amended Complaint ¶¶ 55-61.

[14]  *See generally* Verdict Form (the "Final Verdict") [ECF No. 823].

[15]  The Court considered the documents of record in this action, including the following:

- Defs.' Brief in Supp. of J. in Favor of Regal on Countercl. 5 (the "Brief on Counterclaim Five") [ECF No. 839];

- Defs.' Brief in Supp. of J. in Favor of Regal on Countercl. 7 (the "Brief on Counterclaim Seven") [ECF No. 840];

- Defs.' Brief in Supp. of Equitable Estoppel and Copyright Misuse Affirmative Defenses (the "Brief on Affirmative Defenses Five and Twelve") [ECF No. 841];

and they also filed several additional post-trial motions.[16]  The Court conducted a hearing on November 30, during which Defendants confirmed that they briefed their motion under Rule 50(a) of the Federal Rules of Civil Procedure[17]

- Defs.' Brief in Supp. of (1) Affirmative Defense and (2) Countercl. for Decl. J. Re: Fraud on the Copyright Office (the "Brief on Affirmative Defense Six and Counterclaim Six") [ECF No. 842];
- Pl.'s Opp'n to Countercl. 5, for Decl. J. of Ownership (the "Opposition to Counterclaim Five") [ECF No. 865];
- Pl.'s Opp'n to Countercl. 7 for Decl. J. of Licensure ("Opposition to Counterclaim Seven") [ECF No. 866];
- Pl.'s Opp'n to (1) Affirmative Defense and (2) Countercl. for Decl. J. Re: Fraud on the Copyright Office (the "Opposition to the Sixth Affirmative Defense and Sixth Counterclaim") [ECF No. 867];
- Pl.'s Opp'n to Defs.' Equitable Estoppel and Copyright Misuse Affirmative Defenses (the "Opposition to the Fifth and Twelfth Affirmative Defenses") [ECF No. 868];
- Defs.' Reply in Supp. of J. in Favor of Regal on Countercl. 5 (the "Reply in Support of Counterclaim Five") [ECF No. 884];
- Defs.' Reply in Supp. of J. in Favor of Regal on Countercl. 7 (the "Reply in Support of Counterclaim Seven") [ECF No. 885];
- Defs.' Reply Brief in Supp. of (1) Affirmative Defense and (2) Countercl. for Decl. J. Re: Fraud on the Copyright Office (the "Reply in Support of the Sixth Affirmative Defense and Sixth Counterclaim") [ECF No. 886];
- Defs.' Reply Brief in Supp. of Equitable Estoppel and Copyright Misuse Affirmative Defenses (the "Reply for the Fifth and Twelfth Affirmative Defenses") [ECF No. 887];
- Pl.'s Suppl. Brief Re Certain Post-Verdict Filings ("Plaintiff's Supplemental Brief") [ECF No. 893];
- Defs.' Response to Plaintiff's Supplemental Brief ("Defendants' Supplemental Response") [ECF No. 894];
- Defs.' Suppl. Brief Regarding Jurisdiction over Fifth and Sixth Countercl.'s for Declaratory Relief (the "Defendants' Supplement Brief on Jurisdiction") [ECF No. 923]; and
- Pl.'s Reply to Defs.' Suppl. Brief Re Defendants' Supplement Brief on Jurisdiction (the "Plaintiff's Supplemental Reply on Jurisdiction") [ECF No. 925].

[16]    See, e.g., Pl.'s Mot. for Prejudgment Interest Pursuant to Cal. Civ. Code §§ 3287(a) and 3288 [ECF No. 835]; Pl.'s Mot. for (1) a Destruction Order or, Alternatively, (2) A Reasonable Royalty in Lieu of Injunctive Relief [ECF No. 836]; Defs.' Brief in Supp. of Oral Rule 50(a) Mots. for J. as a Matter of Law ("Defendants' Rule 50(a) Motion") [ECF No. 838]; Pl.'s Mot. for Contempt Sanctions [ECF No. 848]; Pl.'s Mot. for (1) Exemplary Damages, (2) Att'y Fees, and (3) Expert Fees [ECF No. 850].

[17]    See generally Defendants' Rule 50(a) Motion.

merely to preserve their positions on various issues.  Accordingly, the Court ruled from the bench and denied Defendants' Rule 50(a) motion.[18]  The Court then asked the parties for supplemental briefing regarding the implications of that ruling on the outstanding counterclaims and affirmative defenses.  On December 3, Softketeers filed their supplemental brief,[19] and Defendants responded a week later.[20]  The Court issued a tentative order and conducted a hearing on January 11, 2022.

During that hearing, Softketeers orally moved to dismiss its claim for copyright infringement for those two published works ***with*** prejudice.  Defendants responded by filing a notice of non-opposition to that motion, so long as it did not affect their right to pursue their counterclaims.[21]  The Court subsequently granted Softketeers's motion.[22]  On January 21, 2022, Softketeers filed a notice of voluntary cancellation of its copyright registrations for TX008730600 and TX008720835.[23]

After considering the briefs filed in support and opposition, as well as the arguments made by counsel during the various hearings, the Court finds in favor of Softketeers on each affirmative defense and in favor of Softketeers and Minh Nguyen on each counterclaim, except with regard to two copyright registrations with respect to which the Court lacks jurisdiction, as explained below.

---

[18]     *See generally* Min. Order of Video Hearing [ECF No. 891].

[19]     *See generally* Plaintiff's Supplemental Brief.

[20]     *See generally* Defendants' Supplemental Response.

[21]     Defs.' Response to Softketeers's Oral Mot. to Dismiss Copyright Infringement Claims [ECF No. 907] 2:6-9.

[22]     *See* Min. Order Granting Pl.'s Oral Mot. to Dismiss Copyright Infringement Claims ("Order Dismissing Copyright Infringement Claims") [ECF No. 920].

[23]     Notice of Filing of Cancellation Petitions for Registrations of Published Works ("Notice of Cancellation Petitions") [ECF No. 910].

## II.  LEGAL STANDARD

As a general matter, parties in a civil lawsuit may waive or withdraw their Seventh Amendment right to a jury trial and request that certain claims be tried by the court.  *See Palmer v. Valdez*, 560 F.3d 965, 968 (9th Cir. 2009); Fed. R. Civ. P. 38(d).  In those circumstances, the Court serves as the trier of fact.  Fed. R. Civ. P. 52(a).  In this case, the Court serves in that capacity with respect to Defendants' affirmative defenses and Counterclaimants' counterclaims that are the subject of this Order.  Defendants bear the burden of "prov[ing] the elements of [an] affirmative defense by a preponderance of the evidence."  *United States v. Beasley*, 346 F.3d 930, 935 (9th Cir. 2003).  Similarly, in their counterclaims for declaratory relief, Counterclaimants bear the burden of proving their entitlement to a declaratory judgment under the same standard.  *Cf. Medtronic, Inc. v. Mirowski Fam. Ventures, LLC*, 571 U.S. 191, 199 (2014).

When both legal claims and equitable claims exist in a case, the jury's implied findings on legal claims are controlling.  *See GTE Sylvania Inc. v. Continental T.V., Inc.*, 537 F.2d 980, 986 n.7 (9th Cir. 1976) ("When issues common to both legal and equitable claims are to be tried together, the legal issues are to be tried first, and the findings of the jury are binding on the trier of the equitable claims.").

Moreover, even when parties ask the court to try claims that do not clearly sound in equity, the jury's verdict constrains the court's factual findings, especially when the verdict is not advisory.  *See, e.g.*, *Consol. Rail Corp. v. Grand Trunk W. R. Co.*, 2012 WL 3731741, at *2 (E.D. Mich. Aug. 29, 2012) (in a case where some claims were decided by the jury and a claim for declaratory judgment was submitted to the court, the district court held that it was "required to take into account the jury verdict and is precluded from issuing findings of fact that contradict the jury's decision"); *see also Westinghouse Elec.*

1   *Corp. v. Gen. Cir. Breaker & Elec. Supply Inc.*, 106 F.3d 894, 901 (9th Cir. 1997)

2   (affirming the district court in drawing "inferences from the verdicts to

3   determine the issues that the presumptively rational jurors must have

4   determined, and then used those implicit findings of fact as the basis for

5   judgment as to certain issues"); *Ag Servs. of Am., Inc. v. Nielsen*, 231 F.3d 726,

6   731 (10th Cir. 2000) (holding that the court "must consider what findings are

7   explicit or necessarily implied by the verdict"). However, when the verdict is

8   advisory in nature, "the Court is free to accept or reject the advisory jury's

9   findings, in whole or in part, and is obligated to make its own independent

10   assessment of the issues submitted to the advisory jury." *Hannibal Pictures, Inc.*

11   *v. Sonja Prods., LLC*, 2009 WL 10673572, at *1 (C.D. Cal. Aug. 31, 2009), *aff'd*,

12   432 F. App'x 700 (9th Cir. 2011).

