

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOFTKETEERS, INC., | Case No. 8:19-CV-00519-JWH (JDEx) |
| Plaintiff, | |
| v. | **ORDER REGARDING:** |
| | **PLAINTIFF'S MOTION FOR PREJUDGMENT INTEREST PURSUANT TO CAL. CIV. CODE §§ 3287(a) & 3288 [ECF No. 835],** |
| REGAL WEST CORPORATION dba REGAL LOGISTICS, VU HO INC., THAI TRAN INC., DON MAI INC., RANDY NEEVES, VU HO, THAI QUOC TRAN, DON MAI, TRUN NGOC DOAN, and DONG BAO PHAM, | **PLAINTIFF'S MOTION FOR (1) A DESTRUCTION ORDER OR, ALTERNATIVELY, (2) A REASONABLE ROYALTY IN LIEU OF INJUNCTIVE RELIEF [ECF No. 836],** |
| Defendants. | **PLAINTIFF'S MOTION FOR CONTEMPT SANCTIONS [ECF No. 848], AND** |
| | **PLAINTIFF'S MOTION FOR (1) EXEMPLARY DAMAGES, (2) ATTORNEY FEES, AND (3) EXPERT FEES [ECF No. 850]** |

REGAL WEST CORPORATION d/b/a REGAL LOGISTICS, a Washington corporation; VU HO INC., a California corporation; THAI TRAN INC., a California corporation; DON MAI INC., a California corporation; RANDY NEEVES, an individual; VU HO, an individual; THAI QUOC TRAN, an individual; DON MAI, an individual; TRUNG NGOC DOAN, an individual; and DONG BAO PHAM, an individual,

1      Counterclaimants,

2          v.

3    SOFTKETEERS, INC., a California
     corporation, and
4    MINH KHAI NGUYEN, an individual,

5          Counterdefendants.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.  BACKGROUND

This lawsuit arises out of a dispute over the use and ownership of software designed for warehousing and logistics applications.[1]  From 2000 to 2019, Plaintiff Softketeers, Inc. created and maintained several computer software programs used by Defendant Regal West Corporation, a third-party logistics company.  Regal provides warehousing, cross-docking, transportation, and assembly and repackaging services.[2]  Regal terminated its relationship with Softketeers on February 1, 2019.[3]

In March 2019, Softketeers initiated this action, asserting claims for relief against Regal and several other Defendants[4] for, *inter alia*, copyright infringement, trade secret misappropriation under the Defend Trade Secrets Act ("DTSA") and the California Uniform Trade Secrets Act ("CUTSA"), and breach of contract.[5]  In response, Defendants raised numerous affirmative defenses and counterclaims.[6]  After several years of pretrial litigation, the parties proceeded to trial in September 2021.

---

[1]     By now, the parties are deeply familiar with the background of the case and the voluminous procedural history.  Accordingly, the Court provides only an abbreviated summary.

[2]     Joint Rule 26(f) Report [ECF No. 85] 1:8-9 & 2:8-11.

[3]     Final Pretrial Conference Order (the "Final Pretrial Conference Order") [ECF No. 792-1] 4:6-8.

[4]     Those other Defendants are Vu Ho Inc. ("VHI"), Thai Train Inc. ("TTI"), Don Mai Inc. ("DMI"), Randy Neeves, Vu Ho, Thai Quoc Tran, Don Mai, Trung Ngoc Doan, and Dong Bao Pham.  Defendants and Counterclaimants Don Mai and his closely held company, DMI, are currently in default.  The Court struck Mai and DMI's Answers in June 2020.  *See generally* Order Regarding Mot. to Strike [ECF No. 597].  The Clerk of the Court entered default with respect to DMI on that same day.  *See* Default by Clerk [ECF No. 598].  Subsequently, the Court entered default against Mai as an individual, in view of Softketeers's unopposed motion to strike.  *See* Order Striking Def. Don Mai's Answer and Denying Softketeers's Mots. to Drop Remaining Claims [ECF No. 734] 3.  Accordingly, all references herein to "Defendants" or "Counterclaimants" exclude Mai and DMI, unless otherwise noted.

[5]     *See generally* Compl. [ECF No. 1].

[6]     *See generally* Defs.' Second Am. Answer and Countercls. (the "SAACC") [ECF No. 306].

On the first day of trial, Softketeers moved to dismiss without prejudice its copyright infringement claim regarding its two published works, Registration Nos. TX008730600 and TX008720835.[7]  Accordingly, the jury did not consider those copyright registrations when Softketeers tried its claim for copyright infringement.[8]

On September 23, 2021, the jury rendered a verdict that was almost entirely in favor of Softketeers and Counterdefendant Minh Nguyen.[9] Specifically, the jury assessed liability and damages for Softketeers's copyright infringement and trade secret misappropriation claims separately, but ultimately awarded a single lump sum as compensation for all claims due to the overlap among them.  In connection with Softketeers's CUTSA claim, the jury found Regal, Neeves, Ho, VHI, Tran, TTI, and Pham liable for misappropriation of Softketeers's trade secrets and awarded Softketeers $1,935,000 in actual damages; $3,320,000 in unjust enrichment damages from Regal; and $100,000 in unjust enrichment damages from Neeves.[10]  With respect to Softketeers's breach of contract claim, the jury awarded $200,000 in damages.[11]

A few weeks after the trial concluded, Softketeers filed the four post-trial motions at bar here.[12]  After denying Defendants' Rule 50(a) motion and

---

[7]     *See generally* Pl.'s *Ex Parte* Mot. to Dismiss Its Copyright Infringement Claims based on Copyright Registration Nos. TX008730600 and TX008720835 Pursuant to Fed. R. Civ. P. 41(a)(2) [ECF No. 796].

[8]     First Am. Compl. [ECF No. 101] ¶¶ 55-61.

[9]     *See generally* Verdict Form (the "Verdict") [ECF No. 823].

[10]    *Id*. at 10 & 13.

[11]    *Id*. at 17.

[12]    *See* Pl.'s Mot. for Prejudgment Interest Pursuant to Cal. Civ. Code §§ 3287(a) & 3288 (the "Motion for Prejudgment Interest") [ECF No. 835]; Pl.'s Mot. for (1) a Destructive Order or, Alternatively, (2) a Reasonable Royalty in Lieu of Injunctive Relief  (the "Motion for Destructive Order") [ECF No. 836]; Pl.'s Mot. for Contempt Sanctions (the "Motion for Contempt Sanctions") [ECF No. 848]; Pl.'s Mot. for (1) Exemplary Damages, (2) Attorney Fees, and (3) Expert Fees (the "Motion for Damages and Fees") [ECF No. 850] (collectively, "Softketeers's Post-Trial Motions").

-4-

conducting hearings on Defendants' and Counterclaimants' remaining counterclaims and affirmative defenses,[13] the Court conducted another hearing—on Softketeers's four post-trial motions—on February 22, 2022. That hearing included Softketeers's motion for default judgment against Mai and DMI—a motion that Softketeers filed a month earlier on January 21, 2022.[14]

After considering the briefs filed in support and opposition,[15] for the reasons set forth herein, the Court **DENIES** the Motion for Prejudgment

---

[13]    *See generally* Min. Order of Video Hearing [ECF No. 891]; Video Hearing Re: Parties' Post-Trial Mots. [ECF No. 904].

[14]    *See generally* Pl.'s Mot. for Entry of Default J. Against Defs. Don Mai and Don Mai Inc. (the "Motion for Default Judgment") [ECF No. 911].

[15]    The Court considered the documents of record in this case, including, in particular, the following papers:

- Motion for Prejudgment Interest;
- Motion for a Destructive Order;
- Motion for Contempt Sanctions;
- Motion for Damages and Fees;
- Defs.' Opp'n to Motion for Contempt Sanctions (the "Opposition to Motion for Contempt Sanctions") [ECF No. 862];
- Defs.' Opp'n to Motion for Damages and Fees (the "Opposition to Motion for Damages and Fees") [ECF No. 863];
- Defs.' Opp'n to Motion for Prejudgment Interest (the "Opposition to Motion for Prejudgment Interest") [ECF No. 869];
- Defs.' Opp'n to Motion for a Destructive Order (the "Opposition to Motion for a Destructive Order") [ECF No. 870];
- Pl.'s Reply in Supp. of Motion for Contempt Sanctions (the "Reply for Motion for Contempt Sanctions") [ECF No. 879];
- Pl.'s Reply to Defs.' Opp'n to Motion for Damages and Fees (the "Reply for Motion for Damages and Fees") [ECF No. 880];
- Pl.'s Reply in Supp. of Motion for a Destructive Order (the "Reply for Motion for a Destructive Order") [ECF No. 881];
- Pl.'s Reply in Supp. of Motion for Prejudgment Interest (the "Reply for Motion for Prejudgment Interest") [ECF No. 882];
- Pl.'s Suppl. Brief Re Certain Post-Verdict Filings ("Plaintiff's Supplemental Brief") [ECF No. 893];
- Defs.' Response to Plaintiff's Supplemental Brief ("Defendants' Supplemental Response") [ECF No. 894];
- Motion for Default Judgment;

Interest, **GRANTS in part** and **DENIES in part** the Motion for a Destructive Order, **DENIES** the Motion for Contempt Sanctions, and **DENIES** the Motion for Damages and Fees.  The Court now reviews each motion in turn.[16]

## II.  MOTION FOR PREJUDGMENT INTEREST

In its Motion for Prejudgment Interest, Softketeers asks for $418,105 in prejudgment interest on its actual trade secret damages,[17] $374,361 and $11,824 for prejudgment interest on Regal's and Neeves's unjust enrichment, respectively,[18] and $55,282 in interest on Softketeers's breach of contract claim.[19]

### A.  Legal Standard

"A person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in the person upon a particular day, is entitled also to recover interest thereon from that day, except when the debtor is prevented by law, or by the act of the creditor from paying the debt."  Cal. Civ. Code § 3287(a).  Interest is given as a matter of law under § 3287 whether the case arises in contract or in tort.  *See Leff v. Gunter*, 33 Cal. 3d 508, 519 (1983).  Prejudgment interest under § 3287(a) "runs from the date when the damages are of a nature to be certain or capable of

---

- Defs.' Suppl. Brief Regarding Softketeers's Motion for a Destructive Order (the "<u>Defendants' Supplemental Royalty Brief</u>") [ECF No. 930]; and

- Pl.'s Suppl. Brief Re: Post-J. Royalty (the "<u>Plaintiff's Supplemental Royalty Brief</u>") [ECF No. 931].

