# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOFTKETEERS, INC., | Case No. 8:19-cv-00519-JWH (JDEx) |
| Plaintiff, | **ORDER DENYING DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, A NEW TRIAL [ECF No. 975] AND DEFENDANTS' MOTION TO STAY EXECUTION OF JUDGMENT [ECF No. 1010]** |

SOFTKETEERS, INC.,

    Plaintiff,

    v.

REGAL WEST CORPORATION dba
    REGAL LOGISTICS,
VU HO INC.,
THAI TRAN INC.,
DON MAI INC.,
RANDY NEEVES,
VU HO,
THAI QUOC TRAN,
DON MAI,
TRUN NGOC DOAN, and
DONG BAO PHAM,

    Defendants.

_____

REGAL WEST CORPORATION
    d/b/a REGAL LOGISTICS, a
    Washington corporation;
VU HO INC., a California corporation;
THAI TRAN INC., a California
    corporation;
DON MAI INC., a California
    corporation;
RANDY NEEVES, an individual;
VU HO, an individual;
THAI QUOC TRAN, an individual;
DON MAI, an individual;
TRUNG NGOC DOAN, an individual;
    and
DONG BAO PHAM, an individual,

    Counterclaimants,

    v.

SOFTKETEERS, INC., a California
    corporation, and
MINH KHAI NGUYEN, an individual,

    Counterdefendants.

## I.  SUMMARY OF DECISION

At the end of the two-week trial in this case, the jury rendered a verdict that was almost entirely in favor of Plaintiff and Counterdefendant Softketeers, Inc. and Counterdefendant Minh Khai Nguyen.  The Court then ruled on several post-trial motions and entered Judgment.

Defendants and Counterclaimants Regal West Corporation, Vu Ho Inc., Thai Tran Inc., Randy Neeves, Vu Ho, Thai Quoc Tran, Trung Ngoc Doan, and Dong Bao Pham (collectively, "Defendants") subsequently filed a post-trial motion seeking two forms of relief.  Defendants move for judgment as a matter of law on the issues of copyright infringement and trade secret misappropriation.[1]  In the alternative, Defendants move for a new trial on the following bases:

- the jury's verdict is against the weight of the evidence;
- neither the jury nor this Court made findings of fact or conclusions of law on the work-for-hire factors set forth in *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 751-52 (1989) ("*Reid*"), or on the issue of implied license;
- the Court made an erroneous evidentiary ruling;
- the jury heard biased testimony;
- the jury was erroneously presented with an adverse-inference instruction;
- exculpatory evidence and related testimony were improperly excluded;
- the damages verdict was clearly excessive; and
- the trial was not bifurcated.[2]

After considering the papers filed in support and in opposition,[3] as well as the argument of counsel at the hearing, the Court orders that Defendants' instant Motion for judgment as a matter of law or for a new trial is **DENIED**, for the reasons set forth herein.

---

[1]     Defs.' Renewed Mot. for Judgment as a Matter of Law or, in the alternative, a New Trial (the "Motion") [ECF No. 975].

[2]     *Id.*

[3]     The Court considered the documents of record in this action, *see infra* note 14, including the following papers:  (1) Motion (including its attachments); (2) Pl.'s Opp'n to the Motion (the "Opposition") [ECF No. 978]; and (3) Defs.' Reply in Support of the Motion (the "Reply") [ECF No. 980].

## II.  BACKGROUND

### A.    Factual Allegations

This lawsuit arises out of a dispute over the use and ownership of software designed for warehousing and logistics applications.[4]  From 2000 to 2019, Plaintiff Softketeers created and maintained several computer software programs used by Defendant Regal, a logistics company.  Regal provides warehousing, cross-docking, transportation, and assembly and repackaging services to its customers.[5]  Regal terminated its relationship with Softketeers in February 2019.[6]

### B.    Procedural History

In March 2019, Softketeers filed this action, asserting claims for relief against Regal and several other Defendants[7] for, *inter alia*, copyright infringement, trade secret misappropriation under the Defend Trade Secrets Act and the California Uniform Trade Secrets Act, and breach of contract.[8]  In response, Defendants raised numerous affirmative defenses and counterclaims.[9]  After several years of litigation, the parties proceeded to trial on September 14, 2021.

On the first day of trial, Softketeers moved to dismiss without prejudice the portion of its copyright infringement claim pertaining to two works—Registration Nos. TX008730600 and TX008720835.[10]  The Court granted that motion,[11] and

---

[4]    In view of the parties' familiarity with the background of the case and its extensive procedural history, the Court provides only an abbreviated summary here.

[5]    Joint Rule 26(f) Report [ECF No. 85] 1:8-9 & 2:8-11.

[6]    Final Pretrial Conference Order [ECF No. 792-1] 4:6-8.

[7]    Those other Defendants are Vu Ho Inc., Thai Tran Inc., Don Mai Inc. ("DMI"), Randy Neeves, Vu Ho, Thai Quoc Tran, Don Mai, Trung Ngoc Doan, and Dong Bao Pham.  Defendants and Counterclaimants Don Mai and his closely held company, DMI, defaulted.  The Court struck Mai and DMI's Answers in June 2020.  *See generally* Order Regarding Mot. to Strike [ECF No. 597].  The Clerk of the Court entered default with respect to DMI on that same day.  *See* Default by Clerk [ECF No. 598].  The Court subsequently entered default against Mai as an individual, in view of Softketeers's unopposed motion to strike.  *See* Order Striking Def. Don Mai's Answer and Denying Softketeers's Mots. to Drop Remaining Claims [ECF No. 734] 3.  Accordingly, unless otherwise noted, all references herein to "Defendants" exclude Mai and DMI (who are not among the movants on the instant Motion).

[8]    *See generally* Compl. [ECF No. 1].

[9]    *See generally* Defs.' Second Am. Answer and Countercls. [ECF No. 306].

[10]    *See generally* Pl.'s *Ex Parte* Mot. to Dismiss Its Copyright Infringement Claims based on Copyright Registration Nos. TX008730600 and TX008720835 Pursuant to Fed. R. Civ. P. 41(a)(2) [ECF No. 796].

[11]    *See* Minutes of Trial, Third Day [ECF No. 808].

Softketeers's copyright infringement claim for relief with respect to its other eight registered works proceeded to trial. Accordingly, the jury did not consider those two dismissed copyright registrations when Softketeers tried its claim for copyright infringement.[12]

On September 24, 2021, the jury rendered a verdict that was almost entirely in favor of Softketeers and Minh Nguyen.[13] The parties subsequently provided briefing on the counterclaims and affirmative defenses to be tried by this Court,[14] and they filed

---

[12]     First Am. Compl. [ECF No. 101] ¶¶ 55-61.

[13]     *See generally* Verdict Form (the "Verdict") [ECF No. 823].

[14]     The Court considered the documents of record in this action, including the following:

- Defs.' Brief in Supp. of J. in Favor of Regal on Countercl. 5 [ECF No. 839];

- Defs.' Brief in Supp. of J. in Favor of Regal on Countercl. 7 [ECF No. 840];

- Defs.' Brief in Supp. of Equitable Estoppel and Copyright Misuse Affirmative Defenses [ECF No. 841];

- Defs.' Brief in Supp. of (1) Affirmative Defense and (2) Countercl. for Decl. J. Re: Fraud on the Copyright Office [ECF No. 842];

- Pl.'s Opp'n to Countercl. 5, for Decl. J. of Ownership (the "Opposition to Counterclaim Five") [ECF No. 865];

- Pl.'s Opp'n to Countercl. 7 for Decl. J. of Licensure ("Opposition to Counterclaim Seven") [ECF No. 866];

- Pl.'s Opp'n to (1) Affirmative Defense and (2) Countercl. for Decl. J. Re: Fraud on the Copyright Office [ECF No. 867];

- Pl.'s Opp'n to Defs.' Equitable Estoppel and Copyright Misuse Affirmative Defenses [ECF No. 868];

- Defs.' Reply in Supp. of J. in Favor of Regal on Countercl. 5 [ECF No. 884];

- Defs.' Reply in Supp. of J. in Favor of Regal on Countercl. 7 [ECF No. 885];

- Defs.' Reply Brief in Supp. of (1) Affirmative Defense and (2) Countercl. for Decl. J. Re: Fraud on the Copyright Office [ECF No. 886];

- Defs.' Reply Brief in Supp. of Equitable Estoppel and Copyright Misuse Affirmative Defenses [ECF No. 887];

- Pl.'s Suppl. Brief Re Certain Post-Verdict Filings [ECF No. 893];

- Defs.' Response to Plaintiff's Supplemental Brief [ECF No. 894];

- Defs.' Suppl. Brief Regarding Jurisdiction over Fifth and Sixth Countercls. for Declaratory Relief [ECF No. 923];

- Pl.'s Reply to Defs.' Suppl. Brief Re Defendants' Supplement Brief on Jurisdiction [ECF No. 925];

- Judgment [ECF No. 955]; and

- Defs.' Notice of Suppl. Authority [ECF No. 1013].

several additional post-trial motions.[15]  The Court conducted a hearing in November 2021, during which Defendants confirmed that they briefed their motion under Rule 50(a) of the Federal Rules of Civil Procedure[16] merely to preserve their positions on various issues.  Accordingly, the Court ruled from the bench and denied Defendants' Rule 50(a) motion.[17]  The Court then asked the parties for supplemental briefing regarding the implications of that ruling on the outstanding counterclaims and affirmative defenses.