13          When interpreting jury verdicts, the Court must assume that the jury

14   followed its instructions faithfully. *See Aspen Skiing Co. v. Aspen Highlands*

15   *Skiing Corp.*, 472 U.S. 585, 604 (1985).

## III.  DISCUSSION

### A.  Counterclaimants' Fifth Counterclaim

18          In their fifth counterclaim, Counterclaimants seek a declaratory judgment

19   that Regal owns the copyright rights to the software at issue in this case.[24]

20   Counterclaimants argue that Regal is the exclusive owner of the software,[25]

21   either on account of the work-for-hire doctrine[26] or the loaned servant

22   doctrine.[27]  In the alternative, Counterclaimants contend that the evidence

---

[24]     SAACC ¶¶ 178-183.

[25]     Brief on Counterclaim Five 1:13-18.

[26]     *Id*. at 14:16-22:15

[27]     *Id*. at 22:16-23:13.

shows that Regal is, at a minimum, a co-author and, therefore, a co-owner of the copyright rights to the software.[28]

### 1.    The Two Published Works at Issue

Before reaching the merits of those arguments, Softketeers's decision to cancel two of its copyright registrations—TX008730600 (MyWMS's public front-end) and TX008720835 (TMS Mobile iOS), both of which are published works—raises a question of whether this Court retains jurisdiction over a counterclaim involving their ownership.

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  The relevant inquiry is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (citing *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

Counterclaimants argue that a live and ongoing controversy persists over TX008730600 and TX008720835 because Softketeers has not affirmatively disavowed its ownership in the works covered by those registrations.[29]  The Court is not persuaded.

The procedural posture of this case has shifted considerably with respect to those two works.  The Court dismissed with prejudice Softketeers's copyright infringement claims with respect to those registered works,[30] and Softketeers

---

[28]    *Id.* at 1:19-23.

[29]    Defendants' Supplement Brief on Jurisdiction 4:13-5:6.

[30]    *See generally* Order Dismissing Copyright Infringement Claims.

petitioned the U.S. Copyright Office to cancel those registrations.[31]  Softketeers cannot maintain a copyright infringement action with respect to those works unless and until it obtains new registrations pertaining to them from the Copyright Office.  *See Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 887 (2019); 17 U.S.C. § 411(a).  That necessity suggests that there is no longer "sufficient immediacy" to warrant declaratory relief.  *See MedImmune*, 549 U.S. at 127.

In the alternative, even if this Court possesses subject matter jurisdiction over those two published works, it declines to exercise its discretion under the Declaratory Judgment Act.  "Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants."  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995).  Here, the Court chooses to refrain from adjudicating these issues.  With the threat of Softketeers's assertion of copyright infringement claims against Defendants pertaining to the two published works thus removed, Regal itself could try to register those works with the Copyright Office, to quiet title.  In essence, an administrative remedy may prove satisfactory.  Moreover, Rand Neeves testified that Regal does not use or even possess Softketeers's software anymore; Neeves explained that Regal relies instead on an alternative system called Netcore.[32]  Taking those statements at face value, it appears that resolving this dispute over rights to the two published works would have little impact in the real world, and it would consume even more judicial resources.

---

[31]     *See generally* Notice of Cancellation Petitions.

[32]     Plaintiff's Supplemental Reply on Jurisdiction 2:22-23; *see also* Reporter's Tr. of Trial Proceedings Trial Day 3 ("Trial Transcript Volume Three") [ECF No. 873] 758:4-16; Reporter's Tr. of Trial Proceedings Trial Day 5 ("Trial Transcript Volume Seven") [ECF No. 859] 1295:2-5.

1    For those reasons, the Court concludes that that it lacks subject matter

2    jurisdiction over the fifth counterclaim, but only as it pertains narrowly to

3    TX008730600 and TX008720835—the copyright registrations for the two

4    published works.  Therefore, the Court **DISMISSES** the fifth counterclaim for

5    lack of subject matter jurisdiction, as it relates to copyright registration

6    Nos. TX008730600 and TX008720835.

7    **2.    The Eight Unpublished Works at Issue**

8    Unlike the two published works, this Court conducted a full jury trial on

9    Softketeers's copyright infringement claims regarding its remaining eight

10   unpublished works.  Softketeers contends that its copyright registrations in

11   those eight unpublished works are valid, so a live controversy exists.  Thus, the

12   Court has subject matter jurisdiction over the fifth counterclaim with respect to

13   the eight unpublished works.

14   **a.    Findings of Fact**

15   Counterclaimants seek a declaration of Regal's "rights and other legal

16   relations" vis-à-vis the software pertaining to the unpublished works.  *See* 28

17   U.S.C. § 2201.  Properly understood, Counterclaimants ask for a declaratory

18   judgment that would rest on factual premises diametrically opposed to what the

19   jury concluded.  Granting such relief requires the adjudication of several

20   questions of fact to determine copyright ownership.  *See, e.g.*, 17 U.S.C. §§ 101,

21   *et seq.*

22   While the Court accepts its obligation to adjudicate Counterclaimants'

23   fifth counterclaim for declaratory judgment, it cannot ignore the jury's verdict

24   where it applies.  Absent a renewed motion for judgment as a matter of law

25   under Rule 50(b) or a Rule 59 motion for a new trial (which any party may file at

26   the appropriate time, and which the Court does not prejudge now), the Court

27   must draw inferences from the jury verdict on questions of fact.  *See Consol. Rail*

28   *Corp.*, 2012 WL 3731741, at *2.  It follows, therefore, that the Court "must

-12-

assume the jury found certain facts" when it rendered a verdict that Defendants infringed Softketeers's copyright rights.[33] *Westinghouse Elec. Corp.*, 106 F.3d at 901.

### i.      Regal Employees

The key factual question here is whether Minh Nguyen and the other software developers were, in fact, Regal employees.  Fittingly, the jury instructions[34] mirrored the *Reid* factors—the same factors that Counterclaimants cite in their briefs—to guide the jury in determining whether Nguyen and the other software developers were employees or contractors under the work-for-hire doctrine.[35]  *See Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 751–52 (1989).  The Court issued those instructions at Counterclaimants' request.[36]

After considering the evidence and those factors, the jury concluded that every Defendant other than Trung Ngoc Doan infringed Softketeers's copyrights.  To reach that result, the jury necessarily ***must have found*** that Softketeers and the other software developers were not Regal employees.  *Accord Westinghouse Elec. Corp.*, 106 F.3d at 901 ("This finding of fact was necessarily determined by the jury and essential to their judgment on the [claim] . . . .").

### a)      Questions of Fact and Law

At the hearing on January 11, 2022, Counterclaimants launched several assaults on this finding of fact.[37]  To begin, Counterclaimants argued that this finding confuses questions of fact and law.  Counterclaimants contended that the

---

[33]      Final Verdict 3.

[34]      *See* Final Jury Instructions ("<u>Final Jury Instructions</u>") [ECF No. 822], No. 37 at 19-21.

[35]      Brief on Counterclaim Five 12:16-28.

[36]      *See* Proposed Disputed Jury Instructions [ECF No. 763] 26, 27, & 29.

[37]      The Court previewed that finding with the parties in the tentative order that it circulated before the hearing.

1  jury could find factual predicates regarding the various *Reid* factors, but only the

2  ***Court*** could appropriately weigh those factors and conclude as a matter of law

3  that Softketeers and its programmers were—or were not—Regal employees.