[16]   While the Court addressed Softketeers's Motion for Default Judgment in a separate order, it reserved ruling on that motion as it pertained to the various forms of relief that Softketeers requests in Softketeers's Post-Trial Motions.  *See* Order Re Pl.'s Motion for Default Judgment (the "<u>Default Judgment Order</u>") [ECF No. 941].  Therefore, the rulings in this order apply to Mai and DMI unless otherwise noted.

[17]   Motion for Prejudgment Interest 3:14-5:3.

[18]   *Id.* at 5:4-6:4.

[19]   *Id.* at 8:1-10.

being made certain by calculation and when the exact sum due to the plaintiff is made known to the defendant." *Levy-Zentner Co. v. S. Pac. Transportation Co.*, 74 Cal. App. 3d 762, 797 (1977).  With respect to contracts, "the obligation shall bear interest at a rate of 10 percent per annum after a breach" in instances where the contract does not stipulate a legal rate of interest.  Cal. Civ. Code § 3289(b).

Furthermore, for claims not arising from contract, "and in every case of oppression, fraud, or malice, interest may be given, in the discretion of the jury."  Cal. Civ. Code § 3288.  While no prejudgment interest rate is specified for such noncontractual claims, California courts have applied the constitutional rate of 7% in similar cases.  *See, e.g.*, *Michelson v. Hamada*, 29 Cal. App. 4th 1566, 1585 (1994), *as modified* (Nov. 14, 1994), *as modified on denial of reh'g* (Nov. 17, 1994), *as modified* (Nov. 22, 1994) (applying the 7% rate to a $500,000 award as tort damages in a fraud claim).

## B.  Discussion

### 1.  CUTSA

In their briefs, the parties question whether they intended for the Court or the jury to serve as the trier of fact for the purpose of awarding prejudgment interest under Cal. Civ. Code § 3288.[20]  While the Court's memory is that the parties did intend the Court to handle questions relating to prejudgment interest[21]—which is corroborated by the record[22]—this dispute raises the

---

[20]     *See id*. at 3:9-11; Opposition to Motion for Prejudgment Interest 2:14-3:2; Reply for Motion for Prejudgment Interest 2:7-20.

[21]     During the final pretrial conference, Softketeers represented that the parties had agreed that any and all prejudgment interest issues were to be reserved for the Court, unless directed otherwise.  However, the Court recalls no further discussion with the parties on that issue.

[22]     *See generally* Final Pretrial Conference Order (lacking any mention of prejudgment interest); *see also* Reply for Motion for Prejudgment Interest 2:10-13 (referring to an agreement in an e-mail exchange between the parties' counsel).

1   question of whether the parties even have the ability to vest the Court with

2   discretion to award prejudgment interest under § 3288.

3       The statute expressly provides that "interest may be given, in the

4   discretion of the ***jury***."  Cal. Civ. Code § 3288 (emphasis added).  Nothing in

5   the text suggests that the Court may intervene *sua sponte* and impose its views in

6   place of the jury's decision or that the parties can stipulate around the plain text

7   of the statute to allow the Court to do so.  Nor does anything in the text

8   expressly state that a court may exercise such discretion, even when it serves as

9   the trier of fact in place of a jury.

10      California courts, however, have construed the statute otherwise.  *See,*

11  *e.g.*, *Michelson*, 29 Cal. App. 4th at 1586–87 (explaining that the "language [of

12  § 3288] has been construed to mean that the trier of fact, whether jury or the

13  court, appropriately decides the issue of prejudgment interest under this

14  section").  To wit, *Bullis v. Sec. Pac. Nat. Bank*, 21 Cal. 3d 801 (1978)—a case

15  that Softketeers cites[23]—also affirms the view that "the trial court, ***when acting***

16  ***as the trier of fact***, may award prejudgment interest under this section."  *Id.* at

17  815 n.16 (emphasis added).

18      It is important, though, to put that statement into context.  *Bullis* was an

19  appeal from a bench trial.  *See id.* at 807; *see also Carroll v. Sec. Pac. Nat'l Bank*,

20  62 Cal. App. 3d 885, 133 Cal. Rptr. 461, 463 (1976) ("[t]rial was by the court

21  sitting without a jury").  And the *Bullis* court itself looked to cases like

22  *Nathanson v. Murphy*, 132 Cal. App. 2d 363 (1955), in which the California

23  appellate court stated:

24          Section 3288, Civil Code, provides that in an action for the breach of

25          an obligation not arising from contract and in every case of

26          oppression, fraud or malice, interest may be given in the discretion

27  _____

28  [23]     Motion for Prejudgment Interest 3:6-9.

-8-

1     of the *jury*.   There being no jury in this case, this means the trial

2     court, to whose discretion is left the determination of whether

3     interest will be awarded.

4  *Id*. at 373 (emphasis original).

5        This Court concludes that *Bullis* and its progeny stand for the narrower

6  proposition that a court may exercise discretion under § 3288 when it sits as the

7  trier of fact; *i.e.*, in a bench trial.   *Accord Nordahl v. Dep't of Real Est.*, 48

8  Cal. App. 3d 657, 665 (1975) (permitting "the trier of fact" to award interest).

9        But that exception is simply inapplicable here, where there **was** a jury that

10  served as the trier of fact on Softketeers's CUTSA claim.[24]   Indeed, the Court is

11  aware of no authority that permits the Court and the jury to split the workload,

12  so to speak, where the jury serves as the trier of fact on questions of liability and

13  damages, and then the Court picks up the baton with respect to prejudgment

14  interest.   *See* 6 Witkin, *Summary of Cal. Law*, Torts §§ 1818–20 (11th ed. 2021).

15  If anything, the case law implies that such a division of labor is proscribed.

16        For example, the California Court of Appeal in *Barry v. Raskov*, 232

17  Cal. App. 3d 447 (1991), held that the trial court improperly granted

18  prejudgment interest after the jury had already awarded damages, noting that

19  "[t]he trial court had no authority to usurp the discretion conferred on the

20  jury."   *Id*. at 457; *see also In re Slatkin*, 525 F.3d 805, 820 (9th Cir. 2008)

21  (endorsing the holding in *Barry*).   In *King v. S. Pac. Co.*, 109 Cal. 96, 99 (1895),

22  the Supreme Court of California held that a trial court's jury instruction was

23  "clearly erroneous" when it provided guidance to the jury regarding which

24  interest rate to apply and from which dates.   *Id*. at 99.   The *King* court

25  emphasized that "the question of interest must be left to the discretion of the

26

27  ——————————

28 [24]    Final Pretrial Conference Order 4:15-5:5.   Moreover, the fact that this Court served as the trier of fact on Defendants' **counterclaims** is immaterial, since the Motion for Prejudgment Interest is tied to **Softketeers's** claims.

jury," *id.*, and further noted that "a modification of the judgment cannot be made" when the jury verdict was for a "lump sum." *Id.* at 100.  In both cases—like the one at bar here—a jury served as the trier of fact, and the jury awarded the plaintiff a lump sum for damages.

Therefore, while the Court doubts that the text of § 3288 permits it to award prejudgment interest in any instance whatsoever (rather than the jury), the Court does not rest its holding on that particular reading.  Rather, the Court holds that it lacks the authority to award prejudgment interest under § 3288 precisely because the jury served as the trier of fact on Softketeers's trade secret misappropriation claim under CUTSA.[25]  *W. Air Charter, Inc. v. Schembari*, 2019 WL 6998789, at *4 (C.D. Cal. Mar. 7, 2019) (finding "no authority for the proposition that a court may award prejudgment interest under § 3288 after a jury verdict was returned without such an award" and, therefore, holding "that it may not award prejudgment interest under § 3288") (internal citations and quotations omitted).

### 2.   Unjust Enrichment

Softketeers next asks for prejudgment interest on the jury's award of unjust enrichment.[26]  The Court declines to do for five reasons.

First, as discussed above, the Court sees no statutory basis to exercise its discretion under § 3288 and award prejudgment interest to Softketeers when the

---

[25]   A handful of district courts in California have allowed parties to stipulate around the text of § 3288.  *See, e.g.*, *Bladeroom Grp. Ltd. v. Emerson Elec. Co.*, 2019 WL 1117538, at *3 (N.D. Cal. Mar. 11, 2019), *vacated and remanded*, 11 F.4th 1010 (9th Cir. 2021), *and vacated and remanded*, 20 F.4th 1231 (9th Cir. 2021); *RePET, Inc. v. Zhao*, 2018 WL 9802131, at *1 (C.D. Cal. Aug. 20, 2018); *Golden State Transit Corp. v. City of Los Angeles*, 773 F. Supp. 204, 213 (C.D. Cal. 1991).  Those cases, however, appear either to gloss over the text of § 3288 or impermissibly to "usurp" the jury's discretion after it already served as the trier of fact on the underlying claims.  *See Barry*, 232 Cal. App. 3d at 457.

[26]   Motion for Prejudgment Interest 5:4-6:4.

jury served as the trier of fact and rendered a verdict on the question of unjust enrichment.[27]

Second, even if it is permissible for this Court to exercise its discretion under § 3288, Softketeers offers no authority for the proposition that a claimant is entitled prejudgment interest on an award of unjust enrichment. If anything, Softketeers points to a Ninth Circuit case demonstrating that the question is unsettled.[28] *See BladeRoom Grp. Ltd. v. Emerson Elec. Co.*, 11 F.4th 1010, 1027 (9th Cir. 2021) (remanding to the district court to determine in the first instance whether § 3288 allows prejudgment interest for unjust enrichment damages). Before handing Softketeers a windfall of nearly $400,000 in interest, the Court expects firmer legal foundations than a citation to a single case expressing the legal equivalent of a shrug.

Third, § 3288 does not support Softketeers's request, albeit for a different reason. Softketeers characterizes its unjust enrichment award as synonymous with restitution.[29] If Softketeers is correct, then the Court would have no basis to award Softketeers prejudgment interest under § 3288 because that statute concerns interest on damages, not restitution. *See* Cal. Civ. Code § 3288. Damages themselves are a distinct remedy from restitution; it would be improper to conflate the two. *See Porter v. Warner Holding Co.*, 328 U.S. 395, 402 (1946) (distinguishing restitution from damages as a form of remedy). Holding that § 3288 does not apply to restitution is consistent with other court decisions regarding prejudgment interest under § 3287, which pertains to prejudgment interest on damages arising from a breach of contract claim. *See Rodriguez v. RWA Trucking Co.*, 238 Cal. App. 4th 1375, 1409 (2013), *as modified*

---

[27]   Verdict 13.

[28]   Motion for Prejudgment Interest 5:14-19.

[29]   Reply for Motion for Prejudgment Interest 5:12-15 (citing *Ajaxo Inc. v. E*Trade Fin. Corp.*, 187 Cal. App. 4th 1295, 1305–06 (2010)).