In December 2022, the Court issued extensive findings of fact and conclusions of law in favor of Softketeers on each affirmative defense and in favor of Softketeers and Minh Nguyen on each counterclaim, except with respect to the two dismissed copyright registrations over which the Court lacks jurisdiction.[18]  Defendants now move for post-trial relief.[19]  The matter is fully briefed,[20] and the Court conducted a hearing on the Motion in April 2023.

Defendants recently filed a motion to stay execution of judgment pending this Court's decision on their Motion for judgment as a matter of law or a new trial.[21]  That Motion to Stay is fully briefed,[22] and the Court finds it appropriate for resolution without a hearing.  *See* Fed. R. Civ. P. 78; L.R. 7-15.

---

[15]     *See, e.g.*, Pl.'s Mot. for Prejudgment Interest Pursuant to Cal. Civ. Code §§ 3287(a) and 3288 [ECF No. 835]; Pl.'s Mot. for (1) a Destruction Order or, Alternatively, (2) A Reasonable Royalty in Lieu of Injunctive Relief [ECF No. 836]; Defs.' Brief in Supp. of Oral Rule 50(a) Mots. for J. as a Matter of Law ("Defendants' Rule 50(a) Motion") [ECF No. 838]; Pl.'s Mot. for Contempt Sanctions [ECF No. 848]; Pl.'s Mot. for (1) Exemplary Damages, (2) Att'y Fees, and (3) Expert Fees [ECF No. 850].

[16]     *See generally* Defendants' Rule 50(a) Motion.

[17]     *See generally* Min. Order of Video Hearing [ECF No. 891].

[18]     *See generally* Findings of Fact and Conclusions of Law Following Bench Trial on Counterdefendants' Fifth Counterclaim, Sixth Counterclaim, and Seventh Counterclaim, and Defendants' Fifth Affirmative Defense, Sixth Affirmative Defense, and Twelfth Affirmative Defense (the "Findings of Fact and Conclusions of Law") [ECF No. 939], reported at *Softketeers, Inc. v. Regal West Corp.*, 2022 WL 17968835 (C.D. Cal. Dec. 22, 2022).

[19]     *See generally* Motion.

[20]     *See generally* Opposition; Reply.

[21]     Defs.' Mot. to Stay Execution of Judgment (the "Motion to Stay") [ECF No. 1010].

[22]     *See generally* Softketeers's Obj. to the Motion to Stay [ECF No. 1011]; Defs.' Reply in Supp. of the Motion to Stay [ECF No. 1014].

### III.  LEGAL STANDARD

**A.      Rule 50(b):  Renewed Motion for Judgment as a Matter of Law**

Rule 50(b) allows a court, after the conclusion of a trial, to "direct the entry of judgment as a matter of law."  A post-trial Rule 50(b) motion for judgment as a matter of law is not a "freestanding motion," but a renewed Rule 50(a) motion, which is filed before a case is submitted to a jury.  *See* Fed. R. Civ. P. 50(a) & (b); *see also E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009).  "Because it is a renewed motion . . . a party cannot properly 'raise arguments in its post-trial motion for judgment as a matter of law under Rule 50(b) that it did not raise in its preverdict Rule 50(a) motion.'" *Id.* (citing *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003); *Murphy v. City of Long Beach*, 914 F.2d 183, 186 (9th Cir. 1990)).

"A party seeking judgment as a matter of law has a 'very high' standard to meet." *Veth Mam v. City of Fullerton*, 2013 WL 3367529, at *1 (C.D. Cal. July 5, 2013) (quoting *Costa v. Desert Palace, Inc.*, 299 F.3d 838, 859 (9th Cir. 2002), *aff'd*, 539 U.S. 90 (2003)).  When resolving legal questions raised in a Rule 50(b) Motion, the "test applied is whether the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict."  *Josephs v. Pac. Bell*, 443 F.3d 1050, 1062 (9th Cir. 2006). In other words, the Court can "overturn the jury's verdict and grant such a motion only if 'there is no legally sufficient basis for a reasonable jury to find for that party on that issue.'"  *Costa*, 299 F.3d at 859 (quoting *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 149 (2000)).

The Court "may not make credibility determinations or weigh the evidence." *E.E.O.C.*, 581 F.3d at 961.  Rather, the Court must "view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor."  *Josephs*, 443 F.3d at 1062.  "Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe."  *Reeves*, 530 U.S. at 151 (citing 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2529, at 299 (2d ed. 1995)).  "That is, the court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'"  *Id.* (quoting Wright & Miller 300).  Rule 50(b)'s "high hurdle recognizes that credibility, inferences, and factfinding are the province of the jury, not this court."  *Costa*, 299 F.3d at 859; *see also Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1227 (9th Cir. 2001) (explaining that a court "may not substitute its view of the evidence for that of the jury").

## B.    Rule 59(a):  Motion for a New Trial

The Federal Rules of Civil Procedure permit a court to grant a new trial after a jury trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court."  Fed. R. Civ. P. 59(a)(1)(A).  "Although Rule 59 does not enumerate specific grounds for a new trial, the Ninth Circuit has held that 'the trial court may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice.'"  *Hamilton v. Wal-Mart Stores, Inc.*, 2020 WL 2041938, at *3 (C.D. Cal. Feb. 11, 2020) (quoting *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007)).  "A district court 'enjoys considerable discretion in granting or denying the motion.'"  *Id.* (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 918 (9th Cir. 2003)).

"When the movant claims that a verdict was against the clear weight of the evidence at trial, a new trial should be granted 'if, having given full respect to the jury's findings, the judge . . . is left with the definite and firm conviction that a mistake has been committed.'"  *Id.* (quoting *Landes Const. Co., Inc. v. Royal Bank of Canada*, 833 F.2d 1365, 1371–72 (9th Cir. 1987)).  "A 'jury's verdict must be upheld if it is supported by substantial evidence, which is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion.'"  *Id.* (quoting *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002)).

## C.    L.R. 7-18:  Motion for Reconsideration

"Motions for reconsideration are disfavored and should be granted only in rare circumstances."  *Sams v. McDowell*, 2019 WL 12377675, at *1 (C.D. Cal. May 10, 2019) (quoting *Tavilla v. Cephalon, Inc.*, 870 F. Supp. 2d 759, 777 (D. Ariz. 2012), *on reconsideration in part* (May 30, 2012)).

Under this Court's Local Rules, a motion for reconsideration:

> may be made only on the grounds of (a) a material difference in fact or law from that presented to the Court that, in the exercise of reasonable diligence, could not have been known to the party moving for reconsideration at the time the Order was entered, or (b) the emergence of new material facts or a change of law occurring after the Order was entered, or (c) a manifest showing of a failure to consider material facts presented to the Court before the Order was entered.

L.R. 7-18.  "No motion for reconsideration may in any manner repeat any oral or written argument made in support of, or in opposition to, the original motion."  *Id.*  The Local Rules also impose a temporal requirement—*i.e.*, absent good cause shown, "any motion

for reconsideration must be filed no later than 14 days after entry of the Order that is the subject of the motion." *Id.*

## IV.  ANALYSIS

Defendants advance several reasons for why they are entitled to judgment as a matter of law in their favor or, alternatively, to a new trial.[23]  The Court evaluates each of those arguments below.

### A.      Rule 50(b):  Renewed Motion for Judgment as a Matter of Law

#### 1.      Copyright Infringement and Trade Secret Misappropriation

Defendants first assert that they are entitled to judgment as a matter of law because no reasonable juror could find that Defendants are liable for copyright infringement or trade secret misappropriation.  Defendants offer three overarching reasons for their argument:  (1) that Regal is the exclusive work-for-hire owner of the software at issue; (2) that Regal is the exclusive owner of that software as a borrowing employer; and (3) that Regal is at least a co-author of the software.[24]  *See, e.g.*, *Oddo v. Ries*, 743 F.2d 630, 632-33 (9th Cir. 1984) ("A co-owner of a copyright cannot be liable to another co-owner for infringement of the copyright."); *Richmond v. Weiner*, 353 F.2d 41, 42 (9th Cir. 1965) ("[A] copyright owner cannot infringe against his own copyright."). Evaluating each argument below, the Court concludes that Softketeers presented substantial evidence that supports the jury's verdict regarding Softketeers's claims for relief for copyright infringement and trade secret misappropriation.

##### a.      Work-for-Hire

First, Defendants argue that the trial record demonstrates that Regal is the exclusive owner of the software at issue, on the basis that Softketeers and its developers were effectively Regal employees.[25]  Softketeers responds that substantial evidence relevant to five of the 13 factors under *Reid*, 490 U.S. at 751–52, support the jury's determination that the software was written by independent contractors, not work-for-hire employees of Regal.[26]  Examining the circumstances of this case, the Court concludes that the jury verdict should not be disturbed on those grounds with respect to Claim 1 (Copyright Infringement) or Claims 2 and 3 (Trade Secret Misappropriation).

---

[23]     Motion 11:12-50:9.

[24]     *Id.* at 12:9-31:9.

[25]     *Id.* at 6:13-31:9.

[26]     Opposition 3:10-11.