4  While Counterclaimants conceded that there is no Ninth Circuit authority

5  directly on point, they invited the Court's attention to *Langman Fabrics, a div. of*

6  *Blocks Fashion Fabrics, Inc. v. Graff Californiawear, Inc.*, 160 F.3d 106 (2d Cir.),

7  *amended*, 169 F.3d 782 (2d Cir. 1998), which notes that "the ultimate

8  determination, on settled facts, of whether a work qualifies as a work-for-hire is a

9  question of law . . . ." *Id.* at 111.  Counterclaimants also pointed to *Aymes v.*

10  *Bonelli*, 980 F.2d 857 (2d Cir. 1992); *Eisenberg v. Advance Relocation & Storage,*

11  *Inc.*, 237 F.3d 111 (2d Cir. 2000); and *JustMed, Inc. v. Byce*, 600 F.3d 1118 (9th

12  Cir. 2010).

13        The Court finds several flaws with Counterclaimants' position.  First, the

14  Ninth Circuit's Model Civil Jury Instruction 17.11 stand at odds with *Langman*;

15  the Model Instruction provides for presenting the work-for-hire question to the

16  jury without any concern over the division of labor between the jury and the

17  Court.[38]  Both the Court and Counterclaimants based the final work-for-hire jury

18  instructions on those Model Instructions.[39]  Current Ninth Circuit model jury

19  instructions take precedence over an out-of-circuit case that is more than 20

20  years old, even if those instructions are not necessarily definitive.[40]

21

22

23

---

[38]     *See* Ninth Cir. Manual of Model Civil Jury Instructions 17.11 (2017 ed.)
400 ("If the issue of the employment status of the work's creator will be decided
by the jury, the Supreme Court has suggested an eleven-factor test focusing on
whether the creator of a work was an employee or an independent contractor
under common-law agency principles."); *id.* at 401 ("You should consider the
following factors in determining whether the creator of the work in this case was
an employee of the [*name of party identified*].").

[39]     *See* Final Jury Instructions, No. 37 at 19-21.

[40]     *See generally id.* at Introduction.

-14-

**b)      Procedural Posture**

Second, none of the cases to which Counterclaimants now refer are procedurally analogous to the instant case.  Both *Eisenberg* and *Langman* were appeals from summary judgment decisions.  *See Eisenberg*, 237 F.3d at 113; *Langman*, 160 F.3d at 107.  *Aymes* was an appeal from a motion to dismiss.  *See Aymes*, 980 F.2d at 858.  And *JustMed* was an appeal from a bench trial that had no jury trial component.  *See JustMed*, 600 F.3d at 1120.  The procedural posture matters because, unlike those cases, this case proceeded to trial, and the jury rendered its verdict on claims that overlap to some extent with claims reserved for the Court.  What Counterclaimants now invite this Court to do risks creating contradictory findings of fact.  Unless a party moves to set aside the jury verdict, *see* Fed. R. Civ. P. 50(b), the Court is not aware of any authority that would sanction the creation of alternative facts for the purpose of a declaratory judgment counterclaim.

**c)      Equity**

Third, there is the matter of equity.  Counterclaimants asked the Court to issue those very jury instructions, over the objection of Softketeers and Nguyen.[41]  The jury rendered its verdict, which was adverse to Counterclaimants.  Now Counterclaimants want the Court to ignore the jury's verdict.  The Court respects the parties' decision to send some claims to the jury and to reserve some for resolution by this Court, even when those claims have some overlapping factual underpinnings.  But the parties must live with that decision once the jury speaks.  The dignity of the judicial process demands such

---

[41]      Defendants argued that "Softketeers's claim that work-for-hire is not a jury question conflicts with the fact that the Ninth Circuit has propounded an instruction on it."  Proposed Disputed Jury Instructions 29:13-14.  Defendants even went so far as to say that "[n]ot providing the Reid factors to the jury would prohibit them from considering the appropriate principles to make a work-for-hire determination, **which is in their province**."  *Id*. at 29:10-12 (emphasis added).

1  a result.  *See State of Ariz. v. Shamrock Foods Co.*, 729 F.2d 1208, 1215 (9th Cir.

2  1984); *see also Rissetto v. Plumbers & Steamfitters Loc. 343*, 94 F.3d 597, 600 (9th

3  Cir. 1996) (holding that the doctrine of judicial estoppel precludes a party from

4  gaining an advantage by taking one position, and then seeking a second

5  advantage by taking an incompatible position).

6      In the alternative, Counterclaimants also argued at the hearing that the

7  Court must cabin the jury's findings to only those that are ***necessarily*** implied by

8  the jury's verdict.  Put differently, the Court cannot hang its hat on any implied

9  findings of fact if the jury had multiple, alternative ways to reach its verdict.  To

10  breathe life into their theory, Counterclaimants point to Jury Instruction No. 35

11  regarding copyright registrations, which states:  "[f]rom these certificates you

12  may, but need not, conclude that Softketeers owns the copyrights for the

13  software identified therein."[42]  From that instruction, say Counterclaimants, the

14  jury could reach its verdict on the issue of copyright infringement without ever

15  considering other issues of ownership, such as work-for-hire ownership or joint

16  authorship.

17      At first blush, Counterclaimants have a point, as it appears that Jury

18  Instruction No. 35 gave the jury an alternative basis to determine ownership.

19  But two pages later, Jury Instruction No. 37 clarifies that the "employer is

20  considered to be the author of the work and owns the copyright."[43]  When read

21  together, the permissive language of Jury Instruction No. 35 gives way to the

22  mandatory language of Jury Instruction No. 37.  The latter constrains the scope

23  of what is logically permissible under the former.

24      Even if the jury ignored Jury Instruction No. 37 and based its entire

25  decision on the existence of the copyright registration certificates, those

26

27  ──────────────
   [42]    *See* Final Jury Instructions, No. 35 at 17.

28  [43]    *See* Final Jury Instructions, No. 37 at 19.

certificates had to disclose the author of the copyright and whether the registered work was a "work-for-hire." *See* 17 U.S.C. § 409(4).  In reviewing those certificates and their veracity,[44] the jury necessarily faced a nested, embedded question of whether Softketeers and its programmers were the authors or whether they were, in fact, Regal employees.  Hence, the jury had no way to avoid making a factual finding on employment status, even if they had based their verdict solely on those registrations.  The jury's implied finding of fact here is not "indeterminate";[45] it is inescapable.

But even assuming—*arguendo*—that the jury could still ***theoretically*** rest its copyright infringement verdict on some unknown or unforeseen alternative basis, common sense simply suggests otherwise.  On-the-ground realities from the trial strongly indicate that the jury overwhelmingly had questions of employment and the work-for-hire doctrine at the top of mind.  For one thing, Counterclaimants' counsel dedicated a considerable portion of his closing argument to reiterating the work-for-hire theory and the evidence supporting it.[46]  Counsel for Counterclaimants even walked through the *Reid* factors, making many of the same points for the jury that are echoed in Counterclaimants' brief.[47]  For another thing, the jury was asked to render an advisory verdict regarding fraud on the Copyright Office,[48] which required them to review those copyright registrations for inaccuracies.[49]  With the words

---

[44]    *See, e.g.*, Trial Ex. Nos. 182-190 (containing Certificates of Registrations listing the authors and whether it was work-for-hire).

[45]    Reply in Support of Counterclaim Five 9:7.

[46]    *See, e.g.*, Reporter's Tr. of Trial Proceedings Trial Day 7 [ECF No. 877] 1690 ("I encourage you to read Instruction No. 37 and to discuss each of the factors that are identified.  Ultimately, this is a situation where we consider all of the factors.").

[47]    *Compare id.* at 1690-99 *with* Brief on Counterclaim Five 14:20-22:15.

[48]    Final Verdict 6 (finding there was no inaccurate information knowingly included on Softketeers's applications for copyright registrations).

[49]    *See* Final Jury Instructions, No. 45 at 30.

1    "work made for hire" sitting squarely on the front page of each copyright

2    registration,[50] the likelihood that the jury somehow neglected the question of

3    work-for-hire or employment appears remote.

4                        **ii.    Borrowed Employees**

5          Counterclaimants also argue that the software developers were on loan to

6    Regal as borrowed employees.  That question did not go to the jury.

7    Counterclaimants point to evidence that Regal personnel dictated the

8    specifications of the software.[51]  However, the Court does not find that evidence

9    persuasive.  A customer that specifies what features it wants in the software that

10   it is paying for—in and of itself—does not demonstrate that the customer

11   *controls* the software developer's employees.  *See Kirkpatrick v. Shell Oil Co.*,

12   912 F.2d 469 (9th Cir. 1990) (defendant company's practice of dictating work

13   assignments to decedent was insufficient to establish, as a matter of fact,

14   direction and control over decedent as a borrowed employee).  If the Court were

15   to hold otherwise, then nearly any employee of a client-facing business could be

16   classified as a loaned-out employee, thereby making the doctrine so capacious

17   that the exception swallows the rule.