(Sept. 20, 2013), *publication ordered*, 352 P.3d 881 (Cal. 2015) (concluding that § 3287(a) does not authorize prejudgment interest on an award of restitution under unfair competition law); *Kolb v. Telling*, 2018 WL 2386831, at *9 (E.D. Cal. May 25, 2018), *report and recommendation adopted*, 2018 WL 4775609 (E.D. Cal. Sept. 7, 2018) (holding that a plaintiff was not entitled to prejudgment interest on restitution under § 3287(a)); *see also* Cal. Civ. Code § 3287(a).

Furthermore, CUTSA itself differentiates damages from unjust enrichment, noting that:

> A complainant may recover damages for the actual loss caused by misappropriation. A complainant also may recover for the unjust enrichment caused by misappropriation that is not taken into account in computing damages for actual loss.

Cal. Civ. Code § 3426.3(a). Reading § 3288 to apply equally to unjust enrichment as it does to damages would erase the distinction that the California legislature carefully articulated in § 3426.3. *Accord Keating v. Jastremski*, 2021 WL 1195868, at *5 (S.D. Cal. Mar. 30, 2021).

Fourth, even if § 3288 applied to restitution, the remedies of unjust enrichment and restitution are not necessarily synonymous. California courts have held that the principle of unjust enrichment is "broader" than restitution. *Cty. of San Bernardino v. Walsh*, 158 Cal. App. 4th 533, 542 (2007), *as modified on denial of reh'g* (Jan. 25, 2008), *as modified* (Jan. 28, 2008). Unjust enrichment is "used in law to characterize the result or effect of a failure to make restitution of or for property or benefits received under such circumstances as to give rise to a legal or equitable obligation to account therefor." *Dinosaur Dev., Inc. v. White*, 216 Cal. App. 3d 1310, 1315 (1989). A claim for unjust enrichment, therefore, emphasizes "the wrongdoer's enrichment, not the victim's loss." *Cty. of San Bernardino*, 158 Cal. App. 4th at 542. It can include remedies such as disgorgement of profits, which would not "involve the restoration of anything

the claimant previously possessed[.]" *Id.* (internal citations and quotations omitted).  It would be odd, then, for Softketeers to lay claim to interest as a way to make it "whole," if it never owned the principal—in this instance, Regal's profits.  *Id.* at 551.  Thus, even if prejudgment interest could be tacked onto awards of restitution, this Court is not persuaded that prejudgment interest under § 3288 could be tacked onto awards of unjust enrichment.

Fifth, even if the statute did apply to unjust enrichment, Softketeers has not sufficiently proven when Regal's unjust enrichment occurred.  Softketeers's damages expert assumed that unjust enrichment occurred in equal amounts, each month, from February 2019 through November 2021.[30]  But Softketeers offers no evidence to undergird that assumption, and nothing about the jury's verdict implies that the enrichment accrued in that manner.  Since cumulative interest varies mathematically with the both the amount of unjust enrichment and when it was incurred, the Court cannot be sure that the figure that Softketeers requests is even remotely accurate.[31]  That ambiguity compels the Court to deny Softketeers's request.

### 3.  Breach of Contract

Lastly, Softketeers seeks prejudgment interest on damages associated with its breach of contract claim.  *See* Cal. Civ. Code § 3287(a).  On February 14, 2019, Softketeers invoiced Regal $277,770 for work performed as early as November 19, 2018, to as recently as February 1, 2019—the date of Softketeers's termination.[32]  At trial, the jury found for Softketeers on its breach of contract claim, but awarded Softketeers only $200,000 in actual damages.[33]

---

[30]    Motion for Prejudgment Interest 5:20-26.

[31]    For example, if all of the enrichment had occurred in the final month of the timeline, then the interest would be minimal.  Conversely, if the enrichment had occurred all at once long ago, then the interest would be staggering.

[32]    Motion for Prejudgment Interest 6:23-7:9.

[33]    Verdict 16 & 17.

1  Based upon that figure, Softketeers argues that it is entitled to interest in the

2  amount of $55,282.[34]

3        Ambiguity permeates the question of prejudgment interest here.

4  Softketeers says that the damages amount was calculable in view of the invoices,

5  and those damages vested, at the minimum, on February 14, 2019—the date that

6  Softketeers reissued its invoices.[35]  But the jury heard testimony that

7  Softketeers's damages expert, Scott Cragun, had not confirmed the veracity of

8  those invoices, and Neeves testified to his belief that those numbers were

9  fraudulent.[36]  Adding to the ambiguity, the jury's verdict awarded Softketeers

10  about 28% less than the total of the invoices.

11        The Court holds, then, that prejudgment interest is not appropriate on

12  the breach of contract damages for three reasons.  First, the jury's verdict

13  implies that damages could not be readily ascertained by Regal precisely because

14  there was a dispute on how much was owed—a dispute that had to be settled by

15  the jury.  "[T]he certainty required of Civil Code section 3287, subdivision (a),

16  is absent when the amounts due turn on disputed facts," as opposed to instances

17  when the dispute is "confined" to liability.  *Olson v. Cory*, 35 Cal. 3d 390, 402

18  (1983); *see also Levy-Zentner Co.*, 74 Cal. App. 3d at 799 (noting that "where a

19  defendant does not know what amount he owes and cannot ascertain it except by

20  accord or judicial process, he cannot be in default for not paying it").

21        Second, "where damages are not readily ascertainable," damages can be

22  held to be certain "*if* the defendant admits to the amount of damages submitted

23  by the plaintiff."  *Id.* (emphasis added).  While Defendants did not submit

24

25  _____

   34      Motion for Prejudgment Interest 8:1-10.

26  35      *Id.* at 7:11-28.

27  36      *See, e.g.*, Reporter's Tr. of Trial Proceedings Trial Day 3 ("Trial
   Transcript Volume Three") [ECF No. 873] 752:10-754:6; Reporter's Tr. of
   Trial Proceedings Trial Day 5 ("Trial Transcript Volume Six") [ECF No. 875]
28  1165:3-1166:7.

competing numbers for their damages estimate,[37] they never admitted to the veracity of the invoices or the manner in which they were calculated, either.[38] "[D]amages are deemed certain or capable of being made certain within the provisions of subdivision (a) of section 3287 where there is essentially no dispute between the parties concerning the basis of computation of damages." *CMI Integrated Techs., Inc. v. Xzeres Corp.*, 2016 WL 7058092, at *2 (C.D. Cal. July 11, 2016) (internal citations and quotations omitted).  Here, Defendants never conceded the dispute, so Softketeers cannot avail itself of this exception.

Third, the size of the discrepancy between that total invoiced figure of $277,770 and what the jury ultimately awarded Softketeers militates against a finding of certainty as required under § 3287(a).  *See Chesapeake Indus., Inc. v. Togova Enterprises, Inc.*, 149 Cal. App. 3d 901, 910 (1983) (factoring in the "degree of discrepancy between the amount claimed and the final judgment" in its decision to reverse the trial court's prejudgment interest award).  Indeed, the jury awarded damages in an amount 28% less than the total invoiced figure.  That difference is not insignificant; 28% is more than a mere rounding error or minor billing mistake.  *Cf. Marine Terminals Corp v. Paceco, Inc.*, 145 Cal. App. 3d 991, 994 (1983) (invoice discrepancy of totaling $2,461.80, or 6%, did not render sum uncertain and bar prejudgment interest).  How the jury reached its damages award is a mystery—a fact that both parties acknowledged during the hearing on Softketeers's post-trial Motions.

Therefore, the uncertainty permeating the jury award is too great to allow this Court to award interest under § 3287(a).  The Court **DENIES** Softketeers's Motion for Prejudgment Interest.

---

[37]     Motion for Prejudgment Interest 7:12-14.
[38]     SAACC ¶¶ 201–09.

### III.  MOTION FOR A DESTRUCTIVE ORDER

Softketeers requests an order that (1) requires the destruction of all copies of Softketeers software, or derivatives thereof, in Defendants' custody, possession, or control; (2) appoints a special master, at Defendants' expense, to direct, supervise, and certify compliance with the destruction order; and (3) awards Softketeers $3,544 per day, from the date of verdict until the special master certifies Defendants' compliance with the destruction order.[39] Alternatively, if that remedy is unavailable, Softketeers asks the Court to award it a royalty that would run at a rate between $2,005 and $3,544 per day, for two years from the entry of judgment.[40]  Softketeers further requests that any such order granting such relief extend to Mai and DMI, as well.[41]

### A.    Destruction Order

#### 1.    Background

Early on in this litigation, Softketeers secured a preliminary injunction against nine Defendants, mandating, *inter alia*, that they destroy any Softketeers source code or derivations thereof.[42]  Around that time, in spring 2019, Regal hired a team of Vietnamese contractors to build replacement software for Regal's warehouse management system.[43]  Nonetheless, the jury found that all Defendants (save Doan, Mai, and DMI) infringed Softketeers's copyrights from June 2019 through the date of trial.[44]  The jury's verdict, therefore, implies that

---

[39]     *See generally* Motion for a Destructive Order.

[40]     *Id*. at 6:1-2.

[41]     Motion for Default Judgment 15:16-26.

[42]     Those Defendants are Regal, VHI, TTI, DMI, Neeves, Ho, Tran, Mai, and Doan.  *See* Order Granting Pl.'s Mot. for Prelim. Inj. (the "Preliminary Injunction Order") [ECF No. 48] 2 & 3.  This topic is discussed further in the context of Softketeers's Motion for Contempt Sanctions.  *See infra* Part IV.A.

[43]     Decl. of Vu Ho in Supp. of Defs.' Opp'n to Pl.'s Mot. for Terminating or Other Contempt Sanctions [ECF No. 175-13] ¶ 9.

[44]     Verdict 8.

Regal's replacement software was still impermissibly derived from Softketeers's software.  Regal is apparently still using that replacement software (at least as of the date of the hearing on this Motion).[45]  Against that backdrop, Softketeers now asks the Court for a destruction order.

### 2. Legal Standard

Under the Copyright Act, the Court may order, "[a]s part of a final judgment or decree," the "destruction or other reasonable disposition of all copies or phonorecords found to have been made or used in violation of the copyright owner's exclusive rights, and of all plates, molds, matrices, masters, tapes, film negatives, or other articles by means of which such copies or phonorecords may be reproduced."  17 U.S.C. § 503(b).  The standard for granting such a request mirrors the standard for granting injunctive relief; *i.e.*, a plaintiff must demonstrate:  "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Adobe Sys. Inc. v. Feather*, 895 F. Supp. 2d 297, 303–04 (D. Conn. 2012) (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

Even when a copyright has been infringed, though, a permanent injunction is not necessarily automatic.  *See eBay Inc.*, 547 U.S. at 392–93.  The decision whether to grant or deny injunctive relief remains firmly "within the equitable discretion of the district courts[.]"  *Id.* at 394.