A "work made for hire" is, *inter alia*, a work prepared by an employee within the scope of his or her employment.  The Copyright Act does not define "employee" or "scope of employment," and state common law definitions of those terms are inapplicable.  *See Reid*, 490 U.S. at 739-741.  Rather, the Court must construe those terms in light of the federal general common law of agency.  *See id.*

In determining whether a hired party is an employee under the general common law of agency, the Court "consider[s] the hiring party's right to control the manner and means by which the product is accomplished."  *Id.* at 751.

> Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

*Id.* at 751-52 (footnotes omitted); *see also* Restatement (Second) of Agency § 220(2) (Am. L. Inst. 1958) (setting forth a nonexhaustive list of factors relevant to determining whether a hired party is an employee).  "No one of these factors is determinative."  *Reid*, 490 U.S. at 752; *see also JustMed, Inc. v. Byce*, 600 F.3d 1118, 1126 (9th Cir. 2010) ("It does not necessarily follow that because no one factor is dispositive all factors are equally important, or indeed that all factors will have relevance in every case.  The factors should not merely be tallied but should be weighed according to their significance in the case.").

Renewing their argument from trial, Defendants contend that the *Reid* factors dictate that, as a matter of law, the software at issue was a work made for hire and that Regal is the sole owner of the software.[27]  Indeed, in Defendants' view, "at least ten" of the *Reid* factors weigh squarely in Regal's favor and "none" clearly favors a finding for Softketeers.[28]  Defendants argue that because Regal is the sole work-for-hire owner of the software, the jury's verdict on the issues of copyright infringement and trade secret misappropriation cannot stand.[29]  *See Oddo*, 743 F.2d at 632-33 ("A co-owner of a copyright cannot be liable to another co-owner for infringement of the copyright."); *Asset Mktg. Sys. v. Gagnon*, 542 F.3d 758, 752 (9th Cir. 2008) (holding that because the alleged

---

[27]     Motion 13:21-24.

[28]     *Id.* at 13:23-26.

[29]     *Id.* at 14:2-5.

copyright infringer had an implied license to the copyrighted work, the "license included access to any trade secret embodied therein"); *Richmond*, 353 F.2d at 42 ("[A] copyright owner cannot infringe against his own copyright.").

Defendants' argument fails because it ignores countervailing evidence presented to the jury. Indeed, a reasonable juror could have determined that *some* of the *Reid* factors favor Regal, but, as the jury instructions reflect,[30] there are 13 factors that a jury may consider when evaluating this issue,[31] and no single factor is dispositive.[32] Logically, then, to defeat Defendants' Motion on this ground, Softketeers need identify only a sample of factors—substantial evidence—that could support the jury's verdict. That evidence is abundant here.

For instance, the Court finds that there was ample evidence presented at trial upon which the jury could determine that Softketeers controlled the manner and means of the development of the software. Defendants boldly insist that Softketeers "does not even address" the manners-and-means factor,[33] but Softketeers points to evidence in the trial record that Randy Neeves testified that the developers who wrote the software "were working under the direction and supervision of Softketeers."[34] From that evidence alone, the Court concludes that it would not be unreasonable for the jury to determine that Softketeers—not Regal—had the "right to control the manner and means by which the product is accomplished." *Reid*, 490 U.S. at 751.

The parties also presented evidence "relevant" to "[that] central inquiry." *JustMed*, 600 F.3d at 1125. For example, the jury received evidence that Regal did not provide equipment to Minh Nguyen, Vu Ho, Thai Tran, or Trung Ngoc Doan.[35] Further, although Randy Neeves testified that Regal provided Softketeers with a starting

---

[30]    *See* Final Jury Instructions (the "Jury Instructions") [ECF No. 822], No. 37 at 19-21.

[31]    The parties dispute whether there are 12 or 13 factors under *Reid*. In step with the instructions that it presented to the jury, the Court counts 13 factors.

[32]    *See also* Motion 13:9-12 ("Thirteen factors, none of which is conclusive on its own, are to be considered when determining whether Softketeers and the developers it worked with qualify as Regal employees for copyright purposes. *See Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 751-52 (1989).").

[33]    Reply 3:9-11.

[34]    Opposition 14:1-2; Reporter's Tr. of Trial Proceedings Trial Day 3 ("Trial Transcript Volume Three") [ECF No. 873] 754:3-6.

[35]    Opposition 3:18-20; Reporter's Tr. of Trial Proceedings Trial Day 2 ("Trial Transcript Volume Two") [ECF No. 872] 346:22-25; Reporter's Tr. of Trial Proceedings Trial Day 4 ("Trial Transcript Volume Four") [ECF No. 874] 826:6-8; Reporter's Tr. of Trial Proceedings Trial Day 5 ("Trial Transcript Volume Six") [ECF No. 875] 1079:19-21; Reporter's Tr. of Trial Proceedings Trial Day 6 ("Trial Transcript Volume Nine") [ECF No. 860] 1540:17-1541:4; & 1543:14-17.

point for the Warehouse Management Software ("WMS") program (Regal's System 36 WMS),[36] the jury also heard testimony from Minh Nguyen that he did not "know anything about System 36.  Never see it.  Never look at it.  I don't even know what it is."[37]

Regarding the location of the work, the jury heard testimony that could support an inference that the bulk of the work was performed at Softketeers, and not at Regal.  Minh Nguyen testified that "all of [the] design and programming work" was "done at . . . Softketeers,"[38] and Thai Tran testified that the source code was stored on servers in "the Softketeers office."[39]  With respect to this factor, the jury may have decided that Softketeers's presence in California outweighed the number and types of trips that Vu Ho, Thai Tran, or any other software engineer might have taken to Regal's headquarters in Washington.[40]

The jury also heard testimony suggesting that, to the extent that the software developers' work schedules were controlled by someone other than the developers themselves, those schedules were controlled by Softketeers.[41]  At trial, the jury also learned about the parties' respective businesses, and the jurors may have afforded substantial significance to the fact that Regal's normal business—warehousing and logistics—is not the software business,[42] which weighs against Regal's work-for-hire argument.  *See JustMed*, 600 F.3d at 1125 ("Factors relevant to [the *Reid*] inquiry include: . . . whether the work is part of the regular business of the hiring party.") (citation and quotation omitted).  Indeed, Randy Neeves testified to that fact multiple times, affirming—for example—that Softketeers's software does not drive its trucks.[43]

In addition, the jury may have found significant the fact that the developers were engaged in a skilled profession—a factor that weighs against Regal's work-for-hire argument.[44]  *See id.* at 1128 ("computer programming is a skilled profession, which

---

[36]     Motion 19:11-20.

[37]     Opposition 14:8-12; Trial Transcript Volume Two 463:21-24.

[38]     Opposition 14:13-16; Trial Transcript Volume Two 347:1-4.

[39]     Opposition 14:15-16; Trial Transcript Volume Six 1080:7.

[40]     Opposition 4:20-21; Trial Transcript Volume Two 347:1-348:4.

[41]     Opposition 4:22-23; Trial Transcript Volume Four 873:16-20 (vacations); Reporter's Tr. of Trial Proceedings Trial Day 4 ("Trial Transcript Volume Five") [ECF No. 858] 993:11-17 (limiting working hours).

[42]     Opposition 4:1-4; Trial Transcript Volume Two 496:23-498:1.

[43]     *Id.*

[44]     Opposition 3:16-17.

weighs" against a work-for-hire determination).  Regarding the hiring party's role in
hiring and paying assistants, the jury heard testimony that "Softketeers decided whom it
would hire to write the software, and those people were paid by Softketeers rather than
Regal."[45]  In short, it is not the case here that "the evidence permits only one reasonable
conclusion"—that being the conclusion that Defendants seek.  *Go Daddy*, 581 F.3d at 961.
Accordingly, viewing the evidence in the light most favorable to Softketeers, and drawing
all reasonable inferences in its favor, the Court concludes that judgment as a matter of law
in favor of Defendants with respect to this issue is not warranted.  Defendants' renewed
motion for judgment as a matter of law is **DENIED** on this ground.

### b.    Borrowing Employer

Next, Defendants argue that Regal is the exclusive owner of the software at issue
as a borrowing employer.[46]  "A party cannot raise arguments in its post-trial motion for
judgment as a matter of law under Rule 50(b) that it did not raise in its pre-verdict
Rule 50(a) motion."  *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003).  In
its Rule 50(a) motion, Defendants did not advance the argument that Regal is the
exclusive owner under the loaned or borrowed servant doctrine[47]—the theory that
Defendants articulate for the first time here.  Accordingly, Defendants' argument
regarding that doctrine is waived.  *See Freund*, 347 F.3d at 761.  Defendants' renewed
motion for judgment regarding the loaned or borrowed servant doctrine is therefore
**DENIED**.

### c.    Joint Authorship

In the alternative, Defendants assert that the evidence presented at trial
undisputedly established that at least two Regal W-2 employees—non-parties Phong
Nguyen and Viet Nguyen—authored certain portions of the code.[48]  According to
Defendants' theory, those contributions render Regal, at minimum, a co-owner of the
software.[49]  Defendants' argument fails.

When a work is "prepared by two or more authors with the intention that their
contributions be merged into inseparable or interdependent parts of a unitary whole," the

---

[45]    *Id.* at 5:7-8; Trial Transcript Volume Two 346:10-21 & 366:6-9, 473:15-20; Trial
Transcript Volume Four 846:14-19; Trial Transcript Volume Five 992:10-20; Trial Transcript
Volume Six 1094:2-6.

[46]    Motion 28:12-29:12.

[47]    *See generally* Defendants' Rule  50(a) Motion.