18         Furthermore, Rand Neeves testified that the software developers created

19   the software "under the direction and supervision of Softketeers," not Regal.[52]

20   That admission directly undermines Counterclaimants' theory, as it shows that

21   Softketeers, rather than Regal, maintained ultimate authoritative direction and

22   control in the capacity of an intermediary supervisor.  *Cf. Parker v. Joe Lujan*

23   *Enterprises, Inc.*, 848 F.2d 118, 120 (9th Cir. 1988) (where the allegedly borrowed

24   employee, a winch truck operator, "apparently utilized no independent

25

---

26   [50]    *See* Trial Ex. Nos. 182-190.

27   [51]    Brief on Counterclaim Five 22:25-23:11.

28   [52]    Opposition to Counterclaim Five 12:3-5 (quoting Trial Transcript Volume Three 754:3-6).

judgment" and was told solely to "follow the instructions of ECCG's supervisor and the man in the bosun's chair").  Therefore, the Court finds that the software developers were not borrowed employees.

> **b.    Conclusions of Law**

The jury's verdict speaks directly to the first element of the fifth counterclaim as described in the final pretrial conference order; *i.e.*, whether or not the software was prepared by a Regal employee.[53]  Accordingly, the verdict compels the Court to conclude as a matter of law that Regal was not the exclusive owner of the software under a work-for-hire theory.

The jury's verdict also forecloses Counterclaimants' theory that Regal was a joint author.  The jury received instructions regarding who constitutes a joint author.[54]  The jury also heard that "[e]ach co-owner has an independent right to use or license the use of the copyright and so a co-owner of a copyright cannot be liable to another co-owner for copyright infringement."[55]  Therefore, ***because*** the jury found Defendants liable for copyright infringement, the jury implicitly found that Regal is not a co-owner.  And because a co-author is "automatically" a co-owner and *vice versa*,[56] it follows ineluctably that the jury determined Regal not to be a co-author.  *See Pye v. Mitchell*, 574 F.2d 476, 480 (9th Cir. 1978); 17 U.S.C. § 201(a) ("The authors of a joint work are coowners of copyright in the work.").

Lastly, the Court should not entertain Counterclaimants' argument relying on the loaned servant doctrine because it was not raised or memorialized in the final pretrial conference order.  "Claims, issues, defenses, or theories of damages not included in the pretrial order are waived even if they appeared in

---

[53]    Final Pretrial Conference Order 16:9-14.

[54]    *See* Final Jury Instructions, No. 39 at 23.

[55]    *See id.*, No. 31 at 13.

[56]    Brief on Counterclaim Five 23:17-20.

1  the complaint . . . ."  *Duhn Oil Tool, Inc. v. Cooper Cameron Corp.*, 818

2  F. Supp. 2d 1193, 1207 (E.D. Cal. 2011), *on reconsideration in part,* 2012 WL

3  13040409 (E.D. Cal. May 7, 2012) (citing *Rockwell Int'l Corp. v. United States*,

4  549 U.S. 457, 475 (2007)); *see also* Fed. R. Civ. P. 16(e).  The loaned servant

5  doctrine requires an extra element to show that an employee was effectively a

6  "loaned servant"; namely, "the location of the power to control the servant." [57]

7  *United States v. N.A. Degerstrom, Inc.*, 408 F.2d 1130, 1133 (9th Cir. 1969).

8  Because this element is nowhere to be found in the final pretrial conference

9  order, the Court finds this argument untimely. [58]

10       And even if it were to entertain that argument, the Court is not persuaded

11  that Counterclaimants have met their evidentiary burden. [59]  The preponderance

12  of the evidence does not show that Softketeers loaned its employees to the point

13  that Regal was functionally their employer.  Under a "borrowed employees"

14  theory, [60] Counterclaimants must demonstrate that Regal had "authoritative

15  direction and control" over Softketeers's personnel.  *Parker*, 848 F.2d at 120.

16  As discussed above, the facts do not bear that out, requiring the Court to

17  conclude as a matter of law that Regal does not own the software under the

18  loaned servant doctrine.

19       In summary, the jury's verdict forecloses Counterclaimants' work-for-

20  hire theory and joint authorship theory.  Additionally, the evidence in the record

21

22  ─────────────────

[57]       *See* Final Pretrial Conference Order 16:9-14.

23  [58]       *See generally id*.

24  [59]       If Defendants had intended that this question go the jury, then the Court
   would agree with Softketeers that the theory was waived because Defendants

25  never made the relevant objection to the jury instructions.  *See* Opposition to
   Counterclaim Five 5:5-10; *see also* Fed. R. Civ. P. 51(c)(1) ("A party who objects

26  to . . . the failure to give an instruction must do so on the record, stating
   distinctly the matter objected to and the grounds for the objection.").  It appears

27  that Defendants concede this point.  *See* Reply in Support of Counterclaim Five
   9:11-13.

28  [60]       Brief on Counterclaim Five 23:12.

does not support the loaned servant theory, which, in any event, Counterdefendants did not raise in a timely manner.  Accordingly, the Court finds for Counterdefendants on the fifth counterclaim.

**B.   Defendants' Sixth Affirmative Defense and Counterclaimants' Sixth Counterclaim:  Fraud on the U.S. Copyright Office**

Defendants and Counterclaimants contend that "Softketeers made numerous and significant misrepresentations to the Copyright Office in order to obtain the registrations necessary to bring this suit, including misrepresenting authorship and dates of completion and omitting Regal's involvement."[61]

A certificate of registration satisfies the requirements of the Copyright Act, "regardless of whether the certificate contains any inaccurate information, unless (A) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and (B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration."  17 U.S.C. § 411(b)(1).  "In any case in which inaccurate information described under [17 U.S.C. § 411(b)(1)] is alleged, the court shall request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration."  17 U.S.C. § 411(b)(2).  "In other words, courts may not consider in the first instance whether the Register of Copyrights would have refused registration due to the inclusion of known inaccuracies in a registration application."  *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 959 F.3d 1194, 1197 (9th Cir. 2020), *cert. granted in part*, 141 S. Ct. 2698 (2021), and *vacated and remanded on other grounds*, 142 S. Ct. 941 (2022).

---

[61]   Brief on Affirmative Defense Six and Counterclaim Six 1:14-17.

1.     **The Two Published Works at Issue**

During the trial, Softketeers challenged the Court's jurisdiction over the sixth counterclaim as it pertains to the two published works—copyright registrations TX008730600 and TX008720835.[62]  At the time, the Court ruled that it retained jurisdiction.[63]  But now, as discussed previously, *see supra* § III.A.1, the situation has changed.

The Court concludes that Softketeers's voluntary cancellation leaves Counterclaimants without a remedy under their sixth counterclaim with respect to those two published works.  "Fraud on the Copyright Office is not an independent claim but, rather, an attack on the prima facie validity provided under Section 410(c)."  5 William F. Patry, Patry on Copyright, § 17:126 Fraud on the Copyright Office (2021).  If those registrations are cancelled, then the Court can provide no further relief.

The inability of the Court to provide redress indicates the absence of a case or controversy.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Mayfield v. United States*, 599 F.3d 964, 972–73 (9th Cir. 2010) (finding no standing where declaratory relief would not redress plaintiff's injury).  In the absence of a claimant with Article III standing, the Court lacks subject matter jurisdiction.  *See Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004).  Therefore, the Court **DISMISSES** the sixth counterclaim for lack of subject matter jurisdiction as it relates to copyright registrations TX008730600 and TX008720835.

---

[62]     Trial Transcript Volume Seven 1199:19-23.

[63]     Minutes of Jury Tr. Day Six [ECF No. 817]; *see also* Defs.' Mem. Re: Countercls. for Fraud on the Copyright Office for Dismissed Software [ECF No. 812].

## 2. The Eight Unpublished Works at Issue

The Court proceeds with its findings of fact and conclusions of law only with respect to the eight unpublished works.

### a. Findings of Fact

As a preliminary matter, the Court notes that the jury provided an advisory verdict germane to this counterclaim and related affirmative defense. When asked whether inaccurate information was included on any of Softketeers's applications for copyright registration with knowledge that it was inaccurate, the jury answered "no" for each of the copyright registrations at issue.[64] And while the parties agree that this verdict is strictly advisory,[65] the Court affords considerable weight to the independent perspective of the jury—both in terms of the jurors' evaluation of the evidence and their assessment of the witnesses' credibility.