### 3. Discussion

The Court's inquiry begins with the *eBay* factors to determine whether Softketeers is entitled to a permanent injunction in the form of a destruction

---

[45]     Opposition to Motion for a Destructive Order 7:28-8:9 (explaining the criticality of the software to Regal's current operations).

order.  It concludes that Softketeers does not yet meet all four factors.  But the operative word is "yet."  Because the factors where Softketeers is lacking could ripen in its favor in due time, the Court fashions relief accordingly.

### a.    Irreparable Injury

Defendants argue that there is no proof of irreparable harm because Softketeers has not identified any injury to Regal's continued use of the software.[46]  But the Court can easily identify an injury, and it perceives the possibility of future injury.  The jury found that Defendants (except for Doan) infringed Softketeers's copyrights, starting around the time that Regal terminated its relationship with Softketeers through the date of trial.[47]  Taking the jury's verdict as fact, that finding alone confirms that an injury has occurred and is continuing to occur, insofar as Regal continues to operate with its replacement software.  Harm, in this case, is not presumed; it is real.  *Cf. Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 1000 (9th Cir. 2011) ("Harm must be proved, not presumed.") (internal citations omitted).

Indeed, Defendants remarked during the hearing that Softketeers is now a defunct enterprise, as a reason why the balance of hardship tilts in their favor.  But that circumstance also highlights the irreparable harm that has occurred.  Softketeers is no doubt defunct in large part ***because*** Regal terminated its relationship with Softketeers and replaced it with software impermissibly derived from Softketeers's source code.  As Defendants themselves reiterate, "Regal was Softketeers's only customer for the bulk of the parties' relationship."[48]  So even though Regal and Softketeers are not competitors in the same industry, Regal's continued infringement equates to a near total loss of customers and market share for Softketeers.  *See Oracle USA, Inc. v. Rimini St.,*

---

[46]    *Id*. at 3:6-4:4.

[47]    Verdict 3.

[48]    Opposition to Motion for a Destructive Order 5:12-13.

1     *Inc.*, 209 F. Supp. 3d 1200, 1208 (D. Nev. 2016), *aff'd in part, vacated in part,*

2     *rev'd in part*, 879 F.3d 948 (9th Cir. 2018), *rev'd in part*, 139 S. Ct. 873 (2019),

3     *and vacated in part*, 922 F.3d 879 (9th Cir. 2019) (listing loss of market share and

4     loss of customers as factors in a court's irreparable injury analysis).  Absent a

5     permanent injunction, Softketeers would have little to no bargaining position

6     with Regal, should Regal wish to own, to license, or to continue to use its

7     Softketeers-derived replacement software in some capacity.  Thus, this factor

8     favors an injunction.

9        Defendants attempt to circumvent that finding, contending that the jury's

10   verdict constituted a grant of a perpetual license.[49]  But that argument is

11   unpersuasive, because the jury's verdict was meant to compensate Softketeers

12   for actual damages already incurred—not for future or ongoing acts of

13   infringement.  Furthermore, Defendants' position mischaracterizes the expert

14   testimony that the jury heard.[50]  Cragun estimated that Regal would have had to

15   pay Softketeers around $2.25 million, if Regal had decided to purchase a

16   perpetual license in 2019.[51]  The trial, of course, occurred in 2021 and the jury

17   ultimately awarded $1,935,000 to Softketeers—a figure smaller than Cragun's

18   theoretical price.  Of course, the jury likely factored Cragun's analysis into its

19   ultimate award.  But the jury was tasked with identifying Softketeers's actual

20   damages in connection with its copyright infringement claim, not with

21   determining what compensation was owed to Softketeers for a Court-imposed

22   perpetual license to Regal.  Those inquiries are distinct and should not be

23   conflated.

24

25

---

26   [49]     *Id.* at 11:15-13:10.

26   [50]     *Id.* at 11:21-23 (saying that Cragun "confirmed that this payment covered

27   'a fully paid up license between the defendants and Softketeers'").

27   [51]     Reply for Motion for a Destructive Order 8:11-23 (citing Trial Transcript

28   Volume Six 1122:25–1125:12).

**b.      Inadequate Remedies at Law**

Next, Defendants contend that, even if an injury exists, the harm is not irreparable because any injury could be adequately remedied through monetary compensation.[52]  Again, the Court disagrees.

First, Defendants' argument overlooks the considerable additional time, money, and effort that would be required for a regimen of self-enforcement.  Put differently, "[a] legal remedy is inadequate if it would require a multiplicity of suits." *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1220 (C.D. Cal. 2007) (internal quotations omitted).  After a protracted and litigious multi-year lawsuit, the Court hopes that the parties would appreciate the enormity of those transaction costs.

Second, the fact that Defendants have continued to infringe Softketeers's copyrights means that future infringement is likely, if not guaranteed.  *See Hounddog Prods., L.L.C. v. Empire Film Grp.*, Inc., 826 F. Supp. 2d 619, 634 (S.D.N.Y. 2011).  That fact puts a heavy thumb on the scale for issuing a permanent injunction.  Even though the Court "may not categorically enter an injunction solely because plaintiff's patent has been infringed," the Court "may still consider this to be a relevant factor in [its] analysis under the four-factor test." *Muniauction, Inc. v. Thomson Corp.*, 502 F. Supp. 2d 477, 483 (W.D. Pa. 2007), *rev'd in part and vacated in part*, 532 F.3d 1318 (Fed. Cir. 2008).[53]  "The jury's finding that defendants have willfully infringed plaintiff's patent for six years supports our conclusion that plaintiff has suffered irreparable injury to its patent rights, for which there is no adequate remedy at law." *Id*.  The failure to issue a final injunction in this case would become "tantamount to the creation of

---

[52]      Opposition to Motion for a Destructive Order 4:5-5:23.

[53]      The Court is, of course, aware that *Muniauction* is a patent case, not a copyright case.  However, the Court regards the *Muniauction* court's reasoning as persuasive for intellectual property cases generally.

1   a compulsory license" afforded to Regal. *Nat'l Football League v. Primetime 24*

2   *Joint Venture*, 1999 WL 760130, at \*4 (S.D.N.Y. Sept. 27, 1999). "That is not,

3   absent compelling reason, a desirable practice or consistent with the objectives

4   of the Copyright Act." *Id.*

5        Third, the parties' own attempts to identify a reasonable royalty rate[54]

6   have only confirmed, ironically, what Defendants presaged: that a reasonable

7   royalty payment cannot, "as a practical matter," be identified because it is

8   "purely speculative."[55] When the Court charged the parties with the task of

9   estimating a reasonable royalty,[56] the spread between the parties' initial

10   estimates and their post-hearing estimates only widened. For example, at the

11   hearing, Defendants advised the Court that a royalty ranging anywhere from

12   $20,000 to $200,000 per year would be reasonable. Now, they say the proper

13   amount is $0, but, at most, no more than $25,500 per year.[57] Similarly,

14   Softketeers initially asked for a royalty of between $2,005 per day (or $731,825

15   per year) and $3,544 per day (or $1,293,560 per year).[58] Now, Softketeers has

16   landed on the latter figure as the "proper award."[59]

17        While some monetary figure might ultimately prove to be an adequate

18   remedy,[60] the issue is whether money damages, as imposed by the Court, may

19   constitute an adequate remedy.[61] The supplemental briefing convinced the

20

---

21   [54]   *See generally* Defendants' Supplemental Royalty Brief; Plaintiff's

22   Supplemental Royalty Brief.

    [55]   Opposition to Motion for a Destructive Order 12:17 & 12:28.

23   [56]   Min. Order Re: Motion for Prejudgment Interest; Motion for a

24   Destructive Order; Motion for Contempt Sanctions; Motion for Damages and

    Fees [ECF No. 926] 2.

25   [57]   Defendants' Supplemental Royalty Brief 4:5-7 & 7:7-10.

26   [58]   Motion for a Destructive Order 7:28-8:2.

    [59]   Plaintiff's Supplemental Royalty Brief 10:4-5.

27   [60]   Opposition to Motion for a Destructive Order 5:6-13.

28   [61]   Reply for Motion for a Destructive Order 4:17-5:12.

Court that it is ill-equipped to decide for the parties.  The Court could imagine employing all sorts of econometric models or methods (including any one of the several methodologies that the parties used) to estimate what Defendants would be willing to pay and what Softketeers would be willing to accept.[62]  But in reality, only the parties know the answers to those questions, not the Court.  For now, therefore, the Court concludes that the remedies at law are inadequate, thus favoring an injunction.  But that tentative conclusion could be proven wrong if the parties are able to negotiate their own reasonable royalty or lump sum payment for a perpetual license.

### c.   Balance of Hardships

Defendants persuasively argue that they, and especially Regal, would suffer considerable hardship if they were forced to destroy the replacement software, given its centrality to their business.[63]  Erasing their warehouse management software system would essentially shut down the entire enterprise for a period of a few months at the minimum, at least until a new software system could be installed.  In the meantime, the possible spillover effects could be drastic, including potential irreversible loss of data, contracts, customers, and market share for Regal.  Indeed, being unable to operate for an extended period of time risks the loss of jobs for any number of Regal's 150 or so employees, if not all of them, if Regal shutters as a result of the Court's order.[64]  Such dire ramifications give this Court serious pause.  *See, e.g.*, *Fogerty v. Poor Boy Prods., Inc.*, 124 F.3d 211 (9th Cir. 1997) (reversing the grant of a preliminary injunction after considering how the injunction could undermine the livelihoods of the enjoined parties).  Softketeers is simply incorrect that the "only" hardship that

---

[62]    *See, e.g.*, Defendants' Supplemental Royalty Brief 6:5-18.

[63]    Opposition to Motion for a Destructive Order 7:28-8:9.

[64]    *Id.*

1   Defendants will suffer from this injunction is preventing them "from engaging

2   in further illegal activity."  *Adobe Sys. Inc.*, 895 F. Supp. 2d at 304.

3        In contrast, Softketeers's hardship is no different than the injury that it

4   has already sustained.[65]  Whether the Court imposes a destruction order or

5   fashions some other remedy, the hardship to Softketeers remains unchanged.