[48]    Motion 29:12-17.

[49]    *See id*.

work is deemed a "joint work," of which each author is entitled to an equal and undivided interest.  17 U.S.C. §§ 101 & 201(a) ("The authors of a joint work are coowners of copyright in the work."); *see also Pye v. Mitchell*, 574 F.2d 476, 480 (9th Cir. 1978).  The Ninth Circuit has established criteria to determine whether a work is a joint work, including, as relevant here:  (1) "whether the putative coauthors made objective manifestations of a shared intent to be coauthors"; and (2) "whether the alleged author superintended the work by exercising control."  *Richlin v.  Metro-Goldwyn-Mayer Pictures, Inc.*, 531 F.3d 962, 968 (9th Cir. 2008) (citing *Aalmuhammed v. Lee*, 202 F.3d 1227, 1234 (9th Cir. 2000)).  "Control will often be the most important factor."  *Id.*

Regarding co-authorship, Defendants first cite the contributions of Phong Nguyen and Viet Nguyen, two of Regal's employees.[50]  The jury heard evidence that Phong Nguyen wrote 24 lines and Viet Nguyen wrote 135 lines, out of many tens of thousands of lines of code.[51]  The jury also heard testimony that Softketeers did not use that code.[52]  Indeed, that testimony alone could allow the jury to determine that Phong Nguyen and Viet Nguyen's contributions were too *de minimis* for the software to qualify as a joint work.[53]

Furthermore, although Defendants point to evidence of control—namely, that the software was built and customized specifically for Regal[54]—that is only one brick in the wall that Defendants need to construct to demonstrate joint authorship.  With respect to the first prong regarding intent, the jury heard testimony that Softketeers did not intend to integrate the procedures that Phong Nguyen and Viet Nguyen wrote into a unitary whole.[55]  Minh Nguyen testified that "Softketeers's database schema and the Phong/Viet-authored procedures were originally separate and have always been mutually independent—notwithstanding the accident of having eventually been stored, by an automated backup tool, in the same NewProdSchema.sql file."[56]  Minh Nguyen also

---

[50]     *Id.* at 2:18-3:3.

[51]     Opposition 6:16-7:2; Trial Transcript Volume Two 361:18-23 & 362:6–10.

[52]     *Id.*

[53]     *See* Jury Instructions, No. 39 at 23 (As the jury was instructed, each author of a joint work must have "made a substantial and valuable contribution to the work," "intended that his contribution be merged into inseparable or interdependent parts of a unitary whole," and "contributed material . . . which could have been independently copyrighted."); *see also* Opposition 16:16-26.

[54]     Motion 3:10-22.

[55]     Opposition 7:19-25; Trial Transcript Volume Two 365:13-20; *see also id.* at 363:25-364:4 & 365:2-4.

[56]     Opposition 6:16-7:9; Trial Transcript Volume Two 361:1-5, 362:14-363:3, 362:2-10, 364:10-365:1, & 363:7-24.

testified that the developers did not intend to merge the procedures that were authored by Phong Nguyen and Viet Nguyen with Softketeers's software.[57]  On that basis, the jury may reasonably have decided that the parties did not intend to be co-authors.  Therefore, even if Regal won on one element, there was still plenty of room for the jury ultimately to find for Softketeers.  Defendants' renewed motion for judgment as a matter of law with respect to this argument is therefore **DENIED**.  The Court will not disturb the jury verdict on those grounds.

### 2.   Abandonment

Defendants argue that Softketeers abandoned any ownership rights in its software.  Abandonment of copyright constitutes an effective defense in an infringement action.  *See* 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 13.06 (2000).  "But abandonment of a right must be manifested by some overt act indicating an intention to abandon that right."  *Micro Star v. Formgen Inc.*, 154 F.3d 1107, 1114 (9th Cir. 1998) (citation omitted).  An overt act may include acquiescence to the circulation of a work without a copyright notice.  *See White v. Kimmell*, 193 F.2d 744, 745 (9th Cir. 1952).  An overt act may also consist of public statements by the copyright owner renouncing an interest in a work.  *See Marya v. Warner/Chappell Music, Inc.*, 131 F. Supp. 3d 975, 993 (C.D. Cal. 2015).  Evidence of inaction alone is insufficient to abandon a right.  *See id.* at 992.  The relevant intent is "the licensor's objective intent at the time of the creation and delivery," not subjective intent.  *Gagnon*, 542 F.3d at 756.

Because Defendants bear the burden, the evidence would need to be overwhelming and uncontested.  Defendants' efforts here fall short.  For two of the software programs—MyWMS and TMS Mobile—Softketeers correctly notes that its corresponding registrations—TX 8730600 and TX008720835—were dismissed before the case went to the jury, rendering those copyright notices irrelevant.[58]  For two other software programs—YMS and TMS—Defendants highlight the fact that Regal's copyright notices appeared on some user-facing portals.[59]  However, on this point, the

---

[57]    Opposition 7:19-20; Trial Transcript Volume Two 365:13-20; *see also id.* at 363:25-364:4 & 365:2-4.

[58]    Opposition 8:19-22.

[59]    Motion 32:3-12; Defs.' Amended Notice of Filing Trial Exhibits and Other Documents Cited in Motion for Judgment as a Matter of Law or New Trial (the "Amended Notice") [ECF No. 1000], Exs. 1701 [ECF No. 1000-28], 1699 [ECF No. 1000-27], & 213 [ECF No. 1000-14]; Trial Transcript Volume Three 565:3-566:12, 568:18-21, 570:4-7 ("Q. So the only copyright information presented to a user of the YMS identifies the owner of the copyright as Regal Logistics; correct?  A. That's correct."), & 571:3-6 ("[Q.] Regal's customers who used the MyRegal portal were presented with copyright notices identifying Regal as the owner; correct? A. Yes.").

jury was instructed that "[a] copyright notice on a web page or an app screen does not necessarily indicate an ownership claim in the underlying source code."[60]  A reasonable jury could therefore find that the copyright notices on user-interface screens were meant to signify ownership of the content being presented—which would fall outside of Softketeers's copyright infringement claim—rather than to refer to the software that produces the display.[61]

In addition, Defendants refer to Minh Nguyen's testimony that his team posted pages to Regal's website "stating to the world that the WMS was Regal's WMS."[62] However, a reasonable jury could have interpreted Minh Nguyen's testimony, and the public-facing WMS webpage to which it refers, as demonstrating that Regal **uses** the WMS software, not that Regal **owns** it.[63]

Finally, Defendants highlight that Softketeers never represented to Regal that Softketeers intended to claim sole ownership of the software until after the parties' relationship ended.[64]  In fact, Ming Nguyen testified at trial that he, Randy Neeves, and non-party Garry Neeves had discussed jointly selling the software to third parties and that they also had discussions about forming a company called MGR—a potential side business that apparently never reached fruition—through which the software would be sold.[65]  However, the jury also received the January 2020 deposition testimony of Garry Neeves, which suggests, at least from Garry Neeves's perspective, that Regal's lawyer Bill Holt had advised that the software would need to be transferred "[f]rom Softketeers to MGR" in order for MGR to claim ownership of the software.[66]  From that testimony, a reasonable jury could find that the formation of MGR did **not** constitute an intent to abandon, since there was no overt act.

Based upon the foregoing, the Court concludes that reasonable grounds existed for the jury to find for Softketeers with respect to Defendants' abandonment theory, and it **DENIES** Defendants' Motion for judgment as a matter of law with respect to that theory.

---

[60]   Jury Instructions 22.

[61]   Opposition 8:15-18.

[62]   Motion 32:11-14; Trial Transcript Volume Three 575:25-577:8; Amended Notice, Ex. 1809 [ECF No. 1000-31].

[63]   Opposition 9:1-4.

[64]   Motion 32:15-20; Trial Transcript Volume Two 493:3-10.

[65]   Motion 32:19-23.

[66]   Opposition 9:11-14; Deposition Transcript of Garry Neeves, Ex. A (the "Garry Neeves Deposition") [ECF No. 815-1] 17:16.

### 3.      Implied License

Defendants next renew their argument that Regal has an implied license to use, retain, and modify the software at issue.[67]  An implied license exists when "(1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes that particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee-requestor copy and distribute his work."[68]  *Gagnon*, 542 F.3d at 754-55 (footnote omitted) (quoting *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 776 (7th Cir. 1996)). With regard to the third prong, and in the context of "implied licenses for computer programs," the Court looks not solely at copying and distribution, but also at the "protected right at issue," such as the right to "use, retain and modify the programs." *Id.* at 755.  "The burden is on the licensor 'to express an intent to . . . limit . . . [the] license if he intended to do so . . . [and a] belated statement . . . [i]s not sufficient . . . .'" *Signorelli v. N. Coast Brewing Co.*, 2019 WL 2569582, at *3 (N.D. Cal. June 21, 2019) (quoting *Gagnon*, 542 F.3d at 756).