Notwithstanding that advisory verdict, Defendants contend that there are three "categories" of inaccuracies in Softketeers's copyright registrations.[66]

### i. Dates of Completion and Publication

The first category concerns the dates of completion and publication for eight of the 10 copyright registrations:  TXu 2-130-748 (MyWMS's unpublished back-end); TXu 2-130-747 (YMS); TXu 2-130-746 (RF Systems); TXu 2-130-648 (WMS VB 6.0); TXu 2-130-024 (TMS); TXu 2-129-947 (WMS

---

[64]     Final Verdict 6.

[65]     *See* Opposition to the Sixth Affirmative Defense and Sixth Counterclaim 5:14-15; Reply in Support of the Sixth Affirmative Defense and Sixth Counterclaim 2:3.

[66]     Reply in Support of the Sixth Affirmative Defense and Sixth Counterclaim 4:10-11.

1  C#); TX008730600 (MyWMS's public front-end); and TX008720835 (TMS
2  Mobile iOS).[67]

3      Concerning the six unpublished TXu registrations listed above,
4  Defendants argue that there are three embedded inaccuracies:  (1) that
5  Softketeers wrongly characterized the works as original when they were
6  derivative; (2) that they were actually published rather than unpublished; and
7  (3) that they were published much earlier than 2019, the date of the
8  registration.[68]

9      However, the Court concludes that the jury verdict leads to a contrary
10  result on all three points.  Of course, the jury's advisory verdict regarding fraud
11  on the Copyright Office stands at odds with Defendants' characterization of the
12  facts.  But so, too, does the jury's ***non-advisory*** verdict regarding Softketeers's
13  claim for copyright infringement.[69]  As Defendants acknowledge, the U.S.
14  Copyright Office does not offer "blanket registrations" unless "(1) the
15  preexisting source code has never been published or registered, and (2) the
16  claimant owns the copyright in both the new and the preexisting source code."[70]
17  This Court instructed the jury that a computer program is not considered
18  "published" if the "creator of the program provided the work (a) to a definitely
19  select group; (b) for a limited purpose; and (c) without the right of diffusion,
20  reproduction, distribution, or sale."[71]  *See also Acad. of Motion Picture Arts & Scis.*
21  *v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1452 (9th Cir. 1991).  The

22

---

23  [67]    Brief on Affirmative Defense Six and Counterclaim Six 3:13-5:17.  The
24  Court includes mention of the TX registrations, as they had been at issue, but
   notes that the findings of fact here do not apply to them.

25  [68]    *Id.* at 5:10-17.

   [69]    Final Verdict 3.

26  [70]    Brief on Affirmative Defense Six and Counterclaim Six 4:20 & 5:5-9
27  (citing U.S. Copyright Office, *Circular 61:  Copyright Registration of Computer
   Programs* (May 2020) 2).

28  [71]    *See* Final Jury Instructions, No. 36 at 18.

-24-

crucial inference here, then, is that the jury could not have found for Softketeers on its claim for copyright infringement *if* the executable code delivered to Regal was, in fact, published.  In other words, the verdict "by necessary implication reflects" the jury's factual determination that Softketeers's delivery of ***executable code*** did not constitute a publication.  *Nielsen*, 231 F.3d at 732.

At the hearing, Defendants critiqued the Court's reasoning here in a manner similar to their critique of the Court's findings of fact on the fifth counterclaim.  Defendants contend that Jury Instruction No. 35 gave the jury an alternative basis to reach their copyright infringement verdict, meaning that the verdict does not ***necessarily*** imply—as a matter of fact—that the software was not published.  Again, the Court is not persuaded.

First, the language of Jury Instruction No. 36 is mandatory, whereas Jury Instruction No. 35 is permissive.  Jury Instruction No. 36 explains the scope of the copyright registrations and, therefore, necessarily constrains what "may" be concluded.[72]  Second, the applications and registrations would need to disclose whether the work was published.  *See* 17 U.S.C. § 409(8).  So even if the jury had rested its decision regarding copyright ownership simply on the registrations— as Defendants claim is possible—the jury would still have to make findings of fact regarding those registrations.  If the registrations were inaccurate or otherwise not credible—as Defendants insinuate—the jury would have necessarily found otherwise.  Therefore, the Court concludes that there was no inaccuracy with regard to the date of completion on the six registrations at issue for unpublished works or their status as unpublished original works.

### ii.    Authorship

The second category of alleged inaccuracies concerns incorrect authorship information.  Here, Defendants offer a smattering of putative errors,

---

[72]    *Compare id.* at 18 *with id.* at 17.

mostly in the form of omissions, pertaining to only four registrations: TXu 2-130-748 (MyWMS's unpublished back-end); TXu 2-130-648 (WMS VB 6.0); TXu 2-130-024 (TMS); and TXu 2-129-947 (WMS C#).[73]

With respect to the MyWMS registration, Defendants point to the testimony of Minh Nguyen, in which he stated that Thai Tran and Tuan Nguyen may have authored some code, but he was "not sure."[74]  The Court agrees with the jury that Minh Nguyen's statement was honest and credible, which undermines the idea that Softketeers omitted this information ***knowingly***.[75]

Next, regarding the TMS registration, Defendants make two points. First, Defendants contend that Softketeers wrongly listed non-party Brandon Le as an author on the TMS registration, as evidenced by the fact that Minh Nguyen later testified that "it's only Tuan [Nguyen] . . . who handled the TMS."[76]  Softketeers does not oppose that fact directly.[77]  But, notwithstanding that apparent contradiction, the Court is not persuaded that the record demonstrates that Minh Nguyen knew of that inaccuracy at the time that Softketeers filed the registrations.  Indeed, the questions directed at Minh Nguyen during cross-examination did not inquire into his state of mind or what he knew at the time.[78]  The jury also found credible Minh Nguyen's subsequent testimony regarding his state of mind at the time of registration.[79]  Therefore,

---

[73]   Brief on Affirmative Defense Six and Counterclaim Six 5:18-6:1.

[74]   Trial Transcript Volume Three 614:18-615:4.

[75]   Opposition to the Sixth Affirmative Defense and Sixth Counterclaim 11:11-15 & 12:3-5.

[76]   Brief on Affirmative Defense Six and Counterclaim Six 5:21-23 (citing Trial Transcript Volume Three 606:8-13 and JTX-184).

[77]   *See generally* Opposition to the Sixth Affirmative Defense and Sixth Counterclaim; *see also* Reply in Support of the Sixth Affirmative Defense and Sixth Counterclaim 8:3-7.

[78]   *See, e.g.*, Trial Transcript Volume Three 613:23-615:15.

[79]   *See, e.g.*, *id*. at 671:6-672:9.

while the Court believes that Softketeers's inclusion of Brandon Le (and its omission of Tuan Nguyen) was likely erroneous, the Court does not find that Defendants have met their burden to show that it was more likely than not that Softketeers was aware of that inaccuracy at the time of registration.

With respect to their second point on the TMS registration, Defendants note that Thai Tran testified that he worked on the TMS, but that he is also omitted from the registration.[80]  Based upon the advisory verdict, the jury did not find Tran's testimony credible.  Even if it had, Tran's testimony does not address Softketeers's knowledge, so the Court concludes that Softketeers did not have knowledge of that supposed inaccuracy.

Lastly, concerning the registrations for WMS VB 6.0 and WMS C#, Defendants claim that Softketeers failed to list Phong Nguyen, Viet Nguyen, and Thang Le as authors, in view of their contributions to the code.[81]  Defendants highlight the testimony of Minh Nguyen, in which he notes that those applications include conversion tools that those individuals authored.[82] Defendants present this testimony as proof of Minh Nguyen's knowledge.[83] Although the Court finds it likely that those individuals contributed at least some *de minimis* amount of code, the Court is not persuaded that the testimony demonstrates that Softketeers clearly knew of the code's existence.[84]  Indeed,

---

[80]    Brief on Affirmative Defense Six and Counterclaim Six 5:24-25 (citing Reporter's Tr. of Trial Proceedings Trial Day 4 [ECF No. 858] 991:8-12).

[81]    *Id.* at 5:25-6:1 (citing Trial Transcript Volume Three 599:13-19, Reporter's Tr. of Trial Proceedings Trial Day 6 [ECF No. 876] 1370:18-1373:8, 1424:7–8, 1423:15–22, 1423:25–1424:1428:6–12, & 1428:6–12).

[82]    *Id.* at 7:17-23 (citing Reporter's Tr. of Trial Proceedings Trial Day 2 ("Trial Transcript Volume Two") [ECF No. 872] 314:13-17 and Trial Transcript Volume Three 614:18-25 & 615:5-9).