6   Thus, the balance of hardship weighs strongly against a destruction order.

7             **d.**    **Public Interest**

8        Finally, Defendants argue that a destruction order would disserve the

9   public interest, since it "would exacerbate the ongoing supply chain issues the

10  public is currently experiencing throughout the country."[66]  In response,

11  Softketeers points out that "it is virtually axiomatic that the public interest can

12  only be served by upholding copyright protections and correspondingly,

13  preventing the misappropriation of skills, creative energies, and resources which

14  are invested in the protected work."[67]

15       Both sides have a point.  In the short-term, the acute nature of the supply

16  chain crisis suggests that this factor weighs against a destruction order.  *See*

17  *BNSF Ry. Co. v. Int'l Ass'n of Sheet Metal, Air, Rail & Transportation Workers—*

18  *Transportation Div.*, 2022 WL 350727, at *1 (N.D. Tex. Jan. 25, 2022) (granting

19  a temporary restraining order against a railway strike in view of its potential to

20  "exacerbate our current supply-chain crisis—harming the public at large, not

21  just BNSF").

22       But supply chain issues—no matter how painful they are in the

23  moment—ultimately come and go.  Failing to issue a destruction order could

24  send a message that courts are willing to sacrifice creators' and innovators'

---

[65]   *See* Reply for Motion for a Destructive Order 5:21-6:4.

[66]   Opposition to Motion for a Destructive Order 8:20-22.

[67]   Reply for Motion for Prejudgment Interest 6:9-13 (quoting *Disney Enterprises, Inc. v. VidAngel, Inc.*, 224 F. Supp. 957, 978 (C.D. Cal. 2016), *aff'd*, 869 F.3d 848 (9th Cir. 2017)).

copyrights for the expediency of our consumer lifestyles.  Given the centrality of innovation to our economy, such a chilling message would undoubtedly do more to undermine the public interest.  *See In re Bilski*, 545 F.3d 943, 976–77 (Fed. Cir. 2008), *aff'd but criticized sub nom. Bilski v. Kappos*, 561 U.S. 593 (2010) (noting that innovation and the "knowledge economy" have been "dominant contributors to today's economic growth") (Newman, J., dissenting).  And unlike supply chain woes, such a message would persist long after the goods have left the ports and the backlogs have abated.

In the long-term, the public interest factor favors granting the destruction order, while in the short-term, the factor favors the exact opposite.  The Court integrates those temporal dimensions in the equitable relief that it fashions here.

### 4.    Conclusion Regarding the Destruction Order

The Court's view can be summarized simply:  because the jury found that Defendants are still infringing Softketeers's copyrights, the Court must ensure that the infringement stops.  However, the tools at the Court's disposal are blunt and crude.  Imposing an immediate destruction order could jeopardize Regal's entire business—and the livelihoods of its 150 or more employees—if its central logistics software were to be deleted from its servers upon the Court's decree.  Similarly, conjuring up some running royalty carries the risk of getting the figure grossly wrong, conferring a windfall to one party and committing robbery against the other.  The Court is no oracle.  It cannot pretend to know Regal's business needs better than Regal, nor can it understand the current market for software engineers, such that it could simulate a "suppositious meeting" between the parties, whereby the Court imposes what it thinks that "the parties would have agreed to as a fair licensing price at the time that the misappropriation occurred."  *Vermont Microsystems, Inc. v. Autodesk, Inc.*, 88 F.3d 142, 151 (2d Cir. 1996).  "The nature of the subject does not admit of any precise or exact

-24-

1  measure, and the court cannot, without great injustice, make of its judgment a
2  bed of Procrustes[.]"  *Butler v. McClellan*, 4 F. Cas. 905, 910 (D. Me. 1831).

3      A far more elegant solution is to motivate the parties to conduct that
4  suppositious meeting in reality.  *See* Barton H. Thompson, Jr., *Injunction
5  Negotiations: An Economic, Moral, and Legal Analysis*, 27 Stan. L. Rev. 1563, 1567
6  (1975).  That goal can be accomplished by issuing a conditional destruction
7  order—one that is triggered in 45 days' time, should the parties fail to reach a
8  negotiated outcome.

9      The benefits of this approach are threefold.  First, the parties can reach a
10 truly adequate remedy, one informed by their own needs, the market realities,
11 and their willingness to pay and their willingness to accept a certain deal.
12 Second, delaying the destruction order may help to mitigate the dire public and
13 private consequences of shutting down a warehouse and logistics company amid
14 nationwide supply chain challenges.  And third, a conditional destruction order
15 affords the parties a choice.  For any Defendant still in possession of Softketeers
16 software (or derivative versions thereof),[68] that Defendant may choose:  (1) to do
17 nothing and face the consequences when the destruction order comes; (2) to
18 bargain with Softketeers and settle on a lump sum payment or reasonable
19 royalty, in exchange for indemnity or license; or (3) to turn to the marketplace
20 and begin migration to a new, compliant software system before time runs out.[69]
21 Conversely, Softketeers could leverage the impending destruction order and
22 bargain with Regal (and any other Defendant still in possession of its software or
23 derivative version), undercutting the market and saving Regal the trouble of
24 finding and hiring another vendor.

25

26 [68]    By Defendants' own admission in their briefs and at the hearing, one of
those Defendants is Regal.  *See, e.g.*, Opposition to Motion for a Destructive
27 Order 7:28-8:9.
[69]    The Court acknowledges that a fourth option exists; namely, some form
28 of appeal or motion for a stay or reconsideration.

Therefore, the Court **DENIES in part** the Motion for a Destructive Order—to the extent that Softketeers seeks an immediate destruction order. But the Court **GRANTS in part** the instant Motion by **DIRECTING** Regal, VHI, TTI, DMI, Neeves, Ho, Tran, Mai, and Pham[70] within 45 days—at or before 12:00 noon on April 7, 2023—either:

> (1)     to file, under oath and penalty perjury, an attestation
>
> > a.     identifying the fact that, and the manner in which, they have permanently deleted or otherwise destroyed any copies of any Softketeers source code or any portion thereof under their control that is stored on media they are unable to surrender; and
> >
> > b.     providing a complete inventory, under oath and penalty of perjury, of all copies of any Softketeers source code known to them that is not subject to impound or deletion;
>
> -or-
>
> (2)     to file a joint stipulation with Softketeers that the parties have reached an agreement obviating the need for a destruction order.

*See* 17 U.S.C. § 503(b); *see also Rogers v. Koons*, 960 F.2d 301, 313 (2d Cir. 1992) (affirming the court's discretion to order "other reasonable disposition" under 17 U.S.C. § 503(b), which is "an equitable remedy issued under the broad powers vested in a trial judge"). The parties may move for an extension of the 45-day deadline upon a showing of good cause. Defendants' failure to file an attestation of compliance or a joint stipulation by the deadline will result in an immediate destruction order and the appointment of a special master, at the expense of any or all non-compliant Defendants.

---

[70]     The Court includes Mai and DMI in this order specifically, as the Court granted Softketeers's motion for a default judgment with respect to the issues of copyright infringement and trade secret misappropriation. *See generally* Motion for Default Judgment. However, this order does not extend to Doan because the jury explicitly did not find him liable for infringement or misappropriation. *See* Opposition to Motion for a Destructive Order 9:6-11; *see also* Verdict 3 & 7.

## B.     Special Master

The Court next considers Softketeers's request for the appointment of a special master to oversee, direct, and monitor compliance with a destruction order.  In view of its ruling regarding the destruction order, *see supra* Part III.A.4., the Court is not persuaded that the circumstances justify appointing a special master at this time.

The Court "may appoint a master only to . . . address pretrial and posttrial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district."  Fed. R. Civ. P. 53(a)(1)(C). The Ninth Circuit requires "a showing of exceptional conditions to justify the appointment."  *Burlington N. R. Co. v. Dep't of Revenue of State of Wash.*, 934 F.2d 1064, 1071 (9th Cir. 1991).  Here, Softketeers contends that the jury's finding of infringement is exceptional.[71]  But the Court cannot agree.  If a jury verdict in one's favor was exceptional, then every prevailing copyright claimant could merit a special master appointment—making such appointments the "rule" instead of the "exception."  *Id.*

Furthermore, the Court expects that its orders will be followed.  The consequences for Defendants, should its orders be disobeyed, will far outweigh any costs, inconveniences, or "invasive interference" that a special master might bring.[72]  Such circumstances would, in all likelihood, also warrant the appointment of a special master and other possible sanctions.  But, for the time being, the Court finds it appropriate to **DENY** the Motion for a Destructive Order to the extent that Softketeers seeks the appointment of a special master.[73]

---

[71]     Reply for Motion for Prejudgment Interest 6:25-27.

[72]     Opposition to Motion for a Destructive Order 10:2.

[73]     The parties may revisit this specific form of relief in the future.  The Court denies the motion without prejudice, in the event that the need for a special master becomes apparent.

## C. Reasonable Royalty

In the alternative, Softketeers seeks a reasonable royalty for two years in the amount between $2,005 to $3,544 per day.[74]  As discussed, the Court prefers that the parties to negotiate and determine their own royalty rate, if any. Therefore, the Motion for a Destructive Order is **DENIED** to the extent that Softketeers seeks a Court-imposed royalty.

# IV.  MOTION FOR CONTEMPT SANCTIONS

## A. Procedural History

On March 26, 2019, less than two weeks after initiating this lawsuit, Softketeers moved for a preliminary injunction.[75]  On May 6, 2019, the Court granted that motion[76] and ordered Regal, VHI, TTI, DMI, Neeves, Ho, Tran, Mai, and Doan, *inter alia*, to "delete [permanently] or otherwise destroy any copies of any Software source code or any portion thereof under their control that are stored on media they are unable to surrender" and not to "disclos[e] or use source code."[77]  The Court also required Defendants to "verify, under oath and penalty of perjury, the fact and manner of their compliance" with the injunction.[78]  Crucially, the preliminary injunction did not disturb Defendants' use of executable code.

After the preliminary injunction was issued, Regal continued to use the executable version of the software while hiring several independent contractors

---

[74]    Motion for a Destructive Order 6:1-2.

[75]    Mot. for Prelim. Inj. [ECF No. 20].

[76]    Order Granting Mot. for Prelim. Inj. ("Preliminary Injunction Order") [ECF No. 47].

[77]    *Id.* at 2 & 3.

[78]    *Id.* at 4.

to begin building replacement software, including the Vietnamese-based firm VTSWay.[79]

On June 6, 2019, Neeves filed a declaration testifying to his and Regal's compliance with the injunction.[80]  About two weeks later, Doan, Mai, DMI, Tran, TTI, Ho, and VHI each submitted declarations stating their compliance, as well.[81]  Accordingly, the Court denied Softketeers's second motion for contempt,[82] concluding that "[t]he showing by Neeves and the other declarants evidences adequate compliance with the injunction."[83]

A few months later, in October 2019, Softketeers again moved for contempt sanctions.[84]  In that motion, Softketeers revealed that Minh Nguyen had traveled to Vietnam that August.[85]  Accompanied by private investigator and a Ho Chi Minh City police officer, Nguyen visited the offices of VTSWay.[86]  Nguyen surreptitiously took photographs of open laptops displaying source code, which he recognized as belonging to Softketeers.[87]  On November 19, 2019, the Court ordered that it would hold Softketeers's motion "in abeyance

---

[79]     Defs.' Opp'n to Pl.'s Mot. for Terminating or Other Contempt Sanctions [ECF No. 175] 6:25-7:22 & 9:6-9.