The first two elements appear uncontested in favor of Defendants, both on the trial record and in the briefs.[69]  Regarding the first element, Regal unmistakably requested the creation of the software.[70]  In connection with the second element, the jury heard uncontroverted evidence that Softketeers delivered its work to Regal, starting in 2001 and continuing on an ongoing basis for about 18 years.[71]

With respect to the third element, the Ninth Circuit has held that the "relevant intent is the licensor's objective intent at the time of the creation and delivery of the software as manifested by the parties' conduct."  *Gagnon*, 542 F.3d at 756.  The court in *Gagnon* adopted the approach of the First and Fourth Circuits, which is to weigh the following three factors to determine the creator/licensor's intent:

(1) whether the parties were engaged in a short-term discrete transaction as opposed to an ongoing relationship; (2) whether the creator utilized written contracts . . . providing that copyrighted materials could only be used with the creator's future involvement or express permission; and (3) whether the creator's conduct during the creation or delivery of the copyrighted material

---

[67]      Motion 33:15-37:26.

[68]      The Jury Instructions also recite this three-part test.  *See* Jury Instructions, No. 41 at 26.

[69]      *See generally* Opposition.

[70]      Motion 34:6-10; Trial Transcript Volume Two 460:12-15 & 469:14-470:20.

[71]      Motion 34:8-13; Trial Transcript Volume Two 303:4 & 347:11-12.

indicated that use of the material without the creator's involvement or consent was permissible.

*Id.*

The first two factors support Defendants' position.  It is undisputed that the parties worked together for roughly 18 years, demonstrating an ongoing relationship.[72]  Furthermore, it is undisputed that the creator, Softketeers, did not use written contracts in its dealings with Regal.[73]  That leaves only the third element in question:  whether Softketeers's conduct indicated that the use of its software without its involvement or consent was permissible.

Defendants identify three pieces of evidence to support their contention that it was.  First, Softketeers provided unobfuscated deliverables without any express limitation on decompiling or modifying the software.[74]  Second, as the Court noted previously, Softketeers included copyright notices identifying Regal as the copyright holder on certain splash screens.[75]  Other courts have found that such conduct demonstrates an objective intent to grant an implied license.  *See Numbers Licensing, LLC v. bVisual USA, Inc.*, 643 F. Supp. 2d 1245, 1254 (E.D. Wash. 2009) (the copyright notice for the defendant was inserted 112 times in the source code).  Third, Softketeers never communicated any intent to register its copyright, nor did it register its copyright until after its business relationship with Regal ended.[76]

In response, Softketeers points to testimony that it delivered only ***executable*** code, not ***source*** code.[77]  Randy Neeves testified at trial that, without the source code, Defendants could not modify the software or continue using it,[78] which undermines Defendants' argument that Softketeers's delivery of non-obfuscated executable code is the "functional equivalent" of handing over source code.[79]  The Court finds that this evidence was properly before the jury to consider, since it is objective evidence that concerns Softketeers's conduct at the time of delivery.

---

[72]    Motion 35:11-19; *see also* Trial Transcript Volume Two 303:2-4, 399:4-16, & 493:3-10.

[73]    Motion 35:19-22; Trial Transcript Volume Three 551:24-25.

[74]    Motion 36:4-10.

[75]    *Id.* at 36:9-10; Trial Transcript Volume Three 564:20-565:9, 567:6-20, & 1376:19-1377:20.

[76]    Motion 36:19-25; Trial Transcript Volume Two 490:17-20 & 493:3-10.

[77]    Opposition 9:25-27; Trial Transcript Volume Two 303:16-304:2 & 312:17-21.

[78]    Opposition 9:27-10:1; Trial Transcript Volume Three 745:17-20.

[79]    *See* Motion 34:12-16.

Therefore, the question becomes whether a reasonable jury could determine that Softketeers intended for Regal to use its software only with Softketeers's continued involvement or consent, with such a determination based solely upon Softketeers's practice of delivering unobfuscated, executable code, with no express limitation or prohibition that Regal could not decompile or modify the software. The Court concludes that it is possible that the jury made that determination, even though the Court does not regard the evidence in favor of Softketeers particularly compelling.

This conclusion requires the Court to affirm the jury's verdict. Even though the other two factors undisputedly weigh in favor of Defendants, there is room on the third factor for the jury to find in Softketeers's favor. Therefore, Defendants necessarily cannot meet the third prong of the test for an implied license, as they must leave "no room for the jury to draw significant inferences in favor of the other party." *Radtke v. Lifecare Mgmt. Partners*, 795 F.3d 159, 166 (D.C. Cir. 2015) (quoting *Gay v. Petsock*, 917 F.2d 768, 771 (3d Cir. 1990)). Accordingly, substantial evidence supports the jury's verdict that Regal did not have an implied license to use, retain, and modify the software. Because Defendants fail to show that the evidence permits only one conclusion on Regal's implied license claim, the Court **DENIES** Defendants' Motion for judgment as a matter of law.

### 4.     Secrecy

Defendants also challenge the jury's determination that Softketeers made reasonable efforts under the circumstances to keep the source code secret.[80] If the opposite is true, then Softketeers's claim for trade secret misappropriation fails under both federal and California law. *See* 18 U.S.C. § 1839(3)(A); Cal. Civ. Code § 3426.1(d)(2).

For a trade secret to exist—under both federal and California law—the trade secret owner must take reasonable steps to keep the information secret. *See* 18 U.S.C. § 1839(3)(A); Cal. Civ. Code § 3426.1(d)(2). Indeed, "the extent of the [trade secret] property right . . . is defined by the extent to which the owner of the trade secret protects his interest from disclosure to others." *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984). The jury was instructed to consider eight factors to determine whether Softketeers undertook reasonable efforts to protect its trade secrets:[81]

- whether the source code was marked with a confidential warning;

---

[80]     Motion 38:1-41:6.

[81]     Jury Instructions, No. 54 at 39-40.

- whether Softketeers instructed its employees to treat the source code as
  confidential;
- whether Softketeers restricted access to the source code to persons who had a
  business reason to know the information;
- whether Softketeers restricted access to the source code or kept the source code in
  secured area;
- whether Softketeers required employees or others with access to the source code
  to sign confidentiality or nondisclosure agreements;
- whether Softketeers took any specific action to protect the source code or whether
  it relied on general measures taken to protect its business information or assets;
- the extent to which any general measures taken by Softketeers would prevent the
  unauthorized disclosure of the source code; and
- whether there were any other reasonable measures available to Softketeers that it
  did not take.[82]

Here, the difficulty for Defendants is that they need to show that the jury lacked ***any*** basis
for a finding of reasonable efforts for not merely one, but all eight, of those factors.[83]  That
is a tall order.  The jury heard, among other things, that the software was password-
protected and that the software was stored on a server in a locked office.[84]  At multiple
points, the jury also received evidence that Softketeers required its employees to sign
nondisclosure agreements.[85]  Finally, while Defendants contend that "Softketeers
undisputedly sent . . . to RXN"[86] what Defendants suggest is "the core WMS code,"[87]
the jury heard testimony that Softketeers denied sending WMS to RXN.[88]  The jury could
have credited that testimony.

Defendants cite *Arkeyo, LLC v. Cummins Allison Corp.*, 342 F. Supp. 3d 622 (E.D.
Pa. 2017), for the proposition that Softketeers's efforts regarding its confidentiality

---

[82]     *Id.*

[83]     *Id.* at 40 (noting that none of the eight factors was determinative).

[84]     Motion 11:13-16; Trial Transcript Volume Two 349:11-355:19, 358:22-5, & 360:2-4; Trial
Transcript Volume Three 680:16-685:24; Pl.'s Notice of Filing Trial Exhibits Cited in
Opposition to the Motion [ECF No. 994], Ex. 1 [ECF No. 994-1], 72 [ECF No. 994-2], 73 [ECF
No. 994-3], 74 [ECF No. 994-4], 206 [ECF No. 994-9], 195 [ECF No. 994-5], 196 [ECF No. 994-
6], 197 [ECF No. 994-7], & 198 [ECF No. 198].

[85]     *Id.*

[86]     RXN is a separate business that Garry Neeves and Minh Nguyen started together. *See,
e.g.*, Trial Transcript Volume One 224:4-5.

[87]     Motion 40:6-7.

[88]     Opposition 12:1-3; Trial Transcript Volume Three 620:20-621:1.

agreements were lacking.[89]  However, the facts of that case are distinguishable.  In *Arkeyo*, the court concluded that the confidentiality agreements "became ineffectual once Arkeyo published its trade secrets on the internet because Arkeyo made its software publicly available."  *Id*. at 631.  That simply did not happen here.

In conclusion, the Court instructed the jury to decide whether the efforts that Softketeers undertook were those "that would be made by a reasonable person in the same situation and having the same knowledge and resources."[90]  Here, the Court concludes that the jury could find those steps reasonable, in view of Softketeers's small size and limited resources, even if Softketeers could have done more.[91]  Defendants therefore fail to meet their burden to show that only one reasonable conclusion exists.  Judgment as a matter of law is thus not warranted on Defendants' trade secrecy argument, and, to the extent that Defendants move for judgment as a matter of law based upon that theory, Defendants' Motion is **DENIED**.

### 5.    Causation of Profits and Unjust Enrichment

Defendants next assert that they are entitled to judgment reversing an award of profits regarding Softketeers's Claim 1 (Copyright Infringement) and, similarly, a judgment of no unjust enrichment regarding Softketeers's Claims 2 and 3 (Trade Secret Misappropriation).[92]  The Court instructed the jury that it could make an award of Defendants' profits only if it found that Softketeers showed a causal nexus between the infringement and Regal's profits generated indirectly from the infringement.[93]  Once Softketeers made that showing, all of Regal's profits could be attributed to the infringement, unless Defendants proved that some portion of the profit, if any, was attributable to factors other than infringing the copyrighted work.[94]

At trial, Randy Neeves testified that, without Softketeers's software, "Regal Logistics will lose nearly all or all of its profits," amounting to "5 to $8 million in annual

---

[89]    Motion 38:24-39:1.