[83]    *Id.* at 7:20-23.

[84]    *See* Trial Transcript Volume Three 599:3-606:7.  To the extent that a credibility determination is needed for this back-and-forth between Minh Nguyen and counsel for Defendants, the jury's advisory verdict supplies ample guidance.

Softketeers points out in its Opposition that there is no evidence that Softketeers knew that "a couple of short stored procedures written by Phong Nguyen and Viet Nguyen had been stored in its NewProdSchema.sql file."[85]  Tellingly, Defendants drop the argument thereafter.[86]  The Court need not revive it for them.  Thus, the Court concludes that Defendants fall short of showing, by a preponderance of the evidence, that Softketeers knew about that supposed omission at the time of registration.

### iii.   Regal's Role

The third and final category of misrepresentation concerns Softketeers's alleged concealment of Regal's role in creating the software; *i.e.*, that Regal was an exclusive owner under the work-for-hire doctrine or at least a co-owner of the software.[87]  However, as discussed above in the context of the fifth counterclaim, the jury's non-advisory verdict implies factual findings that contradict Defendants' view of ownership—findings that this Court cannot ignore.  Accordingly, the Court finds no material omission with respect to Regal's role as an owner or co-author because Regal was, as a matter of fact, neither of those things.

### b.   Conclusions of Law

The Ninth Circuit "recently clarified that there is no such intent-to-defraud requirement" with respect to fraud on the Copyright Office.  *Unicolors, Inc.*, 959 F.3d at 1198 (9th Cir. 2020).  In its brief, Softketeers noted that that holding may change since the Supreme Court had recently granted *certiorari* in

---

[85]   Opposition to the Sixth Affirmative Defense and Sixth Counterclaim 4:5-9; *see also* Trial Transcript Volume Three 672:13-676:24 (distinguishing between the compiled code and stored procedures, as well as noting that the database schema were excluded from the registrations).

[86]   *See generally* Reply in Support of the Sixth Affirmative Defense and Sixth Counterclaim & Defendants' Supplemental Response).

[87]   Brief on Affirmative Defense Six and Counterclaim Six 6:2-6.

*Unicolors*.[88]  While the instant matter was under submission, the Supreme Court issued its opinion in *Unicolors, Inc. v. H&M Hennes & Mauritz, L. P.*, 142 S. Ct. 941 (2022).  There the Court held that the lack of either factual or legal knowledge on the part of a copyright holder can excuse an inaccuracy in a copyright registration under the Copyright Act's safe-harbor provision.  *Id.* at 945.  The Court did not address the intent-to-defraud question directly.  *See id.* at 949-51 (Thomas, J., dissenting).  This Court proceeds with its conclusions of law accordingly.

"[I]ntentional, material omissions may support a defense of fraud on the Copyright Office."  *Kaseberg v. Conaco, LLC*, 360 F. Supp. 3d 1026, 1036 (S.D. Cal. 2018); *see also Apple Computer, Inc. v. Microsoft Corp.*, 759 F. Supp. 1444, 1454, *on reconsideration*, 779 F. Supp. 133 (N.D. Cal. 1991), *and aff'd*, 35 F.3d 1435, *and aff'd*, 35 F.3d 1435 (9th Cir. 1994).  But Softketeers did not have to disclose every fact pertaining to the registration.  *See Kaseberg*, 360 F. Supp. 3d at 1037.  "Plaintiff is not required . . . to provide the geographical coordinates for where he composed the work, what he ate for breakfast that morning, or what color underwear he was wearing at the time," *id.*, unless that is "information regarded by the Register of Copyrights as bearing upon the preparation or identification of the work or the existence, ownership, or duration of the copyright."  17 U.S.C. § 409(10).  But Softketeers ***was*** required to include the name and domicile of the authors, a statement regarding whether the work was made for hire, the title of the work with any previous or alternative titles under which the work can be identified, the year when the work was completed, the date of the work's first publication, and an identification of any preexisting work in the case of derivative work.  *See* 17 U.S.C. §§ 409(2), (4), & (6)-(9).

---

[88]    Opposition to the Sixth Affirmative Defense and Sixth Counterclaim 6:17-19 (raising it as a reason to grant its request for severance under Rule 21).

Applying the law to the facts at hand, the Court concludes that Softketeers did not violate 17 U.S.C. § 411(b)(1)(A) with respect to any of the registrations for the eight unpublished works.  In view of this Court's findings of fact, Softketeers did not furnish incorrect dates of completion.  *See* 17 U.S.C. § 409(7).  Nor did Softketeers wrongfully omit information about Regal's role or ownership status.[89]  *See* 17 U.S.C. §§ 409(4) & (10).  Those conclusions mean that Minh Nguyen's decision to change the name of the MyWMS backend and his omission regarding the copyright notices are moot points, since Softketeers could not conceal "Regal's authorship and ownership stake" if Regal had none to begin with.[90]  And because the Court found that the evidence fails to demonstrate Softketeers's knowledge of inaccuracies with respect to additional authors, the Court concludes that Softketeers did not violate 17 U.S.C. § 411(b)(1)(A) with respect to its burden to identify the works' authors.  *See* 17 U.S.C. § 409(2).

In conclusion, with respect to the TXu registrations, the Court rules in favor of Softketeers on Defendants' sixth affirmative defense and rules in favor of Counterdefendants on Counterclaimants' sixth counterclaim.  With respect to the TX registrations, the Court rules that Defendants' sixth affirmative defense is moot, since those registrations were voluntarily dismissed from the copyright claim.[91]

---

[89]    In the alternative, even if the jury verdict was not controlling and the works ***were*** in fact ***published***, the absence of evidence demonstrating Softketeers's knowledge that Regal could distribute the software means that Defendants cannot meet their burden to show that Softketeers knowingly erred on its copyright registrations regarding publication.  *See* Opposition to the Sixth Affirmative Defense and Sixth Counterclaim 10:13-24 (citing *Gold Value Int'l Textile, Inc. v. Sanctuary Clothing, LLC*, 925 F.3d 1140, 1147 (9th Cir. 2019)).

[90]    Brief on Affirmative Defense Six and Counterclaim Six 6:19.

[91]    *See* SAACC 10:12-17 (lodging the sixth affirmative defense against only Softketeers's first cause of action; *i.e.*, the claim for copyright infringement).

## C.      Counterclaimants' Seventh Counterclaim

Here, Counterclaimants ask the Court for a declaratory judgment that Regal has an irrevocable implied license to use, retain, and modify the software.[92]

### 1.      Findings of Fact

Like their fifth counterclaim, Counterclaimants' request here is at odds with the jury's verdict.  "[W]hen the jury has decided a factual issue, its determination has the effect of precluding the court from deciding the same fact issue in a different way."  *Jadwin v. Cty. of Kern*, 2009 WL 2424565, at *17 (E.D. Cal. Aug. 6, 2009) (quoting *Wade v. Orange Cty. Sheriff's Off.*, 844 F.2d 951, 954 (2d Cir. 1988)).  Specifically, Softketeers argues that the jury's verdict on Softketeers's copyright infringement and trade secret misappropriation claims implies factual findings that preclude declaratory relief in favor of Counterclaimants.[93]  Softketeers is correct.

First, the jury found that all Defendants—save Trung Ngoc Doan—infringed Softketeers's copyright rights.[94]  The Court instructed the jury that a "copyright owner in a joint work may enforce the right to exclude others—except for those who have interests in the copyright, such as joint owners and *licensees*—in an action for copyright infringement."[95]  The Court further instructed the jury on explicit and implied licenses in the context of defining what constitutes a "licensee."[96]  Finally, the Court also issued instructions on the elements of an implied license.[97]  Those elements mirror the ones described

---

[92]      *Id.* at ¶¶ 191-195.

[93]      Opposition to Counterclaim Seven 2:18-3:10.

[94]      Final Verdict 3.

[95]      *See* Final Jury Instructions, No. 39 at 23 (emphasis added).

[96]      *See id.*, No. 40 at 25.