[80]     Decl. of Randy Neeves Regarding Compliance with Prelim. Inj. (the "Neeves Compliance Declaration") [ECF No. 84].

[81]     Defs.' Notice Regarding Compliance with Prelim. Inj. and Source Code Escrow (including its attachments) [ECF No. 100].

[82]     *See* Pl.'s Renewed *Ex Parte* Appl. for Order Directing Defs. to Show Cause Why They Should Not Be Held in Contempt and Sanctioned [ECF No. 86].

[83]     Order Den. Pl.'s Renewed *Ex Parte* Appl. for Order Directing Defs. to Show Cause Why They Should Not Be Held in Contempt and Sanctioned [ECF No. 108].

[84]     Pl.'s Mot. for Terminating or Other Contempt Sanctions [ECF No. 176].

[85]     *Id.* at 9:5-9.

[86]     *Id.*

[87]     Order Regarding Mots. to Dismiss Countercls., for Leave to Suppl. Countercls., and for Sanctions (the "November 2019 Order") [ECF No. 229] 8 & 11.

until Defendants produce[d] the code held by VTSWay in Vietnam, so Defendants and Softketeers have the opportunity to inspect it."[88]

In those intervening months, the Court appointed retired Judge James L. Smith as a Special Master, and Defendants produced a subset of the source code in accordance with the Court's order.[89]  On March 18, 2020, the Court dissolved the preliminary injunction, albeit only as to Regal.[90]  Six days later, Softketeers renewed its contempt motion, protesting that Defendants' production of the replacement software source code was still woefully incomplete.[91]  Even so, Softketeers argued that the small quantity of replacement source code that Defendants had produced confirmed Softketeers's suspicion that Defendants violated the Court's preliminary injunction.[92]  The Court held on May 6, 2020, that Softketeers's evidence did not meet the "high standard for a contempt finding."[93]  The Court also found fault with Softketeers's failure "to analyze each defendant's actions in violation of the Injunction."[94]

Meanwhile, despite the November 2019 Order, Defendants continued to drag their feet in their production of the rest of the replacement software source code.[95]  In August 2020, the Court adopted Special Master Smith's updated

---

[88]   *Id.* at 16.

[89]   R. & R. of Special Master [ECF No. 316]; Order Regarding Obj. to Special Master's Report [ECF No. 517] 4.

[90]   Order Granting *Ex Parte* Mot. to Confirm Partial Dissolution of Prelim. Inj. (the "Dissolution Order") [ECF No. 374].

[91]   Pl.'s Renewed Mot. for Terminating or Other Contempt Sanctions [ECF No. 381] 1:12-15.

[92]   *Id.* at 1:15-19.

[93]   Order Regarding Motion for Terminating or Other Contempt Sanctions (the "Order on Terminating or Other Contempt Sanctions") [ECF No. 475] 3.

[94]   *Id.* at 4.

[95]   *See, e.g.*, R. & R. of Special Master [ECF No. 429].

report and recommendations on that issue.[96]  By that point, the Court had twice ordered Defendants to produce the replacement software and its source code.[97]  As a result, Softketeers moved for an order sanctioning Regal for its failure to deliver the source code control system for the replacement software.[98]  On November 11, 2020, Special Master Smith considered that motion and recommended imposing an issue sanction against Regal.[99]  The Court adopted that recommendation on February 21, 2021, awarding Softketeers a slightly re-worded issue sanction.[100]  That sanction was codified in the jury instructions, which stated:  "If you conclude that Regal's Vietnam-based developers used or had in their possession source code for the software at issue, then you must presume that the Vietnam-based developers received that source code from Regal."[101]

Shortly before trial, Defendants petitioned the Court to bar Softketeers from making any reference to the preliminary injunction in the presence of the jury.[102]  Concluding that the mention of the injunction would be highly prejudicial, the Court directed Softketeers to refrain from explicitly referring to the preliminary injunction before the jury.[103]  But the Court also adopted a question on the jury verdict form that asked whether any misappropriation

---

[96]    Order Regarding Obj. to Special Master's Report [ECF No. 636] 5.

[97]    *See* Order on Defs.' Objections to R. & R. of Special Master Regarding Pl.'s Mot. for Evidentiary and Issue Sanctions (the "Issue Sanctions Order") [ECF No. 693] 7:14-15.

[98]    Pl.'s Mot. for Evid. and Issue Sanctions [ECF No. 659-4] (attached as Ex. 1 to Decl. of Paul Schoenhard [ECF No. 659-3]).

[99]    R. & R. of Special Master Regarding Pl.'s Mot. for Evidentiary and Issue Sanctions [ECF No. 656] 3:17-19.

[100]    Issue Sanctions Order 8:10-15.

[101]    Final Jury Instructions ("Final Jury Instructions") [ECF No. 822], No. 42 at 27.

[102]    Defs.' Mem. Re: Prelim Inj. [ECF No. 810] 21:17-21.

[103]    Attachments to Civil Minutes [ECF No. 814].

1    occurred from February 2019 through May 2019 (corresponding to the time

2    after Regal terminated Softketeers, but before the issuance of the preliminary

3    injunction) and from June 2019 to the present (covering the period of the

4    preliminary injunction).[104]

5          Although the jury did not find that Defendants had misappropriated

6    Softketeers's trade secrets willfully or maliciously, the jury did find that

7    misappropriation occurred from February 2019 through the date of trial—*i.e.*,

8    before, during, and (at least for Regal) after the term of the preliminary

9    injunction.[105]

10         Softketeers now moves the Court for an order (1) finding that Regal,

11   Neeves, Ho, Tran, and Pham engaged in contempt of the Court's preliminary

12   injunction; (2) directing Defendants to pay Softketeers's attorney fees from

13   May 22, 2019—the date that the preliminary injunction went into effect; and

14   (3) establishing the fact that Defendants' misappropriation of trade secrets was

15   willful and malicious.[106]

16   **B.    Legal Standard**

17         "Civil contempt . . . consists of a party's disobedience to a specific and

18   definite court order by failure to take all reasonable steps within the party's

19   power to comply." *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10

20   F.3d 693, 695 (9th Cir. 1993).  The party alleging civil contempt must

21   demonstrate that the alleged contemnor "(1) . . . violated the court order,

22   (2) beyond substantial compliance, (3) not based on a good faith and reasonable

23   interpretation of the order, (4) by clear and convincing evidence." *Id.*

24         To meet the clear and convincing standard, the moving party must "place

25   in the ultimate factfinder an abiding conviction that the truth of its factual

---

26   [104]   Verdict 8.

27   [105]   *Id.* at 8 & 9.

28   [106]   *See generally* Motion for Contempt Sanctions.

contentions are [*sic*] highly probable." *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984) (internal quotations omitted). "Any doubts as to whether [the civil contempt sanction] requirements have been met in a particular case must be resolved in favor of the party accused of the civil contempt." *O'M & Assocs., LLC v. Ozanne*, 2011 WL 2160938, at *4 (S.D. Cal. 2011) (citation omitted). Additionally, the moving party must meet this threshold for each alleged contemnor. *Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d at 695.

"Sanctions for civil contempt may be imposed to coerce obedience to a court order, or to compensate the party pursuing the contempt action for injuries resulting from the contemptuous behavior, or both." *General Signal Corp. v. Donallco, Inc.*, 787 F. 2d 1376, 1379-80 (9th Cir. 1986) (citing *United States v. United Mine Workers*, 330 U.S. 258, 303-04 (1947)). Coercive sanctions are payable to the Court; they should be designed to bring about the desired result; and they should reflect the character and magnitude of harm if that result is not achieved. *See Gen. Signal Corp.*, 787 F.2d at 1380. In contrast, compensatory sanctions are payable to the wronged party, and they must be based upon the actual losses as a result of the contemptuous conduct. *Id.*

## C.   Discussion

Each time that Softketeers has moved for contempt sanctions, the Court has denied the motion. This instance is no exception. Despite the fact that Softketeers provides incrementally more evidence with this iteration than its previous attempts,[107] the Court remains doubtful that any single Defendant clearly and convincingly violated the preliminary injunction.

### 1.   Highlights of New Findings

Softketeers's strongest evidence for contempt can be found in three exhibits. The first is a side-by-side analysis of a sample of Softketeers's source

---

[107]   *See* Reply for Motion for Contempt Sanctions 2:3-22.

code and a sample of Regal's replacement software's source code, performed by Ronald Alepin, Softketeers's expert.[108]  The two samples—about 2,500 lines of code—appear virtually identical, down to the embedded comments and other idiosyncrasies.[109]  The likelihood that such similarities occurred independently, by chance, is vanishingly small.

The second exhibit is an Excel file produced by a VTSWay programmer; it includes screenshots of code and an instruction to "[r]emove all comment of developer."[110]  Some of those comments had timestamps, such as "tuan updated (08/09/17)" and "tuan (04/11/2018)—add this to update delivery location for booking container."[111]  Nguyen testified at trial that Softketeers's source code included those comments.  He explained that the comments were directed at non-party Tuan Nguyen, one of Softketeers's former contractors.[112]

Lastly, the third exhibit is an email dated November 28, 2019, sent from a VTSWay programmer to a TPP programmer, with Ho as a cc recipient; it included the Excel file as an attachment.[113]  The email chain indicates that the VTSWay programmer was providing feedback to the TPP programmer.  Neeves explained at trial that VTSWay and TPP—both third-party contractors—were two of five different vendors tasked with building Regal's replacement code.[114]

---

[108]    Decl. of Ronald S. Alepin in Supp. of Motion for Contempt Sanctions (the "Alepin Declaration") [ECF No. 849], Ex. 27 [ECF No. 849-27].

[109]    Alepin Declaration ¶¶ 10-12 (explaining the analysis contained in the exhibit).

[110]    Decl. of L. Rex Sears in Supp. of Pl.'s Motions for Damages and Fees and for Contempt Sanctions (the "Sears Declaration") [ECF No. 855], Ex. R [ECF No. 855-18] 1.

[111]    Id.

[112]    Reporter's Tr. of Trial Proceedings Trial Day 6 [ECF No. 860] 1541:5-24.

[113]    Sears Declaration, Ex. Q (the "VTSWay Email") [ECF No. 855-17].  Ho is identified in the email by his alias "Jack Ryan."