[90]    Jury Instructions, No. 54 at 39.

[91]    *See, e.g.,* Motion 38:12-39:5 (pointing to testimony that Softketeers failed to obfuscate the source code), 39:5-12 (pointing to testimony that the source code itself was regularly stored on Regal's servers), 39:12-19 (highlighting testimony that suggested that, though Softketeers used passwords, those passwords were rudimentary and weak), 39:19-27 (pointing to testimony indicating that Softketeers's physical served was readily accessible to non-employees during poker tournaments held at the Softketeers office).

[92]    The jury entered an award of Regal's profits in the amount of $3,320,000 and of Randy Neeves's "profits" in the amount of $100,000.  *See generally* Verdict.

[93]    Jury Instructions, No. 50 at 35.

[94]    *Id*.

EBITDA profit."[95]  That evidence provided a sufficient basis for the jury to find the existence of a causal nexus.  Various experts also testified at trial, providing estimates of attributable profits based upon revenue streams tied to specific verticals.[96]  Therefore, the jury had sufficient grounds to determine whether some of Regal's profits were attributable to factors other than Softketeers's software programs.

In response, Defendants argue that Regal's use of Softketeers's software is not necessarily evidence of causation that led to Regal's profits.[97]  *See, e.g.*, *ECIMOS, LLC v. Carrier Corp.*, 2017 WL 10221053, at *1 (W.D. Tenn. Feb. 1, 2017); *Complex Sys., Inc. v. ABN Ambro Bank N.V.*, 2013 WL 5970065, at *11 (S.D.N.Y. Nov. 8, 2013); *Int'l Bus. Machines Corp. v. BGC Partners, Inc.*, 2013 WL 1775437, at *4–*5 (S.D.N.Y. Apr. 25, 2013); *DaimlerChrysler Servs. v. Summit Nat.*, 2006 WL 208787, at *3 (E.D. Mich. Jan. 26, 2006); *Mojica v. Bos. Coll.*, 2004 WL 5708263, at *1–*2 (D. Mass. Jan. 9, 2004). However, that argument rings hollow, because Regal's CEO, among others, provided the jury with ample testimony regarding the necessity of the software.  The jury's award of profits is therefore consistent with the testimony and evidence that it received.  The Court thus **DENIES** Defendants' Motion for judgment as a matter of law vacating the jury's profit disgorgement and unjust enrichment awards.

###    6.    Conclusion

For the foregoing reasons, the Court concludes that, when viewed in the light most favorable to Softketeers, evidence was presented at trial that would provide a reasonable jury with a legally sufficient basis for determining that Regal is not the work-for-hire owner of the software, that Regal is not the exclusive owner of the software as a borrowing employer, and that Regal is not the co-owner.  There is also sufficient evidence in the trial record for a reasonable jury to conclude that Softketeers did not abandon any ownership rights in the software, that Regal does not have an implied license to use, retain, and modify the software, and that Softketeers took reasonable measures to maintain the secrecy of the source code.  Finally, as Softketeers has demonstrated, the jury's award of profits is consistent with the available evidence and testimony.  Therefore, given the evidence presented at trial, Defendants have failed to demonstrate that the record is "critically deficient of the minimum quantum of evidence" upon which the jury could reasonably base its verdict.  *TI Group Auto. Sys. Inc. v. VDO N. Am., L.L.C.*, 375 F.3d

---

[95]    Opposition 12:7-9; Trial Transcript Volume Three 747:20-23.

[96]    Trial Transcript Volume Six 1124:5-18, 1126:2-1128:9, & 1135:12-17; Reporter's Tr. of Trial Proceedings Trial Day 6 [ECF No. 876] 1475:19-1476:5 & 1482:3-1484:10.

[97]    Motion 41:26-42:11; *see* Reply 11:8-14.

1126, 1133 (Fed. Cir. 2004).  Accordingly, the Court **DENIES** Defendant's Renewed Motion for Judgment as a Matter of Law, pursuant to Rule 50(b), in its entirety.

**B.      Rule 59(a):  Motion for a New Trial**

Defendants alternatively move for a new trial under Rule 59.  Defendants argue that the trial was infected with eight different errors, each of which justifies a do-over:

- the jury's verdict was against the weight of the evidence;
- neither the jury nor this Court made findings of fact or conclusions of law on the work-for-hire factors presented in *Reid*, or on the issue of implied license;
- the Court made an erroneous evidentiary ruling;
- the jury heard biased testimony;
- the jury was erroneously presented with an adverse-inference instruction;
- exculpatory evidence and related testimony were improperly excluded;
- the damages verdict was clearly excessive; and
- the trial was not bifurcated.

As detailed below, the Court is not persuaded that any of those points constitutes error, and Defendants do not persuade the Court that the jury's verdict was "contrary to the clear weight of the evidence," "based upon evidence which is false," nor "a miscarriage of justice."  Defendants' Motion for a new trial therefore is **DENIED**.

**1.      Clear Weight of the Evidence**

Defendants move under Rule 59 for a new trial on the basis that the jury's verdict regarding copyright infringement and trade secret appropriation was against the clear weight of the evidence.  *See Coach, Inc. v. Celco Customs Servs. Co.*, 2014 WL 12573411, at *14-*16 (C.D. Cal. June 5, 2014) ("[N]ew trial . . . may be ordered by the district court if, in its opinion, the jury's verdict was clearly contrary to the weight of the evidence.").[98] In support of that argument, Defendants rely on the same theories of ownership that the Court addressed above, *see supra* Part IV.A.1.[99]  However, for the reasons explained above, Defendants have not shown that the jury's verdict is contrary to the clear weight of the evidence, that it is based upon false or perjurious evidence, nor that a miscarriage of justice requires a new trial.  *See Molski*, 481 F.3d at 729.  Defendants' Motion is **DENIED**.

---

[98]      Motion 12:26-13:6.

[99]      *See generally id.*

### 2.      Work-for-Hire and Licensure

Next, Defendants argue that a new trial is warranted because the Court did not instruct the jury that it must fully assess the issue of ownership prior to reaching a conclusion on copyright infringement or trade secret misappropriation.[100]  Defendants also contend that the Court failed to take up the issue of ownership and implied license in the first instance when it ruled on Defendants' counterclaims and affirmative defenses in the Court's Findings of Fact and Conclusions of Law.[101]  In essence, Defendants do not challenge the Court's conduct at trial, but, rather, Defendants take issue with Court's Findings of Fact and Conclusions of Law.

Under the Local Rules, a motion for reconsideration:

> may be made only on the grounds of (a) a material difference in fact or law from that presented to the Court that, in the exercise of reasonable diligence, could not have been known to the party moving for reconsideration at the time the Order was entered, or (b) the emergence of new material facts or a change of law occurring after the Order was entered, or (c) a manifest showing of a failure to consider material facts presented to the Court before the Order was entered.

L.R. 7-18.  "No motion for reconsideration may in any manner repeat any oral or written argument made in support of, or in opposition to, the original motion."  *Id.*

Here, in challenging the Court's Findings of Fact and Conclusions of Law, Defendants fail to show that new material facts have emerged—or that a change of law has occurred—that would affect the Court's prior decision.  Defendants also fail to grapple with the Court's reasoning in its prior decision, and, thus, Defendants fail to demonstrate that the Court did not consider certain material facts.[102]  Therefore, for the reasons set forth below, and to the extent that Defendants seek reconsideration of the Court's previous decision, the Motion is **DENIED**.

### a.      The Jury

Defendants argue that the Court erred by failing to instruct the jury that it must fully assess the issues of ownership and irrevocable implied license ***prior*** to reaching a

---

[100]      Motion 43:20-23.

[101]      *Id.* at 44:5-45:5; *see also* Findings of Fact and Conclusions of Law.

[102]      *See generally* Motion.

conclusion on copyright infringement or trade secret misappropriation.[103]  Instead, in Defendants' view, the Court instructed the jury that it was permitted to conclude that Softketeers owned the copyrights *solely* on the basis of the copyright registrations.[104]  To support that theory, Defendants invite the Court's attention to Jury Instruction No. 35 regarding copyright registrations, which states:  "[f]rom these certificates you may, but need not, conclude that Softketeers owns the copyrights for the software identified therein."[105]

However, regarding work-for-hire,[106] in its Findings of Fact and Conclusions of Law, the Court addressed Defendants' argument that the jury could reach its verdict on the issue of copyright infringement without considering other issues of ownership, such as work-for-hire ownership or joint authorship.[107]  Analyzing Jury Instruction No. 35 in conjunction with Jury Instruction No. 37,[108] there the Court concluded that "the jury had no way to avoid making a factual finding on employment status, even if they had based their verdict solely on those registrations."[109]

Tellingly, in their Motion, Defendants fail to address why the Court's rationale was incorrect.  The Court will not rehash the entirety of that decision here.  Defendants' Motion for a new trial based upon the grounds alleged here is **DENIED**.

### b.    The Court

Defendants also argue that a new trial is warranted because *the Court* neglected to "[take] up the issue of ownership and implied license in the first instance, as the parties had anticipated."[110]  Here, too, Defendants question the Court's Findings of Fact and Conclusions of Law on Regal's counterclaims and affirmative defenses—not the conduct

---

[103]    *Id.* at 43:19-44:5.