[97]      *See id.*, No. 41 at 26.

in *Asset Mktg. Sys., Inc. v. Gagnon*, 542 F.3d 748, 754-55 (9th Cir. 2008), a case that Counterclaimants cite numerous times in their brief.[98]  Therefore, if Regal had an implied license, then it could not have infringed Softketeers's copyright.  But because the jury found there ***was*** copyright infringement, that verdict necessarily implies that the jury found factual predicates that negate an implied license.[99]

Second, the jury also found that the same Defendants misappropriated Softketeers's trade secrets.[100]  Here, the jury instructions specifically directed that if the jury found "that Regal was a licensee . . . of the copyrighted work, [the jury] must find that Regal is not liable for trade secret misappropriation of that copyrighted work."[101]  Put in the contrapositive, because the jury found that Regal ***was*** liable for trade secret misappropriation, then Regal could not have been, in fact, a licensee.  The Court adopts that finding.

### 2. Conclusions of Law

"The existence of a license is an affirmative defense to a claim of copyright infringement and the burden of proof is ultimately on the party seeking to avoid infringement liability."  *Sprengel v. Mohr*, 2013 WL 645532, at *9 (C.D. Cal. Feb. 21, 2013).  Since "[i]mplied licenses are creatures of law, not equity," the jury's findings necessarily foreclose Counterclaimants' licensure theory.  *Id.*  Softketeers raises this very argument in its Opposition,[102] but

---

[98]    *See, e.g.*, Brief on Counterclaim Seven 2:6-12, 3:5-7, 6:10-18, 10:24-11:2, 12:26-13:2, & 13:15-18.

[99]    Like they did with their fifth counterclaim, Counterclaimants argued at the hearing that that finding confuses law and fact, pointing to *Carnegie Mellon Univ. v. LSI Corp.*, 2020 WL 5592990, at *5 (N.D. Cal. Sept. 18, 2020) (citing *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 73 (Fed. Cir. 2012)).  Upon review, the Court concludes that those cases do not buttress Counterclaimants' position.

[100]   Final Verdict 7.

[101]   *See* Final Jury Instructions, No. 62 at 48.

[102]   Opposition to Counterclaim Seven 2:5-3:10.

Counterclaimants ignore it—and effectively concede it—in their Reply, instead choosing to reargue the point that the seventh counterclaim remains for this Court to decide.[103]  The Court concludes as a matter of law that Regal is not entitled to a declaratory judgment that it has an implied license to use, retain, and modify the software.

Accordingly, the Court rules in favor of Counterdefendants on Counterclaimants' seventh counterclaim.

**D.  Defendants' Fifth Affirmative Defense:  Copyright Misuse**

Defendants assert their fifth affirmative defense of copyright misuse against Softketeers's claim for copyright infringement.[104]  Specifically, Defendants argue that Softketeers forced Regal to purchase "[i]ndefinite IT and [s]oftware [d]evelopment" services—services not covered by the software's copyright—as a condition of receiving a license to use the software itself.[105]

"The copyright misuse doctrine prevents holders of copyrights from leveraging their limited monopoly to allow them control of areas outside the monopoly."  *Oracle USA, Inc. v. Rimini St., Inc.*, 879 F.3d 948, 957 (9th Cir. 2018), *rev'd in part*, 139 S. Ct. 873 (2019) (internal quotations omitted).  Copyright misuse precludes enforcement of a copyright during the period of misuse, even though it does not invalidate the copyright.  *Prac. Mgmt. Info. Corp. v. Am. Med. Ass'n*, 121 F.3d 516, 520 n.9 (9th Cir. 1997), *amended*, 133 F.3d 1140 (9th Cir. 1998).

Although recognized as an affirmative defense by the Ninth Circuit, courts have "applied the doctrine sparingly."  *Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1157 (9th Cir. 2011).  The "contours" of copyright misuse as an

---

[103]   Reply in Support of Counterclaim Seven 1:2-3:8.
[104]   SAACC 10:7-11.
[105]   Brief on Affirmative Defenses Five and Twelve 13:25; *see also id.* at 13:26-16:2.

-33-

equitable defense "are still being defined." *MDY Indus., LLC v. Blizzard Ent., Inc.*, 629 F.3d 928, 941 (9th Cir. 2010), *as amended on denial of reh'g* (Feb. 17, 2011), *opinion amended and superseded on denial of reh'g*, 2011 WL 538748 (9th Cir. Feb. 17, 2011).

## 1.   Findings of Fact

The thrust of Defendants' argument here revolves around the notion that Softketeers impermissibly tied Regal's license to use the software to Regal's purchase of continual software maintenance and other IT services.[106]  As evidence, Defendants highlight portions of Nguyen's testimony, in which he related his understanding that "Regal would only have a license even to use the software for as long as it kept hiring [Softketeers] to perform other work."[107] That other work included some development of Regal's marketing website, interfacing with customers, and responding to customer service inquiries.[108]

But the Court finds that the record does not support Defendants' characterization of the facts.  Defendants' brief cherry-picks Minh Nguyen's testimony, omitting the parts where he clarifies his understanding of the bundling:

> Q. So although software was custom made for Regal to use, although Regal paid for the software, you say that Regal agreed that it was never allowed to stop working with you if they wanted to keep using what they paid for; correct?
>
> A.  I'm not saying that.
>
> Q.  Their license, in your view, would terminate the moment they stopped keeping you employed; correct?

---

[106]     *Id.* at 15:4-6.

[107]     *Id.* at 15:8-9 (quoting Trial Transcript Volume Three 552:11-14).

[108]     Reply for the Fifth and Twelfth Affirmative Defenses 7:25-8:3 (quoting Trial Transcript Volume Two 472:16-473:4).

1     A.  They just have to pay for the license.

2     Q.  At no point in time did you ever, in fact, charge Regal for a

3     license; correct?

4     A.  Because it's bundled with the service that Softketeers—

5     Q.  Sir, I apologize for the interruption, but I think my question was

6     more specific.  At no point in time did you actually charge Regal a

7     license fee; correct?

8     A.  It's already bundled into the service.

9     Q.  Sir—

10     A.  The fee for service that I charged Regal.

11     Q.  Mr. Nguyen, if you could please try to answer my question "yes"

12     or "no."  At no point in time did you charge Regal a license fee;

13     correct?

14     A.  That's correct.

15     Q.  And at no point in time did you tell Roque Neeves that, if he

16     terminated you, he would not be allowed to use the software he paid

17     for anymore; correct?

18     A.  That's correct.

19     Q.  And the software that you were paid to create required daily

20     maintenance; correct?

21     A.  Because the nature of the business.  It's correct in that sense.[109]

22   Put in context, Minh Nguyen's testimony reveals a more nuanced picture.

23   From his perspective, which the Court found to be genuine and credible, the

24   license to use the software was severable and independent of the other services.

25   Other testimony corroborates that view as well.[110]

26

27    [109]    Trial Transcript Volume Three 552:15-553:21.

28    [110]    *See, e.g.*, Trial Transcript Volume Two 435:2-6 ("Q.  Okay.  So in 2011, was Softketeers willing to sell joint ownership and a copy of the source code in

Defendants ignore that perspective and instead conflate a sufficient condition with a necessary one.  A fee covering the software license, plus software maintenance and other work, was certainly ***sufficient*** to allow Regal to use the software.  But the only ***necessary*** condition to use the software, as Minh Nguyen clarified, was payment for the license.  No evidence suggests that Regal could ***not*** have asked someone else to maintain the software, so long as Regal paid Softketeers an ongoing licensing fee.  Nguyen's failure to clarify that point to Roque Neeves does not deny the truth of the matter.[111]  Defendants' carefully worded question points to only an ***omission***, not an ***admission***.[112]

### 2.    Conclusions of Law

The absence of evidence of coercion in the record is fatal to Defendants' copyright misuse defense.  Implicit to the doctrine of copyright misuse is that the copyright holder wields its copyright coercively to achieve ends contrary to public policy.  *See, e.g.*, *Prac. Mgmt. Info. Corp.*, 121 F.3d at 521 ("What offends the copyright misuse doctrine is not HCFA's decision to use the AMA's coding system exclusively, but the limitation ***imposed*** by the AMA licensing agreement on HCFA's rights to decide whether or not to use other forms as well.") (emphasis added); *Disney Enterprises, Inc. v. Redbox Automated Retail, LLC*, 2018 WL 1942139, at *6 (C.D. Cal. Feb. 20, 2018) ("Disney is correct that the copyright misuse defense often applies to situations in which copyright holders attempt to use their copyright to obtain some ***power*** over other, non-copyrighted goods or services.") (emphasis added); *cf. A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1027 (9th Cir.), *as amended* (Apr. 3, 2001) (denying copyright misuse defense when there was "no evidence here that plaintiffs seek to ***control*** areas

---

connection with the Waypoint deal in 2011?  Was Softketeers willing to do that? A.  Yes.").