[114]    Reporter's Tr. of Trial Proceedings Trial Day 5 ("Trial Transcript Volume Seven") [ECF No. 859] 1289:20-22.

At trial, Alepin also opined on the latter two exhibits, saying that he had found those same comments from the Excel file in Softketeers's original source code but not in Regal's replacement code.[115]  The implication is that VTSWay deliberately attempted to scrub the code of Softketeers's imprints, even if Alepin's other analysis shows VTSWay was not completely successful.[116]

### 2.   Individual Contemnor Analysis

Reviewing those exhibits and others that Softketeers provided with its Motion, the Court is convinced that misappropriation occurred, but it cannot clearly or convincingly determine who precisely is responsible.  Like an Agatha Christie whodunnit novel, a cast of plausible suspects sits before the Court—including Minh Nguyen himself.[117]  The trouble is that the most obvious culprit—the Vietnamese contractor VTSWay—is neither a party to this litigation nor subject to the Court's preliminary injunction.

Nonetheless, Softketeers tries to argue that each individual Defendant is a culprit and can be found in contempt.[118]  The Court is not persuaded that Softketeers has met its formidable burden.

### a.   Regal

Softketeers asserts that Regal violated the injunction for three reasons. The Court examines each in turn.

---

[115]   Reporter's Tr. of Trial Proceedings Trial Day 4 [ECF No. 858] 940:10-941:23.

[116]   Moreover, Softketeers insinuates that the timing of the VTSWay email was no coincidence.  Softketeers believes that the Court's contemporaneous orders to make Defendants produce source code from VTSWay motivated Defendants to scrub it of references.  *See, e.g.*, November 2019 Order 12 (holding Softketeers's motion for contempt in abeyance until source code was produced).

[117]   *See* Opposition to Motion for Contempt Sanctions 2:1-6.

[118]   Reply for Motion for Contempt Sanctions 7:8-8:25.

### i. Timing of Regal's Use of the Replacement Software

Regal used the replacement software, which itself was derived from Softketeers's source code.[119]  Regal, however, began using the replacement software (rather than old executable code) on or about March 2, 2020.[120]  The Court dissolved the injunction against Regal 16 days later.[121]  Softketeers would need evidence, then, that Regal was not acting under a good faith interpretation of the injunction in that brief window when it made the switch.  While "a party's subjective belief that she was complying with an order ordinarily will not insulate her from civil contempt if that belief was objectively unreasonable[,]" the Supreme Court has "not held, however, that subjective intent is always irrelevant."  *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1802 (2019).  Regal's compliance with the preliminary injunction is relatively well documented in the record.[122]  Meanwhile, Softketeers has not presented clear and convincing evidence that Regal knew all along that it was using replacement code impermissibly derived from Softketeers's source code.  Nor has Softketeers produced evidence that Regal unreasonably relied on the developers' representations that they complied with Regal's and the Court's instructions.

Too much uncertainty remains for the Court to conclude that Regal was not, at least, substantially complying with the preliminary injunction in good faith.

---

[119]     *Id.* at 7:18-21.

[120]     Motion for Contempt Sanctions 4:4-7.

[121]     *See generally* Dissolution Order.

[122]     *See, e.g.*, Neeves Compliance Declaration ¶¶ 2-8; Second Decl. of Randy Neeves Regarding Compliance with Prelim. Inj. [ECF No. 103] ¶¶ 2-7.

ii.     **Absence of Evidence of Regal Sharing the Source Code with VTSWay**

Next, Softketeers contends that Regal violated the injunction because it must have disclosed the source code to its team of Vietnam-based developers.[123] But Softketeers cannot muster any evidence to prove that fact; it offers only bluster and insinuation.[124] The fact that source code came to exist in Vietnam is not subject to the negligence-based doctrine of *res ipsa loquitor*.[125] It is well established that many of the parties (and related non-parties) had access to the source code—more than merely Regal or its employees.[126] Indeed, Softketeers was a rather leaky sieve when it came to cybersecurity controls on its source code.[127] While Softketeers may sincerely believe that Regal was to blame, it remains unresolved how the source code fell into the hands of VTSWay and who is culpable for that disclosure.

---

[123]     Motion for Contempt Sanctions 7:16-21; Reply for Motion for Contempt Sanctions 7:21-23.

[124]     *See, e.g.*, Trial Transcript Volume Seven 1290:2-1293:15 (in which Softketeers accuses Neeves—Regal's CEO—of transmitting the source code in June, and Neeves flatly denies the accusation).

[125]     Opposition to Motion for Contempt Sanctions 17:2-5.

[126]     *See, e.g.*, Trial Transcript Volume Three 623:19–624:2 (in which Minh Nguyen testifies that he provided Softketeers's source code to non-party Dat Nguyen, who was based in Vietnam).

[127]     *See* Defs.' Response to Pl.'s Further Showing Re Mot. for Terminating or Other Contempt Sanctions [ECF No. 375], Deposition of Minh Khai Nguyen [ECF No. 375-7] 75:5-77:18 (in which Nguyen explained that all of the programmers with whom Softketeers contracted, including some of Defendants, had access to the source code—they could save source code to their hard drives—and that the only requirement was that their computers had to run Windows).

### iii. Regal's Inventory and Divestiture of the Source Code

Softketeers argues that Regal violated the injunction by failing to inventory and to divest its vendors of the source code.[128]  There are three flaws with that accusation, which give the Court pause.

First, it is not clear that Regal's obligations under the preliminary injunction extended to contractors or other third parties.  The preliminary injunction applied to Defendants that it called out by name and "their respective officers, agents, servants, employees, successors, and those persons in active concert or participation with them who receive notice of this order."[129]  Softketeers makes no argument why VTSWay would have fallen into any of those categories at the time that the injunction was issued.[130]  And while the "law is clear that those who control an organization may be held liable if they fail to take appropriate action to ensure compliance with an injunction," *Inst. of Cetacean Rsch. v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 955 (9th Cir. 2014), Regal did provide substantial evidence that it took steps to ensure compliance with the injunction within the scope of its organization.[131]  The Court would be moving the goalposts and modifying the injunction order *ex post facto* if it extended its inventory requirement—*i.e.*, that Regal provide a complete inventory of all copies of Softketeers's source code—to apply to Regal's

---

[128]    Motion for Contempt Sanctions 7:22-24 (pointing to the "Vietnam-based providers' retention of the Softketeers source code" as the source of the violation).

[129]    Preliminary Injunction Order 2:11-13.

[130]    *See generally* Motion for Contempt Sanctions.  Indeed, even the most likely category to be applicable—that of "agent"—does not quite fit, insofar as an agent is one "who represents another, called the principal, in dealings with third persons."  Cal. Civ. Code § 2295.  Nothing in the record suggests that VTSWay, TPP, or any other vendor represented Regal or the other Defendants named in the preliminary injunction.

[131]    Opposition to Motion for Contempt Sanctions 17:22-18:7 (summarizing compliance efforts).

vendors, business contacts, or other independent contractors outside of Regal's business, especially those located in a foreign country.[132]  *See SunEarth, Inc. v. Sun Earth Solar Power Co.*, 664 F. App'x 657, 659 (9th Cir. 2016) (holding that the district court did not abuse its discretion in failing to issue contempt sanctions against defendants for infringing content found on defendants' independent distributors' websites).  Softketeers cannot commandeer Regal to enforce its injunction beyond what the terms of it says.

Second, nothing in the injunction required Regal to update its inventory on an on-going basis.[133]  Rather, the injunction contemplated the completion of the tasks that it compelled Regal to undertake within 15 days, implying no on-going obligation to inventory.[134]  Therefore, even if Regal later discovered other copies of Softketeers's source code floating in the ether, a good faith interpretation of the injunction would not necessarily have compelled Regal to take some affirmative action.

And third, assuming that Regal was obligated both to update its inventory and to exert control over its independent contractors, those obligations existed only from May 2019 through March 2020.  Softketeers would need clear and convincing evidence that Regal was not acting under a good faith interpretation of the preliminary injunction order in that window of time.  Here, the best evidence that Softketeers can muster is the email from November 2019,

---

[132]  Softketeers attempts to leverage this Court's prior order to establish that Regal had legal control over its third-party developers.  *See* Motion for Contempt Sanctions 8:4-8 (citing Issue Sanctions Order 8:1).  But Softketeers cites no authority for the proposition that establishing legal control for discovery purposes equates to legal control for contempt purposes.  Control in that context "is defined as the legal right to obtain documents upon demand."  *In re Citric Acid Litig.*, 191 F.3d 1090, 1107 (9th Cir. 1999) (citing *United States v. International Union of Petroleum & Indus. Workers*, 870 F.2d 1450, 1452 (9th Cir.1989)).  The remedy for Regal's failure to produce documents was an issue sanction favorable to Softketeers, which the Court already afforded.

[133]  *See generally* Preliminary Injunction Order.

[134]  *Id.* at 3:6-8.

suggesting that some developer comments needed to be removed.[135]  While certainly probative, that single email is not enough for this Court to condemn Regal as a contemnor—under the clear and convincing standard—for failure to inventory.[136]  Softketeers would need much more.

### b. Neeves, Ho, Tran, VHI, and TTI

With respect to Neeves, Ho, and Tran, Softketeers rehashes and recycles its arguments that this Court previously heard and rejected.[137]  The new evidence that Softketeers offers—relating to the acts or omissions of Neeves, Ho, and Tran—is no more persuasive than the evidence that it provided in support of its prior contempt motions.  And to the extent that Softketeers seeks to conflate Ho's and Tran's actions with Regal's acts or omissions, such an argument hits the wall of judicial estoppel, insofar as Softketeers previously argued and convinced the jury that they were, in fact, independent contractors.[138]  *See Rissetto v. Plumbers & Steamfitters Loc. 343*, 94 F.3d 597, 600 (9th Cir. 1996) (holding that the doctrine of judicial estoppel precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position).

Softketeers also makes no argument why Ho's and Tran's respective closely held-companies—*i.e.*, VHI and TTI—warrant contempt separate and apart from their owners, so the Court does not consider the issue.[139]

---

[135]  *See generally* VTSWay Email.

[136]  That exhibit lays some foundation to suggest that Ho is a contemnor, because he was copied on that email.  But since Softketeers makes no argument for why Ho legally controlled the vendors as a matter of law, even if Ho managed those relationships, the Court cannot hold him accountable for receiving a putatively nefarious email.  *See* Reply for Motion for Contempt Sanctions 8:2-4.

[137]  *Compare* Reply for Motion for Contempt Sanctions 7:27-8:25 *with* Order on Terminating or Other Contempt Sanctions 3 & 4.