[104]    *Id.*; *see also* Trial Transcript Volume Nine 1574:10-17 ("From these certificates, you may, but need not conclude, that Softketeers owns the copyrights for the software identified therein.").

[105]    *See* Jury Instructions, No. 35 at 17.

[106]    Defendants also argue that the Court failed to "instruct the jury that it must assess whether Regal has an irrevocable implied license."  *See* Motion 43:23-26.  However, that argument fails because whether Defendants had an irrevocable implied license to use the software does not depend upon whether or not Defendants had ownership rights in the software.

[107]    *See* Findings of Fact and Conclusions of Law 16:13-18:3.

[108]    *See* Jury Instructions, No. 37 at 19.

[109]    *See* Findings of Fact and Conclusions of Law 17:5-7.

[110]    Motion 44:5-8.

of the trial itself.  However, perplexingly, in their Motion, Defendants do not grapple with the Court's Findings and Conclusions.

The Court's prior decision was firmly based upon the principle that a court is not at liberty to ignore the jury's verdict.  In their Motion, Defendants have not shown any reason for the Court to disturb that ruling.  Defendants' Motion for a new trial based upon the Court's failure to perform a *Reid*-factors analysis in the first instance is **DENIED**.

### 3.     Defendants' Motion *in Limine* No. 5

Defendants next seek a new trial on the ground that one of the Court's evidentiary rulings was incorrectly decided.[111]  In June 2021, the Court denied Defendants' motion *in limine* seeking to preclude Softketeers from offering any argument, evidence, or testimony at trial regarding prior compromise offers and negotiations.[112]

In their Motion, Defendants argue that the Court's order permitted the jury to receive evidence in violation of Rule 408 of the Federal Rules of Evidence.[113]  However, Defendants' argument in this regard is an improper attempt to rehash the same arguments that they presented in their motion *in limine*; in its June 2021 order, the Court held that Rule 408 did not apply because the 2011 and 2018 meetings at issue did not involve settlement offers as contemplated by the Federal Rules of Evidence, but, rather, those meetings were "ordinary business negotiations in which Regal presented Softketeers with a contract purporting to redefine their ongoing relationship[.]"[114] Critically, the discussions were ***not***, as the Court explained, "the type of compromise meeting—where two sides are present in an attempt to find a middle ground between clearly-held and disputed legal positions—that the court excluded in *Emelianenko*."[115]  *See Emelianenko v. Affliction Clothing*, 2011 WL 13176755, at *16 (C.D. Cal. July 28, 2011). Nothing in Regal's Motion persuades the Court that its prior ruling, with respect to its application of Rule 408, was erroneous.

---

[111]     Motion 45:13-46:13.

[112]     *See* "Order Regarding Plaintiff's Motions *in Limine* [ECF Nos. 541, 542, 552, 545, 546, 553, & 554] and Defendants' Motions *in Limine* [ECF Nos. 531, 532, 535, 536, 537, & 551]" (the "<u>MIL Order</u>") [ECF No. 737] 21:9-23:10.

[113]     *See* Motion 45:13-46:13.

[114]     MIL Order 22:23-23:1.

[115]     *Id.* at 22:20-23.

Defendants additionally contend that the admitted evidence was unfairly prejudicial.[116]  As evidence of prejudice, Defendants point to Softketeers's opening statement and closing argument at trial.[117]  However, in its prior Order, the Court rejected that very argument, reasoning that any prejudice to Regal would be outweighed by the probative value of any evidence that might shed light on the "central question" of this lawsuit:  "the terms of the oral contract."[118]  In their Motion, Defendants do not even attempt to address why the Court's analysis in that regard was erroneous, nor do they refute the Court's conclusion that the evidence concerning the 2011 and 2018 meetings was—and is—highly probative.

Accordingly, in the absence of any argument addressing why the Court's June 2021 order should be reconsidered, Regal's request for a new trial on that ground is **DENIED**.  *See Harper v. City of Los Angeles*, 533 F.3d 1010, 1030 (9th Cir. 2008).

### 4.  Admission of Deposition Testimony of Garry Neeves

Defendants next accuse the Court of improperly permitting the jury to hear biased testimony regarding purported privileged communications.[119]  Specifically, Defendants point to the portion of Garry Neeves's testimony in which he states that Bill Holt, Regal's lawyer, had acknowledged Softketeers's ownership of the software at issue.[120]  Defendants argue that a new trial is warranted because the Court's admission of that testimony should have been excluded on several grounds.  The Court addresses each in turn.

#### a.  Privilege

First, Defendants argue that admitting the Garry Neeves's testimony at trial amounted to an improper disclosure of a privileged communication.[121]  *See* Fed. R. Evid. 502.  However, after requesting supplemental briefing on that very issue, the Court overruled Defendants' privilege objection, concluding that Defendants waived the privilege.[122]  Defendants fail to explain why the Court's previous ruling was in error.

---

[116]     *See* Motion 45:20-26:13.

[117]     *Id*. at 45:25-46:3; Reporter's Tr. of Trial Proceedings Trial Day 1 ("Trial Transcript Volume One") [ECF No. 871] 185:4-11 & 186:25-187:25; Reporter's Tr. of Trial Proceedings Trial Day 7 [ECF No. 877] 1639:18-19.

[118]     MIL Order 23:7.

[119]     Motion 46:14-47:8.

[120]     Garry Neeves Deposition 189:17-20.

[121]     *See* Motion 17:25 & 47:1-2.

[122]     *See* Trial Transcript Volume Three 523:8.

Therefore, to the extent that Defendants seek a new trial based upon a reconsideration of
the Court's prior ruling regarding waiver, the Motion is **DENIED**.

### b.   Unfair Prejudice

Second, Defendants argue that the testimony should have been excluded under
Rule 403.[123]  The Court previously overruled Defendants' objection on that ground.[124]
However, even if it were to reconsider that ruling, the Court again concludes that the
probative value of the testimony is not substantially outweighed by unfair prejudice or any
propensity to confuse the jury.  As the jury instructions demonstrate, whether Defendants
had knowledge of their ownership rights is probative of whether Defendants
misappropriated trade secrets "willfully"—a central question for the jury.[125]  In addition,
Garry Neeves's testimony regarding attorney Holt is highly probative, since Defendants
rely upon the statements that Mr. Holt made concerning the formation of MGR as
evidence of Softketeers's purported abandonment.[126]

### c.   Hearsay and Relevance

Third, Defendants argue that Garry Neeves's testimony was improperly admitted
because it is both hearsay and irrelevant.[127]  However, at trial, Defendants did not object
to Neeves's testimony on either of those grounds.[128]  Because "a new trial will not be
granted on grounds not called to the court's attention," 11 Mary Kay Kane, *Federal
Practice and Procedure* § 2805 (3d ed. 2021), Defendants cannot now argue in hindsight
that the Court's decision not to limit Garry Neeves's testimony—on newly asserted
grounds—was such an abuse of discretion so as to merit a new trial.  *See also Weaver v.
Ford Motor Co.*, 382 F. Supp. 1068, 1075 (E.D. Pa. 1974) ("A party may not object at trial
to the admission of evidence on one theory and later complain about the admission of
such evidence on another ground.").

---

[123]   Motion 46:20-21 & 47:5-8.

[124]   Trial Transcript Volume Three 533:6-15.

[125]   Verdict 9.

[126]   *See, e.g.*, Motion 32:15-23; *see also* Opposition 18:9-13.

[127]   Motion 47:1-6.

[128]   *See* Opposition 17:27-18:2; *see also* Trial Transcript Volume Three 533:9-12 ("So I would
like to state for the record now that we would preserve our objections on both privileged grounds
and 403 grounds, both of which Your Honor's aware.").

Therefore, in view of the foregoing, to the extent that Defendants seek a new trial based upon the Court's decision to allow the jury to hear portions of Garry Neeves's deposition testimony, Defendants' Motion is **DENIED**.

### 5.      Adverse Jury Instruction

Defendants next argue that they are entitled to a new trial because the Court improperly presented the jury with an adverse-inference instruction.[129]  In support of that argument, Defendants contend that the Special Master who recommended the issue sanction improperly looked to "practical control"—rather than "legal control"—as the appropriate test for determining Defendants' obligation to collect and produce materials in discovery.[130]  However, because Defendants fail to demonstrate any legal error, their argument fails.  *See Alford v. Haner*, 446 F.3d 935, 936 (9th Cir. 2006) (holding that a district court's denial of a motion for a new trial is reversible "only if the district court makes a legal error in applying the standard for a new trial or the record contains no evidence that can support the verdict").

In the absence of express Ninth Circuit direction, district courts have applied a preponderance-of-the-evidence standard to issues regarding remedial discovery sanctions.  *See, e.g.*, *Blumenthal Distrib., Inc. v. Herman Miller, Inc.*, 2016 WL 6609208, at *26 (C.D. Cal. July 12, 2016), *report and recommendation adopted*, 2016 WL 6901696 (C.D. Cal. Sept. 2, 2016) (citing *Parsi v. Daioleslam*, 778 F.3d 116, 131 (D.C. Cir. 2015) (internal quotation marks and citation omitted)).  As it relates to requests for documents under Rule 34, district courts in the Ninth Circuit apply the legal control test.  *See, e.g.*, *In re ATM Fee Antitrust Litig.*, 233 F.R.D. 542, 545 (N.D. Cal. 2005).  "Control is defined as the legal right to obtain documents upon demand."  *In re Citric Acid Litig.*, 191 F.3d 1090, 1107 (9th Cir. 1999) (citing *United States v. International Union of Petroleum & Indus. Workers*, 870 F.2d 1450, 1452 (9th Cir. 1989)).