[111]    *See* Trial Transcript Volume Three 553:14-17.

[112]    *See id.*

1  outside of their grant of monopoly") (emphasis added).  Defendants have not
2  adduced sufficient evidence to demonstrate, by a preponderance, that
3  Softketeers leveraged its copyright to strong-arm Regal into purchasing extra
4  services.  Defendants have succeeded only in presenting evidence that
5  Softketeers bundled other services in its aggregate fee.

6       Defendants cite *Disney Enterprises* in support of the notion that this
7  apparent bundling constituted copyright misuse.[113]  But the Court agrees with
8  Softketeers that Defendants' reliance on *Disney Enterprises* is misplaced,[114] since
9  the facts there demonstrated that consumers were prevented from transferring
10 their purchased physical discs, in violation of the first sale doctrine, rather than
11 forcing consumers to purchase bundled or add-on services.  *Disney Enterprises*,
12 2018 WL 1942139, at *6 ("[t]here can be no dispute, therefore, that Disney's
13 copyrights do not give it the power to prevent consumers from selling or
14 otherwise transferring the Blu-ray discs and DVDs contained within Combo
15 Packs").  Because bundling in and of itself is not contrary to the public policy
16 behind copyright, the Court concludes that there was no copyright misuse.

17      The Court therefore rules in favor of Softketeers on Defendants' fifth
18 affirmative defense.

19 **E.    Defendants' Twelfth Affirmative Defense:  Equitable Estoppel**

20      Next, Defendants argue that all of Softketeers's claims are barred under
21 the doctrine of equitable estoppel.[115]  The parties agree on the four generic
22 elements for the application of that doctrine:[116]

23
24
---
25 [113]    Brief on Affirmative Defenses Five and Twelve 15:21-16:2.
26 [114]    Opposition to the Fifth and Twelfth Affirmative Defenses 11:24-12:5.
27 [115]    SAACC 11:16-18.
   [116]    *Compare* Brief on Affirmative Defenses Five and Twelve 7:6-12 *with*
28 Opposition to the Fifth and Twelfth Affirmative Defenses 2:6-13.

(1) The party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury.

*Hampton v. Paramount Pictures Corp.*, 279 F.2d 100, 104 (9th Cir. 1960). Although Softketeers argues that the first element should be narrowed to knowledge of facts related only to "defendant's infringing conduct,"[117] courts that have considered the issue do not agree, holding that "a copyright owner's conduct during a period of permissive use may estopp the owner from later revoking permission and bringing an infringement claim." *Carmichael Lodge No. 103 v. Leonard*, 2009 WL 2985476, at *15 (E.D. Cal. Sept. 16, 2009) (collecting cases). Because Defendants must prove each element by a preponderance of the evidence, their failure to prove any particular element is sufficient for Softketeers to prevail on this affirmative defense.

### 1.    Findings of Fact

The Court's inquiry begins and ends with the third element. Here, Defendants must show they were ignorant of the true facts. Defendants contend that Regal's mistaken belief was founded on 18 years of discussions, which they characterize as "confirm[ing] joint ownership in the software."[118] Defendants point to four parts of the record to support that proposition: (1) assurances from Minh Nguyen to Regal personnel that "[they] will have the product that [they] have long waited for" and that "[they] have a system to run [their] business on"; (2) the fact that the software was called "MyRegal" or, at times, "Regal's WMS"; (3) the fact that Minh Nguyen occasionally held himself out as a Regal

---

[117]    Opposition to the Fifth and Twelfth Affirmative Defenses 2:13-16.
[118]    Brief on Affirmative Defenses Five and Twelve 9:28.

employee; and (4) the fact that the software displayed a notice that Regal was the copyright owner.[119]

Three flaws undermine Defendants' theory. First, that evidence falls short of proving that Regal was ignorant of the true facts by a preponderance of the evidence. Each recited fact is just as consistent with a world in which Regal understood that it had only a license for highly customized executable code, rather than ownership of the software and its source code exclusively or in part. For example, Minh Nguyen's assurances strike the Court as boilerplate remarks that could just as well apply to off-the-shelf enterprise software products (*e.g.*, Microsoft Office). Nor is the Court persuaded that copyright notices on the software allow Regal to claim ignorance, especially when a copyright notice, in and of itself, does not convey ownership. *See, e.g.*, *Gold Value Int'l Textile*, 925 F.3d at 1146 n.3; *Cordon Art B.V. v. Walker*, 1996 WL 672969, at *6 (S.D. Cal. Aug. 19, 1996), *amended on other grounds by* 1996 WL 761781 (S.D. Cal. Nov. 19, 1996) (noting that copyright notices are permissive rather than required); *see also Whelan Assocs., Inc. v. Jaslow Dental Lab., Inc.*, 797 F.2d 1222, 1244 (3d Cir. 1986) (noting that "screen outputs are . . . covered by a different copyright than are programs").

Second, in its Opposition, Softketeers raises the fact that Regal's lawyer Bill Holt advised Regal and its management team regarding Softketeers's ownership rights in the software.[120] When Rand Neeves, Gary Neeves, and Minh Nguyen entered discussions concerning MGR Software—a potential side business that apparently never reached fruition—Holt advised Regal that Softketeers would have to transfer its ownership interest in the existing

---

[119]    *Id.* at 10:5-18.
[120]    Opposition to the Fifth and Twelfth Affirmative Defenses 4:13-18.

software.[121]  That testimony throws a monkey wrench into Defendants' theory of ignorance.  Tellingly, no mention of Holt appears in Defendants' Reply.[122]

Third, Softketeers argues that past negotiations between Regal and Softketeers would have revealed Softketeers's position to Regal—*i.e.*, that Softketeers exclusively owned the software.[123]  For example, Minh Nguyen testified that, in 2011, Regal negotiated a separate agreement with Softketeers in which Regal would have acquired joint ownership and source code for the software in exchange for a payment to Softketeers of $1.5 million.[124]  Defendants do not offer any evidence to contradict that testimony.[125]  Rather, Defendants try their best to wriggle out of this conundrum by arguing that those negotiations fell short of confirming any knowledge by Regal that Softketeers "had *sole* ownership of the software."[126]  But even if that nuance is correct, Holt's later admonitions should have put Regal on notice that it might not own the software, exclusively or even in part.  Claiming ignorance in view of that fact, then, rings hollow—especially when Defendants are sophisticated parties advised by counsel.  Therefore, the Court finds that it is more likely than not that Regal knew, or had reason to know, that it did not have any rights to the software.

## 2.    Conclusions of Law

In view of the Court's factual findings above, Defendants cannot satisfy the third element of equitable estoppel; *i.e.*, that Regal was ignorant of the true facts.  *Hampton*, 279 F.2d at 104.  That shortcoming is sufficient for the Court to rule in favor of Softketeers on Defendants' twelfth affirmative defense, since all

---

[121]    *Id.*

[122]    *See generally* Reply for the Fifth and Twelfth Affirmative Defenses.

[123]    Opposition to the Fifth and Twelfth Affirmative Defenses 4:19-5:10.

[124]    *Id.* at 4:21-25 (quoting Trial Transcript Volume Two 429:12-14).

[125]    *See generally* Reply for the Fifth and Twelfth Affirmative Defenses.

[126]    *Id.* at 3:18-19 (emphasis in original).

elements must be satisfied to find in Defendants' favor.  Accordingly, the Court need not evaluate the remaining three elements.

### IV.  CONCLUSION

For the reasons stated above, the Court hereby **ORDERS** as follows:

1. The Court **DISMISSES** the fifth counterclaim as it relates to the two published TX registrations for lack of subject matter jurisdiction.

2. The Court **DISMISSES** the sixth counterclaim as it relates to the two published TX registrations for lack of subject matter jurisdiction.

3. The Court **RULES** in favor of Counterdefendants with respect to Counterclaimants' fifth counterclaim (as it relates to the eight unpublished TXu registrations), sixth counterclaim (as it relates to the eight unpublished TXu registrations), and seventh counterclaim.

4. The Court **RULES** in favor of Softketeers with respect to Defendants' fifth affirmative defense, sixth affirmative defense (as it relates to the eight unpublished TXu registrations), and twelfth affirmative defense.

5. The Court **DISMISSES** Defendants' sixth affirmative defense (as it relates to the two published TX registrations) as **moot**.

**IT IS SO ORDERED.**

Dated: December 22, 2022

John W. Holcomb
UNITED STATES DISTRICT JUDGE

-41-