[138]  *See, e.g.*, Pl.'s Opp'n to Countercl. 5, for Decl. J. of Ownership ("Opposition to the Fifth Counterclaim") [ECF No. 865].

[139]  *See generally* Motion for Contempt Sanctions.

### c.    Mai and DMI

In its Motion for Default Judgment, Softketeers contends that Mai and DMI should be held in contempt for violating the preliminary injunction.[140]  To start its analysis, Softketeers observes that the jury found all the "non-Doan co-defendants liable for misappropriating Softketeers's trade-secret source code from February 2019 through the date of trial."[141]  The verdict therefore implies "that those defendants used and/or disclosed Softketeers source code in the course of the work that was performed on behalf of Regal during the term of the Injunction—and, thus, that they violated the Injunction."[142]

As discussed in its separate order,[143] the Court agrees that the *Eitel* factors support the award of default judgment against Mai and DMI, as it relates to rendering them jointly and severally liable for copyright infringement and trade secret misappropriation.  *See Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  But the Court does not agree that the jury verdict, alone, justifies a finding of contempt.[144]

Even though the jury found that misappropriation occurred during the time of the preliminary injunction, the jury evaluated the evidence under the preponderance of the evidence standard, whereas a motion for contempt must meet the clear and convincing standard.  *See Colorado*, 467 U.S. at 316.  Because of that difference in standards of proof, the jury verdict cannot create an implied finding on which Softketeers can rest its Motion for Contempt Sanctions—for Mai or DMI, or any other Defendant, for that matter.[145]

---

[140]    Motion for Default Judgment 16:1-18:15.

[141]    *Id.* at 16:20-22.

[142]    *Id.* at 16:26-17:2.

[143]    *See generally* Default Judgment Order.

[144]    *Contra* Motion for Contempt Sanctions 3:5-20.

[145]    *Contra* Reply for Motion for Contempt Sanctions 6:20-7:7.

Furthermore, piggy-backing a finding of contempt on the jury verdict would be misguided for the additional reason that the jury instructions included the issue sanction.[146]  It would be a self-fulfilling prophecy to instruct the jury to presume that Regal supplied the source code to its Vietnamese contractors, and then base a finding of contempt (for any Defendant) upon that legal fiction.

The only other evidence that Softketeers presents regarding Mai's or DMI's putative contempt are a handful of email threads that discuss fixing bugs for Shopify and WooCommerce services and "TMS" and some blurry black-and-white photocopied images of some sort of dashboard or graphical user-interfaces.[147]  The Court cannot conclude, from those emails and materials, whether Mai is using or even discussing Softketeers's source code (which the preliminary injunction prohibits), as opposed to issues with executable code or VTSWay source code unrelated to Softketeers's copyright or trade secrets (which would be outside of the scope of the injunction).  Collaboration over email is hardly a smoking gun, particularly when such collaboration was to be expected.  To satisfy the preliminary injunction without closing shop, Regal quickly had to find a new vendor and hire personnel (such as ex-Softketeers contractors, like Mai) who could create a warehouse management system that served Regal's business needs.  That is not evidence of contempt—that is evidence of compliance.

Simply put, the evidence is too insubstantial for this Court to hold Mai in contempt.

### d.   Doan

Unlike the other Defendants, the jury verdict can create an implied finding on the issue of contempt with respect to Doan, albeit in his favor.  The

---

[146]   Final Jury Instructions, No. 42 at 27.

[147]   Motion for Default Judgment 17:3-18; *see also* Decl. of Erynn L. Embree in Supp. of Motion for Default Judgment [ECF No. 911-1], Ex. C [ECF No. 913-2].

1  jury concluded that Doan had neither infringed any copyrights nor

2  misappropriated any trade secrets, before or during the preliminary injunction

3  period.[148]  Even though the preliminary injunction applied to him,[149] the Court

4  cannot hold Doan in contempt when the jury found in his favor.

5           **e.**    **Pham**

6        Finally, with respect to Pham, Softketeers argues that he, too, is a

7  contemnor.[150]  But the preliminary injunction never applied to him, so he cannot

8  be in contempt of it.[151]

9  **D.**    **Conclusion on the Motion for Contempt Sanctions**

10        In sum, none of the evidence so clearly and convincingly shows that any

11  single Defendant named in the preliminary injunction violated its terms beyond

12  substantial compliance, based upon a bad faith or unreasonable interpretation of

13  the order.  The Court harbors too many doubts, all of which must be resolved in

14  favor of the accused.  *See Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10

15  F.3d at 695; *see also Colorado*, 467 U.S. at 316.  Thus, the Court **DENIES** the

16  Motion for Contempt Sanctions.

17           **V.  MOTION FOR DAMAGES AND FEES**

18        Softketeers moves for (1) an award of exemplary damages of between one-

19  and-one-half and two times the actual and unjust enrichment damages awarded

20

21

22

---

23  [148]    Verdict 3 & 7.

24  [149]    *See generally* Preliminary Injunction Order.

25  [150]    Motion for Contempt Sanctions 8:19-9:19.

[151]    *See generally* Preliminary Injunction Order (making no mention of Pham).

26  Moreover, if it is Softketeers's belief that Pham constitutes an employee or agent of one of the named Defendants in the preliminary injunction, then

27  Softketeers would need to reconcile that belief with its arguments in opposition to the fifth counterclaim.  *See* Opposition to the Fifth Counterclaim 11:7-8

28  (stating that "Minh Nguyen and Kevin Pham were Softketeers W-2 employees").

by the jury; (2) an award of any attorney fees not already awarded directly as
contempt sanctions; and (3) an award of expert fees.[152]

**A.   Legal Standard**

CUTSA "proscribes the misappropriation of information that has
independent economic value from not being generally known and is the subject
of reasonable efforts to maintain secrecy." *Mattel, Inc. v. MGA Ent., Inc.*, 801
F. Supp. 2d 950, 952 (C.D. Cal. 2011).   "If willful and malicious
misappropriation exists, the court may award exemplary damages in an amount
not exceeding twice" the compensatory award.  Cal. Civ. Code § 3426.3(c).

Additionally, CUTSA provides the Court with the discretion to award
attorney fees.  "If a claim of misappropriation is made in bad faith, a motion to
terminate an injunction is made or resisted in bad faith, or willful and malicious
misappropriation exists, the court may award reasonable attorney's fees and
costs to the prevailing party."  Cal. Civ. Code § 3426.4.  Those costs include "a
reasonable sum to cover the services of expert witnesses, who are not regular
employees of any party."  *Mattel, Inc.*, 801 F. Supp. 2d at 956 (internal citations
and quotations omitted).

Similarly, DTSA authorizes the Court to "award exemplary damages in
an amount not more than 2 times the amount of the damages" for actual loss or
unjust enrichment "*if* the trade secret is willfully and maliciously
misappropriated."  18 U.S.C. § 1836(b)(3)(C) (emphasis added).  DTSA also
authorizes the Court to award "reasonable attorney's fees" to the prevailing
party "*if* . . . the trade secret was willfully and maliciously misappropriated."  18
U.S.C. § 1836(b)(3)(D) (emphasis added).

---

[152]     *See generally* Motion for Damages and Fees.

## B.     Discussion

Although the jury returned a verdict in favor of Softketeers on its DTSA
and CUTSA claims for the copyrights tried before them,[153] the jury found that
no Defendant misappropriated trade secrets willfully or maliciously.[154]
Softketeers acknowledges that fact.[155]  Instead, Softketeers argues that
Defendants should be found to have willfully and maliciously misappropriated
trade secrets during the period of the preliminary injunction.

The Court is not convinced.  If the Court had found sufficient reason to
grant the Motion for Contempt Sanctions, then the Court might also have
reason to reach a finding of willful and malicious misappropriation,
notwithstanding the jury verdict.  But because the Court did not, it will not
disturb the jury's finding.  That finding divests the Court of authority to award
additional fees and costs under Cal. Civ. Code § 3426.3(c) and 18 U.S.C.
§ 1836(b)(3).  The Motion for Damages and Fees is **DENIED**.

## VI.  CONCLUSION

For the reasons stated above, the Court hereby **ORDERS** as follows:

1.     Softketeers's Motion for Prejudgment Interest is **DENIED**.

2.     Softketeers's Motion for a Destructive Order is **GRANTED in
part** and **DENIED in part**.  Specifically, Regal, VHI, TTI, DMI, Neeves, Ho,
Tran, Mai, and Pham, and each of them, are **DIRECTED** within 45 days—at or
before 12:00 noon on April 7, 2023—either:

a.     to file, under oath and penalty perjury, an attestation:

---

[153]     Defendant was the prevailing party on Softketeers's copyright
infringement claims pertaining to Registration Nos. TX008730600 and
TX008720835.  *See* Min. Order Granting Pl.'s Oral Mot. to Dismiss Copyright
Infringement Claims [ECF No. 920].

[154]     Verdict 9.

[155]     Reply for Motion for Damages and Fees 1:7.

i.      identifying the fact that, and manner in which, they have permanently deleted or otherwise destroyed any copies of any Softketeers source code or any portion thereof under their control that are stored on media they are unable to surrender; and

ii.     providing a complete inventory, under oath and penalty of perjury, of all copies of any Softketeers source code known to them that are not subject to impound or deletion;

-or-

b.     to file a joint stipulation with Softketeers that the parties have reached an agreement obviating the need for a destruction order.

3.     Any party may move for an extension of time to comply with the directive set forth in Paragraph 2 on a showing of good cause.

4.     The failure of Regal, VHI, TTI, DMI, Neeves, Ho, Tran, Mai, and Pham to comply with the directive set forth in Paragraph 2 will result in an immediate destruction order and the appointment of a special master, at the expense of any or all non-compliant Defendants.

5.     A Status Conference regarding the parties' compliance with the directive set forth in Paragraph 2 is **SET** for April 7, 2023, at 1:00 p.m. in Courtroom 9D of the Ronald Reagan Federal Building and U.S. Courthouse, 411 W. 4th Street, Santa Ana, California.

6.     Softketeers's Motion for Contempt Sanctions is **DENIED**.

7.     Softketeers's Motion for Damages and Fees is **DENIED**.

8.     Softketeers is **DIRECTED** forthwith to serve this Order—by telephone, email, U.S. Mail, and any other means like to achieve success—on Mai and DMI.  Softketeers is also **DIRECTED** to file a Proof of Service within 72 hours of such service.

9.     Judgment shall issue accordingly.

-46-

10.     Defendants' Motion for Entry of Judgment [ECF No. 940] is **DENIED as moot**.

**IT IS SO ORDERED.**

Dated: February 7, 2023

John W. Holcomb
UNITED STATES DISTRICT JUDGE