In the instant case, in his November 2020 Report and Recommendation, the Special Master recommended that the Court impose issue and evidentiary sanctions against Regal in view of his findings that Regal had legal control over the source code at issue and that Regal had failed to comply fully with the Court's previous orders to produce it.[131]  In concluding that the Special Master's recommended issue sanctions were

---

[129]    Motion 47:8-48:4.  The adverse jury instruction is as follows:  "If you conclude that Regal's Vietnam-based developers used or had in their possession source code for the software at issue, then you must presume that the Vietnam-based developers received that source code from Regal."  Trial Transcript Volume Nine 1582:9-13.

[130]    Motion 47:21-48:3.

[131]    R. & R. of Special Master Regarding Pl.'s Mot. for Evidentiary and Issue Sanctions [ECF No. 656].

appropriate, the Court applied the legal control test, expressly rejecting any inference that a practical control defense should apply.[132]  Therefore, even if Defendants were prejudiced by the issue sanctions that were imposed upon them, Defendants have failed to show that those sanctions were applied in error.  Accordingly, the Court **DENIES** Defendants' Motion based upon the adverse-inference instruction given at trial.

### 6.   Exhibit 2202

Defendants assert that they are entitled to a new trial because the Court improperly excluded Exhibit 2202 and related testimony.[133]  Exhibit 2202 is an email from Khang Nguyen, one of Regal's developers who did not appear at trial, purporting to explain that a comment embedded in the source code for Regal's replacement software was not an artifact of copying, but that it was planted in the new source code.[134]  At trial, the Court sustained Softketeers's objection to that exhibit on hearsay grounds.[135]  In its ruling, the Court held that Exhibit 2202 was "absolute hearsay," both because Khang Nguyen was not available to testify in Court and because the exhibit could not possibly be used for the truth of the matter asserted.[136]  The Court also observed that it would be difficult for the jury, even with a limiting instruction, to treat the document only for the purpose of its effect on the state of mind of Defendant Vu Ho.[137]

A new trial is warranted only if the movant establishes that the Court's evidentiary ruling was clearly erroneous and prejudicial.  *See Jackson v. Potter*, 587 F. Supp. 2d 1179, 1182 (D. Colo. 2008).  In arguing that the Court's evidentiary ruling was prejudicial to Regal, Defendants make no attempt to argue that the excluded exhibit was properly admissible under the Federal Rules of Evidence.  *See* Fed. R. Evid. 802.  In fact, Defendants' stated purpose for the document—that Exhibit 2202 would be used to show that "Mr. Nguyen (not Regal) was responsible for planting the 'per Minh' instruction in

---

[132]   Order on Defendants' Objections to Report and Recommendation of Special Master Regarding Softketeers, Inc.'s Motion for Evidentiary and Issue Sanctions [ECF No. 693] 7:16-8:4.

[133]   Motion 48:4-49:21.

[134]   *See* Defs.' Sealed Opposition re Sealed Notice of Motion and Motion for Terminating or Other Contempt Sanction Re Order on Motion for Leave to File Document Under Seal, Order on Motion for Leave to File Document Under Seal, Unredacted Document Ex. 1 to Ho Decl. [ECF No. 395-2]; *see also* Motion 48:7-11; Trial Transcript Volume Six 1189:15–16 (excluding Exhibit 2202).

[135]   *See* Trial Transcript Volume Six 1189:15–16.

[136]   *Id.* at 1186:17-21.

[137]   *Id.* at 1189:17-21.

Regal's replacement software source code"[138]—persuades the Court that its prior ruling was correct: that Defendants necessarily, and improperly, rely on the exhibit for the truth of the matter asserted and not for Vu Ho's state of mind.  *See* Fed. R. Evid. 802 & 803(3).

The Court is unconvinced that its exercise of discretion in excluding Exhibit 2202 was clearly erroneous or that its decision entitles Defendants to a new trial.  Accordingly, the Court **DENIES** Defendants' Motion based upon the Court's failure to allow Exhibit 2202 to be presented at trial.

### 7.    Damages

Defendants next contend that a new trial is warranted because the Court allowed Softketeers to present to the jury the theory that it could award damages based upon indirect profits.[139]  Defendants argue that, as a result of that error, the damages verdict was clearly excessive.[140]

A court may grant a new trial "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed. R. Civ. P. 59(a).  Those reasons include claims "that the damages are excessive." *Molski*, 481 F.3d at 729.  If the Court determines that damages are excessive, then it "may grant Defendant's motion for a new trial or deny the motion conditional upon the prevailing party accepting a remittitur.  The prevailing party is given the option of either submitting to a new trial or of accepting a reduced amount of damage which the court considers justified." *Fenner v. Dependable Trucking Co., Inc.*, 716 F.2d 598, 603 (9th Cir. 1983).  "A remittitur must reflect 'the maximum amount sustainable by the proof.'" *Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1094 (9th Cir. 2014) (citing *D & S Redi-Mix v. Sierra Redi-Mix & Contracting Co.*, 692 F.2d 1245, 1249 (9th Cir. 1982)).  "If the prevailing party does not consent to the reduced amount, a new trial must be granted." *Fenner*, 716 F.2d at 603.  "If the prevailing party accepts the remittitur, judgment must be entered in the lesser amount." *Id.*

The jury's award of Regal's profits in the amount of $3,320,000, and its award of Randy Neeves's profits in the amount of $100,000, are supported by the evidence, and those sums are not excessive.  Defendants' theory for why they are entitled to a new trial hinges on the argument that Softketeers improperly presented an indirect profits theory to the jury.[141]  However, as the Court already held with respect to Defendants' Rule 50(b)

---

-30-

motion on the same ground, *see supra* Part IV.A.5, the jury heard testimony establishing a causal nexus between the infringement and Regal's revenues.[142]  In light of that testimony, it was not against the weight of the evidence for the jury to award Softketeers a fraction of the profits that Regal amassed during its 32 months of infringement and misappropriation.

### 8.    Bifurcation

Defendants maintain that the Court erred by failing to bifurcate the trial.[143]  However, Defendants made their initial (and only) request to bifurcate the trial in connection with their motion *in limine* seeking to preclude Softketeers from referencing the preliminary injunction in this case.[144]  In a footnote, Defendants' motion *in limine* previewed that, if the Court were to deny that motion, Defendants intended to address "potential bifurcation" with the Court.[145]  Defendants also stated that potential bifurcation would serve to ensure that "the issue of ownership, central to each claim remaining in the case, [could] be tried separately and without being subjected to the prejudicial effects of the argument and evidence regarding the course of proceedings after the complaint was filed in this matter."[146]

The Court initially denied Defendants' motion *in limine*,[147] but ultimately granted it at trial,[148] thus mooting Defendants' request for "potential bifurcation."[149]  During the course of trial, Defendants never requested any other bifurcation, and they do not appear to do so here.  Because it would be improper for the Court to grant a new trial based upon a request that is now moot (or is based upon a request that was never made), the Motion is **DENIED** to the extent that Defendants seek a new trial based upon the Court's failure to bifurcate the trial.

---

[142]    Defendants accept that Randy Neeves's profits were derivative of Regal's profits.  *See, e.g., id.* at 42:12-13 ("Softketeers presented no evidence that any mere use of the copyrighted software generated a single dollar of profit for Regal, ***and by extension, Mr. Neeves***.") (emphasis added).  Thus, the Court's analysis here focuses on Regal's profits.

[143]    *Id.* at 49:21-50:8.

[144]    *See generally* Defs.' Motion in Limine No. 1 to Preclude Softketeers from Offering Any Argument, Evidence, or Test Referencing the Preliminary Injunction (the "MIL 1 Order") [ECF No. 531].

[145]    *Id.* at 1 n.2.

[146]    *Id.*

[147]    *See* Order Regarding Pl.'s Motion *in Limine* [ECF Nos. 541, 542, 552, 545, 546, 553, & 554]; Defs.' Motions *in Limine* [ECF Nos. 32, 535, 536, 537, & 551] [ECF No. 737] 17:11-18:9.

[148]    Trial Transcript Volume Four 802:23-803:7.

[149]    *See* MIL 1 Order 1 n.2.

**C.     Motion to Stay**

In view of this Court's resolution of Defendants' Motion for judgment as a matter of law or for a new trial, Defendants' recently filed Motion to Stay execution of the judgment—pending the resolution of that underlying Motion—is **DENIED as moot**.

## V.  DISPOSITION

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1.     Defendants' Renewed Motion for Judgment as a Matter of Law is **DENIED**.

2.     Defendants' Motion for a New Trial is **DENIED**.

3.     Defendants' Motion to Stay is **DENIED as moot**.

4.     Pursuant to Rule 58(a)(1), it appears that the Court need not issue a new Judgment.  The parties are **DIRECTED** to meet and confer forthwith and to file no later than January 12, 2024, a Joint Status Report that advises the Court regarding any further proceedings necessary or anticipated in this Court regarding this case.

**IT IS SO ORDERED.**

Dated: December 26, 2023

John W. Holcomb
UNITED STATES DISTRICT JUDGE